N8N5javC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                    New York, N.Y.

                    v.                       23 Cr. 251 (AKH)

CHARLIE JAVICE,
OLIVIER AMAR,

                    Defendants.

------------------------------x

                                             August 23, 2023
                                             10:10 a.m.


Before:

                    HON. ALVIN K. HELLERSTEIN,

                                             U.S. District Judge



                              APPEARANCES

DAMIAN WILLIAMS
        United States Attorney for the
        Southern District of New York
BY:  DINA Y. McLEOD
        MICAH FERGENSON
        Assistant United States Attorneys

QUINN EMANUEL URQUHART & SULLIVAN, LLP
        Attorneys for Defendant Javice
BY:  ALEXANDER SPIRO
        SAMUEL P. NITZE
        MAAREN A. SHAH

KOBRE & KIM
        Attorneys for Defendant Amar
BY:  SEAN S. BUCKLEY
        STEVEN KOBRE
        GENNA SINEL

N8N5javC

1          (Case called)

2          THE DEPUTY CLERK:  Counsel please state their

3    appearances for the record.

4          MS. McLEOD:  Good morning, your Honor.  Dina McLeod

5    and Micah Fergenson for the government.

6          THE COURT:  Good morning.

7          MR. SPIRO:  Good morning, your Honor.  This is Alex

8    Spiro on behalf of Ms. Javice, and with me is Maaren Shah and

9    Samuel Nitze.

10          THE COURT:  Good morning.

11          MR. BUCKLEY:  Good morning, your Honor.  Sean Buckley

12    and Steven Kobre on behalf of Mr. Amar, as well as Genna Sinel.

13          THE COURT:  I didn't hear Genna's last name.

14          MR. BUCKLEY:  Sinel, S-I-N-E-L.

15          THE COURT:  Thank you.

16          So, Ms. McLeod, where do we stand?

17          MS. McLEOD:  So, your Honor, we are here for the third

18    pretrial conference in this case.  At the last conference your

19    Honor asked the parties to come back to discuss whether we

20    would be prepared to set a motion schedule today.  Just to

21    provide an update to the Court on discovery, since the case was

22    indicted in June, the government has produced a significant

23    amount of Rule 16 discovery, a total of over 700,000 pages from

24    over three dozen different third-parties.  We did want to give

25    an update to the Court about JP Morgan Chase's production.  We

N8N5javC

1   have already provided this information to the defendants but we

2   also wanted to let Court know.

3           In terms of JP Morgan Chase's production, they have

4   already produced and we have already produced voluminous

5   amounts of JP Morgan Chase material.  We have been informed

6   that JP Morgan Chase anticipates completing its primary

7   production in October, with privilege logs and any smaller

8   cleanup productions to be completed in November.  Because of

9   that anticipated production schedule, the parties would propose

10  coming back for a conference in November, at which time, we

11  understand the defendants would be prepared to set a motion

12  schedule, and that is essentially the agenda for today, your

13  Honor.

14          THE COURT:  Apart from JP Morgan Chase, is there any

15  other production that could be made?

16          MS. McLEOD:  We are currently in the process of

17  processing the SEC's, so the Securities and Exchange Commission

18  has produced materials to us, largely duplicates of what the

19  government has produced, but that is in the queue for

20  production and there are much smaller productions from

21  third-parties that might come in on a rolling basis but they're

22  very small and I don't think there are any of those in the

23  queue other than the SEC's production.  So JP Morgan Chase --

24          THE COURT:  Are you finished with that?

25          MS. McLEOD:  The SEC production, your Honor?

N8N5javC

1        THE COURT:  Yes.

2        MS. McLEOD:  The SEC production has been partially

3    produced and some of it is being processed by an electronic

4    discovery vendor.

5        THE COURT:  When will you make complete production?

6        MS. McLEOD:  When will we complete production?  I

7    anticipate we will complete production next month, your Honor.

8    It depends a little bit on the electronic discovery vendor but

9    it is in the process of being produced.

