```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,           CORRECTED

           v.                       23 Cr. 251 (AKH)

CHARLIE JAVICE,
OLIVIER AMAR,
                                    Conference
                Defendants.

------------------------------x
                                    New York, N.Y.
                                    February 20, 2024
                                    11:15 a.m.


Before:

              HON. ALVIN K. HELLERSTEIN,

                                    U.S. District Judge

                       APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  DINA McLEOD
     MICAH FERGENSON
     RASHMI BASKARAN
     Assistant United States Attorneys

QUINN EMANUEL URQUHART & SULLIVAN LLP
     Attorneys for Defendant Charlie Javice
BY:  SAMUEL P. NITZE
     ERICA PERDOMO

KOBRE & KIM
     Attorneys for Defendant Olivier Amar
BY:  SEAN BUCKLEY
     ALEXANDRIA GUTIERREZ SWETTE
```

1     (Case called)
2             THE COURT:  Good morning, all.
3             MS. MCLEOD:  Good morning, your Honor.
4             Dina McLeod, Micah Fergenson, and Rashmi Baskaran, for
5     the government.
6             THE COURT:  Good morning.
7             MR. NITZE:  Sam Nitze and Erica Perdomo for
8     Ms. Javice, who is present here this morning.
9             Good morning, your Honor.
10            THE COURT:  Good morning.
11            MR. BUCKLEY:  Good morning, your Honor.
12            Sean Buckley and Alexandria Swette on behalf of
13    Mr. Amar, who is seated at counsel table.
14            THE COURT:  Good morning.
15            So I brought this on because there's a dispute on
16    whether the defendant should be given more time to declare
17    whether or not they're going to rely on attorney-client
18    privilege.
19            Ms. McLeod, why shouldn't they have more time if they
20    need it?
21            MS. MCLEOD:  Two main reasons, which we note in our
22    letter, your Honor.  The first is that the defendants currently
23    know the facts that would lay the basis for an
24    advise-of-counsel defense.
25            THE COURT:  You don't know, certainly, if they know it

or don't know it. You're not they.

MS. MCLEOD: Well, the answer of as to whether they knew they sought the advice of counsel, disclosed relevant facts to counsel, and followed legal advice would be information within their knowledge. They would be --

THE COURT: It would be within their knowledge, but they're planning for trial and that's a process. They haven't seen all the documents that J.P.Morgan is producing. They haven't really reviewed the privilege log. And I think they need to get a view of this. They're going to stick their necks out and try to say their actions are excused by advice of counsel, and if they do that and they fall on their face, it could affect how the trial runs.

I am not in favor of pushing them at this point in time because I don't think it makes any difference to you.

MS. MCLEOD: I think there's two particular issues that we raise in the letter as to why things are complicated. This isn't an issue where the defendants own the privilege, and, therefore, it's their decision to waive. There's a preliminary question of whether J.P.Morgan Chase can be forced to waive the privilege --

THE COURT: These are documents --

MS. MCLEOD: I'm sorry, your Honor.

THE COURT: These are documents, as I understand it, where Javice or Amar are communicating or receiving

1   communications.  In other words, they are on the documents.

2   Now, they're also in the control group with regard to their

3   company and one can argue that it's the company's privilege,

4   but also one can argue that it's a dual privilege.  Also, it's

5   hard to feel that there's a defense when the party that is

6   seeking to look at the document is part of that confidence.  So

7   I'm not sure there's privilege against Javice and Amar.

8             MS. MCLEOD:  I think that is one of the reasons why

9   it's not complicated and why there potentially could be

10  briefing that needs to be resolved.  The other thing --

11            THE COURT:  We've put a date on for that.  We've

12  scheduled that and I'm going to be ruling on that stuff.