10       THE COURT:  If I meet with you in November can you

11   give me assurance that you will have everything finished by

12   then?

13       MS. McLEOD:  Your Honor, yes.  We anticipate that we

14   will have produced the primary productions from JP Morgan Chase

15   at that point, which they anticipate to have completed in

16   October, and from discussing with defense counsel, it sounds

17   like the defendants would like to have those primary

18   productions completed before they set a motion schedule, which

19   is why the parties are proposing that timing.

20       THE COURT:  When is a privilege log supposed to be

21   given to you?

22       MS. McLEOD:  So we are receiving privilege logs on a

23   rolling basis.  We just received one today.  The sort of larger

24   privilege logs, we understand from JP Morgan Chase, will be

25   produced after the productions in order to encompass all of the

N8N5javC

1    materials that have been produced, and we have been told that

2    they expect that to be ready in November.

3              THE COURT:  If you are being given a rolling

4    production I would prefer that you be given a rolling privilege

5    log and that I be given the opportunity to make rulings much

6    earlier than November.

7              MS. McLEOD:  Understood.

8              THE COURT:  Otherwise, we will then have a lengthy

9    period.

10             MS. McLEOD:  We can convey that to JP Morgan Chase,

11   your Honor.

12             THE COURT:  Mr. Spiro, what do you need to do?

13             MR. SPIRO:  Well, we are sort of where we left the

14   Court last time and where we left the Court the time before

15   that, and I don't want to belabor the history here too much,

16   but my client was arrested on April 3rd.  At that point

17   JP Morgan had already been under grand jury subpoena for some

18   six months.  Now, many, many months later, we still don't

19   have -- I mean, they use the term "voluminous" and they use the

20   term "soon" and these -- we don't have their internal

21   communications which is the same thing I have been asking for

22   since April 3rd.  Essentially none of their internal

23   communications.  They have been under grand jury subpoena for

24   close to a year.

25             THE COURT:  There will be endless attorney-client

N8N5javC

 1   disputes on that.

 2              MR. SPIRO:  Well --

 3              THE COURT:  Yes, there will be.

 4              MR. SPIRO:  There will be certainly some, yes.  And

 5   part of the problem with moving this case forward and what the

 6   delays are, is because JP Morgan appears to --

 7              THE COURT:  A claim of privilege every time a lawyer

 8   touches a document.

 9              MR. SPIRO:  You have handled cases involving JP Morgan

10   and other banks I take it, your Honor, and that is a concern.

11              THE COURT:  There is no particular experience with

12   JP Morgan.

13              MR. SPIRO:  I see.

14              THE COURT:  It is a particular experience with the

15   world.

16              MR. SPIRO:  I see.

17              THE COURT:  The world as we lived it in this

18   courtroom.

19              MR. SPIRO:  I see.

20              THE COURT:  And, I lived it in practice.

21              I would like to get that privilege log earlier,

22   Ms. McLeod.

23              MS. McLEOD:  Yes, your Honor.

24              THE COURT:  And I would like to set up a conference

25   earlier.  I would like you and Mr. Spiro to discuss that

N8N5javC

1    privilege log because both of you may have interests in

2    challenging privilege.  Have you seen the privilege log to its

3    extent now, Mr. Spiro?

4             MR. SPIRO:  I have not.

5             THE COURT:  Is there any reason not to share that?

6             MS. McLEOD:  No, your Honor.  The reason they haven't

7    seen it is we just got the first one this morning and that's

8    being -- we produced it right before the conference.

9             THE COURT:  I'm not very pleased with the slow

10   procedures being used by JP Morgan.  I can understand that

11   there is vacation but this is also a criminal case and it

12   deserves priority, not only between you and me, but also with

13   the party subpoenaed.  What can you do to hasten their

14   production?

15            MS. McLEOD:  Understood, your Honor.  I think we will

16   let them know that we would like privilege logs on a faster

17   tempo than they were anticipating.

18            THE COURT:  I would like them to know that the Judge

19   instructs that it be done at a faster tempo.