13            MS. MCLEOD:  Well, I think that's another thing that

14  we noted in our letter, your Honor, which is that you're going

15  to be deciding whether things are -- should come off the

16  privilege log, so whether J.P.Morgan Chase improperly

17  categorized something as privileged.  But if something comes

18  off the privilege log it will not be a basis for an

19  advice-of-counsel defense because it's not privileged.  It's

20  not advice of counsel.  And so what your ruling -- your rulings

21  maybe are going to be relevant to certain things but they will

22  not be relevant or necessary for them to decide whether to push

23  a notice -- push an advice-of-counsel defense because those

24  rulings will necessarily release documents that are not legal

25  communications.

1          THE COURT:  Why don't we discuss whether or not
2  defendants should declare after I make rulings on privilege?
3          MS. MCLEOD:  I think we can discuss -- I think we can
4  discuss that, your Honor.  I think that may -- that's, of
5  course, your Honor's prerogative in terms of how to manage the
6  pretrial schedule.  I would say --
7          THE COURT:  I think that defendants need to know where
8  they stand before they commit themselves to their defenses.
9          MS. MCLEOD:  I would say -- so I think that goes,
10 first of all, to, I think, the preliminary issues that I think
11 they will be briefing on the question of knowing where they
12 stand may depend on litigation that may occur that your Honor
13 may need to decide whether, for example, if J.P.Morgan Chase
14 will not waive the privilege, whether that claim of privilege
15 trumps an advice-of-counsel defense or not.
16         THE COURT:  First job is to define the contours of
17 privilege.  People in the business of producing documents see
18 that there's an attorney touching it may declare privilege when
19 privilege may not be available.  I have to rule on those
20 questions.  And if I rule that the document is not privileged,
21 there's a subpoena outstanding that requires production.
22         MS. MCLEOD:  Right.  But I think my point, your
23 Honor --
24         THE COURT:  So I think the defendants are entitled to
25 know my rulings and what they can see and what they can't see

1 before they make up their minds.

2     MS. MCLEOD: If I could make one proposal, if your
3 Honor wants to move the schedule, of course, that's what your
4 Honor will do, I think in order for the government to be able
5 to fairly prepare, it needs to at least know -- defense should
6 at least identify which counsel we are talking about. There
7 are many lawyers. And they should identify, even if they're
8 not going to notice right now, what counsel are in the universe
9 here because, as we noted, there's deal counsel who has a
10 totally different privilege, and then there's potentially other
11 individual counsel.

12     THE COURT: It all depends what they can get access to
13 and it all depends very much on whether the documents, as to
14 which privilege claims are made, are documents that they
15 originated or that were directed to them. I have to rule on
16 that question. And it's very hard for me to see that that is
17 within the privilege that can be asserted against the people
18 who are involved in the document that's created.

19     MS. MCLEOD: Well, understood, your Honor. However,
20 they are the employees of the company. They do not hold the
21 company's privilege. That's why J.P.Morgan Chase --

22     THE COURT: It begs the question, more than one person
23 can own a privilege.

24     MS. MCLEOD: And that may --

25     THE COURT: I haven't seen any cases where the people

1  in a control group who fall out of a control group can have
2  access to the documents that they originated and saw within the
3  control group situation. I don't know that answers it.
4      MS. MCLEOD: I think, your Honor, on one of those
5  cases that we cited in our letter or in the joint letter, was
6  *U.S. v. Milton*, there has been litigation in districts -- let
7  me find the page for you, it's Page 4, the second full
8  paragraph. There has been litigation in situations where a
9  company owned the privilege and the defendant was a criminal
10 defendant who was an employee of the company and wanted to use
11 the advice given to that employee by company counsel, but the
12 company refused to waive. And so the judge had to decide that.
13 This was also something that came up somewhat in the trial of
14 Sam Bankman-Fried who claimed again that he may want -- he may
15 have wanted to rely on advice given to him by company counsel
16 but the company held the privilege and not him as an
17 individual.
18     And in the case of *U.S. v. Milton*, Milton was in the
19 control group. He was the --
20     THE COURT: Is there time now to brief?
21     MS. MCLEOD: Is there time to brief?
22     THE COURT: Is now a good time to brief this issue?
23     MS. MCLEOD: I think we could certainly set a briefing
24 schedule if that makes sense, your Honor. Yes.
25     THE COURT: What do defendants think?