20            MS. McLEOD:  We will let them know, your Honor.

21            THE COURT:  Production completed by the end of

22   September and not the end of October, and if necessary, I would

23   like to have a hearing on that.

24            MS. McLEOD:  OK.  As to the privilege logs?

25            THE COURT:  As to the production and all of it.

N8N5javC

1              MR. SPIRO:  Yes, your Honor.

2              THE COURT:  How long has the subpoena been extant?

3              MS. McLEOD:  The initial subpoena was issued to them

4    in October of last year and they have produced to us --

5              THE COURT:  So they've had 10 months to sit on that

6    subpoena.

7              MS. McLEOD:  To be fair, they have not -- I wouldn't

8    say they have been sitting on it, we have been producing -- we

9    have produced a number of things.  To give your Honor a sense

10   of what JP Morgan Chase --

11             THE COURT:  It is voluminous.  There were 4,000 names

12   that they think they had bought and they got 330 names -- I'm

13   off.  There are 4 million names that they purchased and

14   received 300,000 actual names, so it is alleged.  That means

15   that there is a set of data for 4 million people -- or

16   4 million identities, to put it better.  It takes time.  I

17   understand that.  Internal communications take time.

18   Distinguishing between that which is producible and that which

19   is covered by privilege takes time and may be difficult but

20   there has already been 10 months of time and I am getting

21   impatient.

22             MS. McLEOD:  Understood, your Honor.  We will discuss

23   with them.  And just to give you a sense of the materials --

24             THE COURT:  I would like you to do this.

25             MS. McLEOD:  Yes, your Honor.

N8N5javC

| | |
|---|---|
| 1 | THE COURT:  I would like you to tell counsel at JP |
| 2 | Morgan Chase that the Court wants the production ended by |
| 3 | October 13.  The privilege log should be furnished on a rolling |
| 4 | basis, like every two or three weeks, then you share those |
| 5 | privilege logs with defense counsel, and then we meet September |
| 6 | 26 at 2:30. |
| 7 | THE DEPUTY CLERK:  Give me the date again, Judge? |
| 8 | THE COURT:  September 26, 2:30. |
| 9 | MR. SPIRO:  Your Honor, could I be heard on just a |
| 10 | couple of ancillary discovery issues? |
| 11 | THE COURT:  Yes. |
| 12 | MR. SPIRO:  Because I want to make sure we don't come |
| 13 | back to court and have Groundhog Day again. |
| 14 | THE COURT:  Yes. |
| 15 | MR. SPIRO:  One issue is that we need to know who the |
| 16 | custodians are that they're searching.  As I have said a few |
| 17 | times to the Court, and I think as Judge Liman noticed when the |
| 18 | U.S. Attorney's office sought a stay of the SEC proceedings, |
| 19 | again, JP Morgan seems to be driving this process.  We know who |
| 20 | the custodians are that they've picked but it is not all the |
| 21 | custodians that we need information from, and other people that |
| 22 | we know that are intricately involved in the deal and are |
| 23 | copied on other things and that we know are involved.  So, what |
| 24 | we need is the executive team that did the due diligence and |
| 25 | had the initial mandate for this transaction to go forward. |

N8N5javC

1    And so, I assume we can meet and confer with the government on

2    the names that we need searched but I don't want to come back

3    here and get --

4              THE COURT:  Why do you need the names?

5              MR. SPIRO:  Why do we need the names?  Is that the

6    question from the Court?

7              THE COURT:  Yes.

8              MR. SPIRO:  Because we can't have sort of

9    cherry-picked results where JP Morgan decides we are going to

10   search these 10 people because they didn't have meaningful

11   conversations that could cause doubt on our case.  Right?

12   JP Morgan has an economic incentive here, they have a civil

13   lawsuit and has every reason to not necessarily produce what

14   they ought to from necessary custodians, so they can't be left

15   at their whim to be searching 10 people and not another 10

16   people.  So, in order to get the necessary discovery in a

17   criminal case we need the right people to be searched and so we

18   are going to furnish the government with additional names that

19   we need searched and included in the discovery.