1          MR. NITZE:  Your Honor, Sam Nitze, for Ms Javice.

2          Fortunately, we sit here with many months to go before

3   the start of trial.  You'll notice from all of the cases cited

4   by the government, no notes of ours, we know of no judge, no

5   opinion in the entire federal reports has required notice this

6   far in advance, and I raise that point to say we have some

7   time --

8          THE COURT:  I'm going to give you time.

9          MR. NITZE:  The reason I'm starting there is just to

10  say briefing this complicated issue that may never arise, it

11  may be -- the question of whether --

12         THE COURT:  It's on the privilege log, it's going to

13  arise.  No?

14         MR. NITZE:  Well, the question of privilege will arise

15  and we're in discussion with counsel for J.P.Morgan, but your

16  Honor already has set a schedule to adjudicate baseline

17  questions.

18         THE COURT:  You think it's premature?

19         MR. NITZE:  I think it's premature for an advisory

20  opinion of sorts on a difficult legal question that may never

21  come before the Court.

22         THE COURT:  It will come before the Court and it may

23  be premature to do so until that is a declaration on the

24  privilege log.  I agree with you there.

25         All right.  So I will give you an adjournment.  When

9
O2KUJAVC

1   am I making rulings?
2           MR. NITZE:  We're appearing before your Honor on
3   May 30th for a hearing on privilege.  We anticipate your
4   ruling will come --
5           THE COURT:  Raise the question on May 30th after we
6   have the discussion and I'll give you sufficient time from that
7   date for me to decide.
8           MR. NITZE:  Thank you, your Honor.
9           THE COURT:  I won't decide right now.  Just raise the
10  issue.  I'll give you an adjournment until May 30th and I'm
11  telling you, I will adjourn it again.  I don't know how long at
12  that time.
13          MR. NITZE:  Understood.  Thank you, your Honor.
14          MR. BUCKLEY:  Thank you, Judge.
15          THE COURT:  Is there anything I can help you with now?
16          MS. MCLEOD:  Not from the government.
17          THE COURT:  I have some things where you can help me.
18  Mr. Nitze, anything more?
19          MR. NITZE:  Nothing from us, Judge.
20          THE COURT:  Mr. Buckley?
21          MR. BUCKLEY:  No, your Honor.
22          THE COURT:  You can help me.  I'd like to see the deal
23  documents.  We're talking about a shareholder representative,
24  Frank.  Who is that person?
25          MS. MCLEOD:  It's not a person.  This is why it's a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10
O2KUJAVC

little complicated. It's an entity.

THE COURT: What's the entity?

MS. MCLEOD: It's an LLC.

THE COURT: The shell that ended up after the sale?

MS. MCLEOD: The company that holds the privilege for deal counsel who is Sidley Austin, Sidley Austin represented Frank in the acquisition. Pursuant to the merger agreement, this LLC holds the privilege for the benefit, on behalf of the equity holders and Frank, which include the defendants but also include other equity holders who are not defendants. And so that is, again, that's one of the reasons the government wanted to know if Sidley would be one of the counsel that defendants plan to rely upon because that is an unresolved question.

THE COURT: If you knew that Sidley was, what would you do?

MS. MCLEOD: I think we would have to look into how the LLC's privilege -- if it could waive privilege. The merger documents are not clear on how --

THE COURT: Would there be any discovery involving Sidley?