20             THE COURT:  Ms. McLeod?

21             MS. McLEOD:  Your Honor, as you know, defendants are

22   not entitled to tell a responding third-party how to respond to

23   a subpoena.  If they have their own subpoena that might be a

24   different question if they want to work something out.

25             THE COURT:  Don't invite them to have their own

N8N5javC

1    subpoena because it is going to take more time.

2              MS. McLEOD:  That's fair, your Honor.

3              So, we have actually provided them, as a courtesy, a

4    list of custodians and now essentially it is every --

5    essentially there is nothing with which the defendant will be

6    satisfied, it is always an extremely deep dive into every

7    aspect of what JP Morgan Chase is doing.  They are responding

8    to a subpoena in the normal course, they have counsel.  There

9    is no -- we have asked if they have a legal basis to provide us

10   a legal basis for these kinds of demands but essentially

11   defendants inserting themselves, they claim JPMC is driving

12   this bus.  It seems like the defendants want to drive the bus.

13   This is a government subpoena to a private entity and it's not

14   the defendants' place to essentially tell us, or tell JP Morgan

15   Chase, the ins and outs of what they want.

16             THE COURT:  I will be driving the bus.

17             MS. McLEOD:  That is absolutely correct, your Honor.

18             MR. BUCKLEY:  Your Honor --

19             THE COURT:  Just a minute.

20             MR. BUCKLEY:  Sure.

21             (Pause)

22             THE COURT:  Yes?

23             MR. BUCKLEY:  Thank you, Judge.

24             Just to that last point, Rule 16 obviously encompasses

25   information that is material to the preparation of the defense.

1    I would note for the Court that on the custodian list that has

2    been provided by the government, to date, we are missing names

3    of individuals that are identified in the SEC's complaint as

4    relevant individuals.  I don't understand why or how that is

5    the case, but we would respectfully submit that at the very

6    least we should understand the scope of what it is the

7    government has requested because I expect there will be gaps

8    between what we believe to be material information as far as

9    the preparation of the defense and what the government here

10   thinks is appropriate.  And that, likely, will lead to motion

11   practice.  Ideally we would avoid that if we can continue the

12   dialogue with the government but this idea that the defense is

13   driving the bus --

14           THE COURT:  Let's not use that metaphor anymore,

15   please.

16           There are three criteria under Rule 16.  The item is

17   material to preparing the defense.  The government intends to

18   use the item in its case-in-chief at trial.  Third, the item

19   was obtained from or belongs to the defendant.  So we are

20   talking about the item being material to preparing the defense.

21   If I get a contention, Ms. McLeod, that certain categories,

22   certain custodians are important for their defense, it is very

23   difficult to say no.  So what is your suggestion in response to

24   what Mr. Spiro or Mr. Buckley bring out?

25           MS. McLEOD:  I think that's all understood, your

N8N5javC

1    Honor, and fair.  I think the devil is in the detail.

2              THE COURT:  It seems not to be well understood.

3              MS. McLEOD:  The devil is in the details, I think,

4    because there are claims about things that are missing.  Those

5    names have never been given to the government and we have

6    talked to defense counsel many times about this, so if they

7    want to explain to us so we can concretely look at the things,

8    the request --

9              THE COURT:  You can't give them more than that than

10   which is in your possession or control.

11             MS. McLEOD:  That's correct.

12             THE COURT:  And you don't control a third-party

13   subpoena.  That's fair.  So, Mr. Buckley, Mr. Spiro, you have

14   got to be open with the government.

15             MR. SPIRO:  We can provide additional names to the

16   government but the other thing that has come up now a few

17   times, and as Judge Liman pointed out very early on in this

18   case when he granted the stay and said to basically bring this

19   to your Honor, because this has gone on for so long and we

20   don't know what the contours of the subpoena are, we need to

21   see the subpoena and know what they're responding to or we

22   don't know where the gaps are.

23             THE COURT:  Can I be made aware of all your demands so

24   that I can deal with them and not piecemeal?