MS. MCLEOD: Yes. If they plan to -- if they identified Sidley as potentially giving advice that they would rely upon at trial, then we would want to know, you know, whether the correct facts were disclosed to Sidley and Sidley provided advice, etc.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  MR. NITZE:  And here, too, your Honor, there will be
2  an answer to that question --
3  THE COURT:  Let me think about that.
4  Was the deal a transfer of assets or a transfer of
5  stock?
6  MS. MCLEOD:  Stock.
7  THE COURT:  So all the selling shareholders sold?
8  MS. MCLEOD:  Correct.
9  THE COURT:  Among them Javice and Amar?
10 MS. MCLEOD:  Correct.  As well as other --
11 THE COURT:  So if this entity acts on behalf of
12 shareholders, it acts also on behalf of Javice and Amar?
13 MS. MCLEOD:  The problem is that -- well, that's the
14 question, your Honor.  I think you've identified the question,
15 which is -- that is an open question because there are other
16 equity holders who sold, and so the question --
17 THE COURT:  It also holds a privilege on their behalf?
18 MS. MCLEOD:  The merger agreement is silent as to how
19 the shareholder entity should act, whether it can act on behalf
20 of one person, two people, or whether they have to act as a
21 group.
22 THE COURT:  They can't make distinctions.
23 MS. MCLEOD:  So that is part of the problem.
24 THE COURT:  Is there an independent board of some
25 sort?  It there a manager of some sort?  Or it's a shell?

1    MS. MCLEOD:  That's something that everyone here would
2  have to find out, is who -- who the decision-maker would be,
3  who would decide, can they act pursuant to Javice or Amar's say
4  so alone, or do they have to take into account the other equity
5  holders, i.e., is it majority rules?  Is it unanimity?  Or can
6  one person decide to waive the privilege and everybody is stuck
7  with that?
8    THE COURT:  I don't know that anybody can act if
9  there's nobody in charge of the entity.  Sidley is not in
10 charge of the entity.  It's a lawyer.  It's an instructive
11 person not an instructing person.
12   MS. MCLEOD:  That's right, your Honor.  So this
13 particular entity is an entity that provides this type of
14 service in these type of situations.  They sort of are a legal
15 entity that will take on the privilege in these sort of
16 situations.  I don't think they otherwise have, you know,
17 involvement or substantive knowledge about the company.
18   THE COURT:  It's a convenient way of acting for
19 shareholders.  I'm not going to decide that today, but it's
20 very hard for me to believe that it can declare privilege on
21 behalf of some people and not all people, and among the all
22 people are Javice and Amar.  I don't know where this goes.
23   Do you have any plans to issue a 17(c) subpoena to
24 Sidley Austin, Mr. Nitze?
25   MR. NITZE:  I would just say that this question of

1  deal counsel --

2              THE COURT: Because if you're going to do it, you
3  better do it. I'm not going --

4              MR. NITZE: You're not doing this again.

5              THE COURT: There's certain things I'm not going to be
6  flexible on, among them are the trial dates and the critical
7  dates leading up to trial.

8              MR. NITZE: Understood, your Honor. I hear you to be
9  saying whatever complications there are with respect to this
10 question, we better be ready to address those as well on
11 May 30th when we see you again.

12             THE COURT: And you better create the procedures that
13 allow you to raise those questions.

14             MR. NITZE: Understood.

15             THE COURT: So if you want to issue a 17(c) subpoena
16 to Sidley Austin, do so.

17             MR. NITZE: Understood. Thank you, your Honor.

18             THE COURT: I may not give you time later.

19             Mr. Buckley, anything?

20             MR. BUCKLEY: Nothing further on that point, your
21 Honor.

22             Actually, just one clarification, Judge, the
23 authorization to issue the 17(c) subpoena to Sidley, does that
24 apply to Mr. Amar as well?

25             THE COURT: Whatever applies to Ms. Javice applies to

1  Mr. Amar. I'm not giving authorizations.

2  MR. BUCKLEY: Understood.

3  THE COURT: This is an act that you decide to do. The
4  issue comes back up to me if someone objects or there's a
5  motion to quash.

6  MR. BUCKLEY: Understood, Judge.

7  THE COURT: Anything else?

8  MS. MCLEOD: No, your Honor. Thank you.

9  MR. NITZE: No. Thank you, Judge.

10  MR. BUCKLEY: Nothing further. Thank you, your Honor.

11  THE COURT: Okay, folks.

12                          o0o