25             MR. SPIRO:  Sure.

N8N5javC

| | |
|---|---|
| 1 | THE COURT:  You want a copy of the subpoena? |
| 2 | MR. SPIRO:  We want a copy of the subpoenas. |
| 3 | THE COURT:  Can the defense be given a copy of the |
| 4 | subpoena, Ms. McLeod? |
| 5 | MS. McLEOD:  Your Honor, the requests for our |
| 6 | subpoenas and our communications with JP Morgan Chase in the |
| 7 | course of a grand jury investigation -- |
| 8 | THE COURT:  I didn't say about communications. |
| 9 | MS. McLEOD:  OK. |
| 10 | THE COURT:  I said the subpoena. |
| 11 | MS. McLEOD:  So I think the substance of the subpoena |
| 12 | we would likely be willing to share that with them but the -- |
| 13 | our concern with this has been anything we share with them in |
| 14 | the aim of being helpful, they have come back with greater and |
| 15 | more demands about -- |
| 16 | THE COURT:  What else is new. |
| 17 | MS. McLEOD:  Again, also fair. |
| 18 | THE COURT:  Let's not play that game because it is |
| 19 | endless.  You are not required to give up names of witnesses |
| 20 | but the custodians are not likely to be witnesses.  Give the |
| 21 | names of the custodians you know, and by next week or two |
| 22 | weeks, whatever you want, Mr. Buckley and Mr. Spiro will give |
| 23 | you the names of that which they want.  I think the third-party |
| 24 | subpoena is something that is objective and if there is |
| 25 | anything that you need to redact, redact it.  Otherwise, give |

1    it.  Unless there is an objection that I can rule on.

2              MS. McLEOD:  So in terms of -- just to clarify, we

3    have given them the name of the custodians and it is very a

4    very long list, it is a dozens and dozens of names.

5              THE COURT:  I understand.  Maybe will not be in good

6    faith.  Maybe the list will be coincident with what you have

7    given.  We don't know that until we are forcing them to

8    disclose and I want to force them to disclose what they want.

9    Then, if it is too much, we can decide.  But I need to keep

10   close tabs on this production, otherwise it is not going to go

11   anywhere and we will be in exactly the same position in October

12   and November as we are now.

13             Let me stop for a minute so the two of you can

14   consult.  Mr. Fergenson and Ms. McLeod, do you have something

15   to say each other?  Go ahead and say it.

16             MR. BUCKLEY:  Just one moment.

17             THE COURT:  Ms. McLeod is speaking but you want to

18   consult.  Go ahead.

19             (Counsel conferring)

20             MS. McLEOD:  Thank you, your Honor.  We are happy to

21   share the substance and essentially the text of the initial

22   subpoena request to JP Morgan Chase.  We typically don't

23   disclose our actual subpoenas due to 6(e).

24             THE COURT:  Why is that?

25             MS. McLEOD:  Due to the grand jury secrecy rules, we

N8N5javC

```
 1    typically don't produce or disclose our actual subpoenas but

 2    the text I think is what they want, I don't think they

 3    necessarily care about the --

 4            THE COURT:  The demand for documents, whatever is

 5    itemized.

 6            MS. McLEOD:  Right.

 7            THE COURT:  Mr. Spiro, Mr. Buckley, any problems with

 8    that?

 9            MR. SPIRO:  First of all, a subpoena is not subject to

10    6(e).  JP Morgan has the subpoena, they could just give us the

11    subpoena.  We can subpoena them for the subpoena.  Subpoenas

12    get turned over in cases all the time.  I guess if it is the

13    identical substance then I will take it and look at it --

14            THE COURT:  If the government represents it is the

15    actual substance I will accept the representation and I think

16    you should also.

17            MR. SPIRO:  Understood, your Honor.

18            THE COURT:  So if Ms. McLeod tells you in a letter

19    that this is the entire set of demands, that's satisfactory.

20            MR. SPIRO:  Understood, your Honor.

21            THE COURT:  When can you do that?

22            MS. McLEOD:  We can send them a letter in the next

23    week.

24            THE COURT:  Good.  And when will I get, Mr. Spiro and

25    Mr. Buckley, all that you demand?
```

1              MR. SPIRO:  As I understood the Court's directive, we

2     will provide, by the end of next week, a list of custodians

3     which we assume, based on the Court's comments today, will add

4     to the custodian list of the government's and JP Morgan's and

5     at that time, if there is any issue, we will bring it to the

6     Court's attention.  But so long as they're going to eventually

7     comply with this very old subpoena and search the relevant

8     parties' names, that's going to be sufficient for the defense

9     at this stage.

10             THE COURT:  We will see what is sufficient.

11             So, by the end of next week, which is August 31 -- we

12    will make it September 1, all identifications by defendants of

13    those potential custodians of Chase who should be asked to

14    search their files will be given to the government.

15             MR. BUCKLEY:  Your Honor, if I may?

16             Just two additional points.  With regard to sharing

17    the subpoena and the government's representation about Rule

18    6(e), they have produced in discovery numerous subpoenas served

19    on third-parties, to date.  I don't see any reason why there

20    should be a different treatment of the subpoena to JP Morgan.

21    I don't want to burden the Court, but I have in front of me

22    several production numbers from the government of the actual

23    subpoenas with the riders demanding documents.  My second point

24    though, which I think is really the more important one, is the

25    subpoena requested records, they've been engaged with JP Morgan

N8N5javC

1    for 10-plus months on this subpoena.  What I think is

2    appropriate to be disclosed to the defense would be to the

3    extent they have narrowed or otherwise changed the substance of

4    what their original request was, I think the defense needs to

5    understand what exactly it is that they have agreed with

6    JP Morgan for JP Morgan to produce.  And that is how we will

7    identify whether there are any holes that we think need to be

8    plugged.

9              THE COURT:  The government does not have to identify

10   its investigative techniques and I'm not requiring the

11   government to do that.  With regard to the text of the subpoena

12   to Chase, are you going to deliver that, Ms. McLeod, within?

13             MS. McLEOD:  Within the next week, your Honor, so by

14   next Wednesday.

15             THE COURT:  By August 30th, along with a

16   representation -- defendants will make known their identities

17   of other potential custodians when?

18             MR. SPIRO:  I think the Court indicated September 1.

19             THE COURT:  Is that good?

20             MR. SPIRO:  That's fine, your Honor; yes.

21             THE COURT:  Mr. Buckley?

22             MR. BUCKLEY:  Yes, Judge.

23             THE COURT:  When are you going to give the privilege

24   logs that you have to the defense?

25             MS. McLEOD:  The privilege log that we have, the one

N8N5javC

```
1   that we have was produced before the conference today, and any

2   others that come into our possession we will produce promptly.

3          THE COURT:  So on September 26, which will be my

4   business about resolving attorney-client privilege, in which

5   case Chase will have to be here.

6          MR. SPIRO:  Yes, your Honor.  We think that that is a

7   good and necessary next step.

8          THE COURT:  There has to be a lot of meet and confers

9   before that.

10          MR. SPIRO:  Understood, your Honor.

11          THE COURT:  I need to have a schedule.  Do you want to

12   suggest one, Ms. McLeod?

13          MS. McLEOD:  A schedule for conferring?

14          THE COURT:  Meets and confers.

15          MS. McLEOD:  With defense counsel?

16          THE COURT:  And with Chase.

17          MS. McLEOD:  Perhaps something in the week before the

18   conference.

19          THE COURT:  Too late.

20          MS. McLEOD:  Mid-September.  We are at your Honor's --

21          THE COURT:  We are going to meet September 26.  You

22   should meet the week of Labor Day, and again, if necessary, the

23   week of the 18th, so that the disputes I have to rule on will

24   be as narrow as possible on September 26.  I would like, by

25   Thursday the 21st, to have a joint letter from defense and the
```

N8N5javC

1    government on what is open.  On the 26th, the documents in

2    dispute should be brought to the courtroom for my ruling.

3              Does that make sense?

4              MS. McLEOD:  Yes, your Honor.

5              MR. SPIRO:  Yes, your Honor.

6              MR. BUCKLEY:  Yes, Judge.

7              THE COURT:  Is there anything else I should be doing

8    on the 26th?

9              MR. SPIRO:  I think the primary orders of business

10   have been identified by the Court.  After we get the discovery,

11   or if there are other issues, we would suggest that we include

12   that in the letter to the Court, if there is anything else that

13   we think is likely to come up.

14             THE COURT:  I was going to turn to that but how do we

15   deal with hastening production?  What does Chase say now?  When

16   were they planning to finish production?

17             MS. McLEOD:  Chase has currently told us that they

18   still, or they anticipate production to be complete in October.

19             THE COURT:  In October.

20             MS. McLEOD:  And I think you gave them October 13th,

21   and so we will send them the transcript of this conference so

22   that they're aware of all of the deadlines.  We will also let

23   them know that your Honor would like privilege logs to be sent

24   to us on a quicker timeline than they were originally proposing

25   and we will convey that to them as well.  And I think in terms

N8N5javC

1    of anything else that would be on the agenda, the letter that

2    your Honor is proposing to be sent on the 21st, should give you

3    a sense --

4              THE COURT:  Identifying Chase's commitment to complete

5    production by October 13 with all privilege logs.

6              MS. McLEOD:  Yes, your Honor.  We will discuss that

7    with them.

8              THE COURT:  There is likely to be disputes after

9    defendants identify the custodians that they would like you to

10   obtain production from, so that also will be decided on

11   September 26.

12             MS. McLEOD:  That makes sense, your Honor.

13             THE COURT:  OK.  Anything else?

14             MS. McLEOD:  Your Honor, the government would move to

15   exclude time.

16             THE COURT:  Before we do that, any other matters that

17   anybody wants to bring to my attention?

18             MR. SPIRO:  Not from the defense, your Honor.

19             MR. BUCKLEY:  No, your Honor.  Thank you.

20             THE COURT:  When do you think it would be appropriate,

21   Ms. McLeod, to set a trial date?  Not today, but I think maybe

22   on September 26.

23             MS. McLEOD:  We would be prepared to set a trial date

24   at that point, your Honor.

25             MR. SPIRO:  All I can say to the Court is, you know,

N8N5javC

1      we still haven't seen a single relevant internal communication

2      from JP Morgan, and so until I see one document, it is a little

3      hard for me to start talking about a trial date, but at the

4      moment we have the material we need.

5              THE COURT:  I think you are right.  You are right.

6              MR. SPIRO:  Yes.

7              THE COURT:  So, assuming that Chase finishes

8      production October 13, I could see you October 24 at 2:30.  So

9      we have status conferences September 26 at 2:30 and October 24

10     at 2:30.  By October 24, all production would have been made,

11     hopefully all disputes in the way of what has to be produced

12     will have been made.  We can set a trial and motion schedule on

13     October 24, tie up any many loose ends, and set a trial date.

14             So the government should come in with a proposal when

15     it is likely to be tried and how long the trial will be

16     expected to last.

17             MS. McLEOD:  Yes, your Honor.

18             THE COURT:  Anything else now?

19             MR. SPIRO:  No, your Honor.

20             MR. BUCKLEY:  No, Judge.

21             THE COURT:  Ms. McLeod?

22             MS. McLEOD:  The government moves to exclude time

23     under the Speedy Trial Act so that defendants can continue to

24     review discovery, the government can continue to produce

25     discovery, the parties can consider any motions, and we would

N8N5javC

1    move to exclude time until October 24th, the second status

2    conference.

3            THE COURT:  Objection Mr. Spiro?

4            MR. SPIRO:  No, your Honor.

5            THE COURT:  Objection, Mr. Buckley?

6            MR. BUCKLEY:  No objection, your Honor.

7            THE COURT:  So ordered.  Thank you, all.  Have a good

8    rest of the summer.

9                              o0o

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25