**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x

UNITED STATES OF AMERICA,

      - v. -                           23 Cr. 251 (AKH)

CHARLIE JAVICE and OLIVIER AMAR,

           Defendants.

------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**OLIVIER AMAR'S MOTION TO SUPPRESS EVIDENCE FROM PHONE SEIZURE**

KOBRE & KIM LLP
Sean S. Buckley
Steven G. Kobre
Alexandria E. Swette
Ana Frischtak
800 Third Ave
New York, New York 10022
Tel: (212) 488-1200
Fax: (212) 488-1220

Sydney Sgambato Johnson (pro hac vice)
Jake Rush (pro hac vice forthcoming)
1919 M Street, NW
Washington, DC 20036
Tel: (202) 664-1900
Fax: (202) 664-1920

*Counsel for Defendant Olivier Amar*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ............................................................................................................. 2

APPLICABLE LAW ....................................................................................................... 5

DISCUSSION ................................................................................................................. 6

I.      The Affidavit Did Not Establish Probable Cause to Search the Seized Amar Device ....... 7

        A.      The Affidavit Misleadingly Conflates Phone Numbers with Physical Phones ...... 8

        B.      The Affidavit Baselessly Asserts That There Is Probable Cause to Believe
                that the Subject Devices Would Have Contained Evidence ................................. 13

        C.      The Government Substituted General Experience for Probable Cause ................ 16

II.     The Warrant Should Not Be Afforded Deference ............................................................ 18

III.    Suppression is Necessary to Deter Future Violations of the Fourth Amendment ........... 21

        A.      The Warrant Is Overbroad as to All Devices ...................................................... 22

        B.      The Warrant Violates the Fourth Amendment's Particularity Requirement ........ 24

        C.      Suppression Is Appropriate to Deter Future Violations of the Fourth
                Amendment ........................................................................................................... 25

CONCLUSION .............................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. Gant*,
 556 U.S. 332 (2009) ................................................................................ 27

*Ashcroft v. al-Kidd*,
 563 U.S. 731 (2011) .................................................................................. 5

*Bumper v. North Carolina*,
 391 U.S. 543 (1968) ............................................................................... 26

*City of Ontario, Cal. v. Quon*,
 560 U.S. 746 (2010) ............................................................................... 18

*Dufort v. City of New York*,
 874 F.3d 338 (2d Cir. 2017) .................................................................. 13

*Franks v. Delaware*,
 438 U.S. 154 (1978) ............................................................................... 13

*Ganek v. Leibowitz*,
 874 F.3d 73 (2d Cir. 2017) .................................................................... 16

*United States v. Garcia*
 2023 WL 4850553 (D. Conn. July 28, 2023) ................................... Passim

*United States v. George*
 975 F.2d 72 (2d Cir. 1992) .................................................................... 25

*United States v. Griffith*
 867 F.3d 1267 (D.C. Cir 2017) ......................................................... 25, 26

*Herring v. United States*,
 555 U.S. 135 (2009) ............................................................................ 6, 27

*Hoffa v. United States*,
 385 U.S. 293 (1966) ............................................................................... 27

*Illinois v. Gates*,
 462 U.S. 213 (1983) ................................................................................. 4

*In re 650 Fifth Ave. and Related Properties*,
 934 F.3d 147 (2d Cir. 2019) ............................................................... 9, 22

*Marron v. United States*,
 275 U.S. 192 (1927) ............................................................................... 23

*Riley v. California*,
 573 U.S. 373 (2014) ....................................................................... 5, 9, 15

*Stanford v. State of Tex.*,
  379 U.S. 476 (1965) ......................................................................................... 5

*United States. v. Shrum*,
  908 F.3d 1219 (10th Cir. 2018) ...................................................................... 26

*United States. v. Sinisterra*,
  2024 WL 897935 (D. Conn. Mar. 1, 2024) ...................................................... 18

*United States. v. Smith*,
  967 F.3d 198 (2d Cir. 2020) .............................................................................. 5

*United States v. Abrams*,
  615 F.2d 541 (1st Cir. 1980) ............................................................................. 9

*United States v. Bertini*,
  2023 WL 8258334 (S.D.N.Y. Nov. 29, 2023)...................................... 16, 19, 20

*United States v. Buck*,
  813 F.2d 588 (2d Cir. 1987) ............................................................................ 23

*United States v. Burgos*,
  2021 WL 3788962 (S.D.N.Y. Aug. 25, 2021) ................................................. 13

*United States v. Calandra*,
  414 U.S. 338 (1974) ........................................................................................ 22

*United States v. Cioffi*,
  668 F. Supp. 2d 385 (E.D.N.Y. 2009) ............................................................... 5

*United States v. Clark*,
  638 F.3d 89 (2d Cir. 2011) ......................................................................Passim

*United States v. Cohan*,
  628 F. Supp. 2d 355 (E.D.N.Y. 2009) ............................................................. 25

*United States v. Disla Ramos*,
  2022 WL 17830637 (S.D.N.Y. Dec. 21, 2022) .......................................... 14, 24

*United States v. Falso*,
  544 F.3d 110 (2d Cir. 2008) ....................................................................... 20, 21

*United States v. Gaines*,
  2021 WL 4263375 (D. Conn. Sept. 20, 2021)................................................... 5

*United States v. Galpin*,
  720 F.3d 436 (2d Cir. 2013) ........................................................................ 5, 23

*United States v. Garlick*,
  2023 WL 2575664 (S.D.N.Y. Mar. 20, 2023).................................................. 19

*United States v. Gatto*,
  313 F. Supp. 3d 551 (S.D.N.Y. 2018) ............................................................. 14

iii

*United States v. Genin*,
   594 F. Supp. 2d 412 (S.D.N.Y. 2009) ...................................................... 21

*United States v. Gonzalez-Arocho*,
   2024 WL 277507 (D.P.R. Jan. 25, 2024) ........................................... 14, 15

*United States v. Groezinger*,
   625 F. Supp. 2d 145 (S.D.N.Y. 2009) ...................................................... 21

*United States v. Guzman*,
   1998 WL 61850 (S.D.N.Y. Feb. 13, 1998) .............................................. 21

*United States v. Kidd*,
   386 F. Supp. 3d 364 (S.D.N.Y. 2019) ...................................................... 23

*United States v. Lauria*,
   70 F.4th 106 (2d Cir. 2023) ..................................................... 5, 11, 17, 23

*United States v. Leon*,
   468 U.S. 897 (1984) ................................................................................... 22

*United States v. Levy*,
   2013 WL 664712 (S.D.N.Y. Feb. 25, 2013) ............................................. 8

*United States v. Marcus*,
   807 F. Supp. 934 (E.D.N.Y. 1992) ............................................................ 6

*United States v. Merriweather*,
   728 F. App'x 498 (6th Cir. 2018) ............................................................ 21

*United States v. Purcell*,
   967 F.3d 159 (2d Cir. 2020) ...................................................................... 5

*United States v. Raymonda*,
   780 F.3d 105 (2d Cir. 2015) .................................................................... 10

*United States v. Rios*,
   881 F. Supp. 772 (D. Conn. 1995) .......................................................... 11

*United States v. Rosa*,
   626 F.3d 56 (2d Cir. 2010) ................................................................ 24, 26

*United States v. Rubio*,
   727 F.2d 786 (9th Cir. 1983) ................................................................... 19

*United States v. Sandalo*,
   2023 WL 3885805 (2d Cir. June 8, 2023) ................................................ 9

*United States v. Singh*,
   390 F.3d 168 (2d Cir. 2004) ...................................................................... 5

*United States v. Skyfield*,
   2023 WL 8879291 (S.D.N.Y. Dec. 22, 2023) ........................................ 21

*United States v. Smith*,
    2021 WL 2982144 (D.D.C. July 15, 2021) ............................................ 24

*United States v. Tairod Nathan Webster Pugh*,
    2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015) ......................................... 6

*United States v. Travisano*,
    724 F.2d 341 (2d Cir. 1983) ................................................................. 7

*United States v. Voustianiouk*,
    685 F.3d 206 (2d Cir. 2012) ................................................................. 5

*United States v. Wells*,
    2021 WL 5401494 (S.D.N.Y. Nov. 18, 2021) ....................................... 14

*United States v. Wey*,
    256 F. Supp 3d 355 (S.D.N.Y. 2017) ....................................... 8, 24, 25

*United States v. Yu*,
    2023 WL 4687970 (E.D.N.Y. July 21, 2023) ........................................ 18

*United States v. Zemlyansky*,
    945 F. Supp. 2d 438 (S.D.N.Y. 2013) ............................................. 5, 9

*Zurcher v. Stanford Daily*,
    436 U.S. 547 (1978) ........................................................................... 17

## Statutes

18 U.S.C. § 2703(b) ................................................................................ 7

18 U.S.C. § 2705 .................................................................................... 7

18 U.S.C. § 2705(a)(2) ........................................................................... 8

U.S. Const. amend. IV ........................................................................... 4

## Rules

Fed. R. Crim. P. 41(f)(1)(C) ................................................................... 8

## PRELIMINARY STATEMENT

The most telling aspect of the affidavit used to establish probable cause to seize Mr. Amar's phone is what it does not say. It does not identify any details about Mr. Amar's phone (neither the make nor model) or the other electronic devices for which it seeks authorization to search. It does not identify any details based on concrete facts about the contents of the actual electronic device(s) it seeks to search beyond an agent's "say so" based on his unspecified experience. And it makes no effort to contextualize the calls that Mr. Amar made over a two-year period—information that was readily available to the Government—which would have revealed relatively minimal communications with a colleague over a long period of time. The Government also knew—but never said—that Mr. Amar did not use the phone they seized during substantial periods of the alleged fraud; he owned and used an entirely different phone at the time, and another one before that. All of this information should have been considered in the Magistrate Judge's probable cause determination, but the Government consciously decided not to include it in the warrant application. This wanting affidavit—replete with omissions and misrepresentations—resulted in the issuance of a constitutionally deficient warrant. The Fourth Amendment requires more, including a rigorous review of the Government's application by a neutral and detached magistrate judge to ensure probable cause exists. While deference ordinarily is appropriate, the errors and omissions in the affidavit and on the face of the warrant call for a probing review of what the Government submitted in support of its warrant application.

So, not only did the Government lack probable cause for this (or any) seizure, but it fundamentally misled the Magistrate Judge (who accepted its conclusions without question) on facts in the Government's possession that go to the heart of their probable cause showing. And there is more. Lacking probable cause for the phone seizure, the Government coerced Mr. Amar

into providing his phone and passcode under the threat of searching his entire home (that is, executing the full scope of the deficient warrant).

As a result, the Court should suppress all evidence derived from this unconstitutional seizure and order the Government to state whether (and to what extent) they relied on evidence from the phone for the Indictment.  In the alternative, the Court should order a *Franks* hearing on the Government's recklessly misleading Affidavit.

## BACKGROUND

In 2017, Ms. Javice founded Frank, a for-profit company that aimed to streamline the process for college students to fill out the Free Application for Federal Student Aid ("FAFSA"). In September 2021, JPMorgan Chase Bank, N.A. ("JPMC") acquired Frank for $175 million and shuttered it a year later. On March 31, 2023, the Government filed a Criminal Complaint against Ms. Javice, alleging that she defrauded JPMC by misrepresenting Frank's users. ECF No. 1.[1] Mr. Amar is an alleged "co-conspirator," whom the Government indicted on July 12, 2023. ECF No. 27 (the "Indictment").

***The Warrant***. On April 3, 2023, the same day that the Government arrested Ms. Javice, the Honorable Steven I. Locke, United States Magistrate Judge, Eastern District of New York, issued a warrant (the "Warrant") to search Mr. Amar's home and person "at any time day or night" for evidence of fraud—extraordinary relief with no discernable cause. Ex. A (Warrant), at 3.[2] The Warrant permitted the Government to seize "Subject Devices," defined as "any and all cellphones,

---

[1] The allegations in the Indictment and the Complaint are set forth in more detail in Mr. Amar's motion to dismiss, which is being filed simultaneously with this Motion, are incorporated by reference and not repeated here.

[2] The redactions in this filing correspond to materials the Government has designated under the Protective Order. ECF No. 37.

tablets, computers, and electronic storage media that appear to be used by [Mr. Amar] within the Subject Premises" or on his person—a sweeping (but vague) intrusion. Ex. A (Warrant), at 7. Despite its breadth, the Warrant is riddled with basic errors and internal contradictions, underscoring that the Government's application was a *pro forma* exercise and the Magistrate Judge's inadequate "review", which did nothing more than adopt wholesale the Government's baseless assertions and conclusions, both untethered to the specifics of the investigation into Mr. Amar.

**The Affidavit.** The Warrant is supported by an affidavit (the "Affidavit") from Special Agent Jeremy Rosenman. Ex. B (Rosenman Affidavit). The Affidavit purports to establish probable cause to believe that all electronic devices on Mr. Amar or in his home would yield incriminating evidence. The gravamen of the Affidavit is a so-called "analysis" of unspecified "call record details" showing 1,838 "interactions" between "the Amar Cellphone" and "the Javice Cellphone" over a two-year period. Ex. C (Javice Log).[3] What the Affidavit omits is that the phone number attributed to the Amar Cellphone (the "5052 Phone Number") was in fact assigned to different physical devices during the time period described in the analysis, a fact easily discerned from the very phone records upon which the Affidavit purports to have conducted its analysis. Those records demonstrate that the 5052 Phone Number was assigned to no less than three different physical devices at various points in the time period of the analysis: an Android cellular telephone, an iPhone 12, and an iPhone 13 Pro Max (the "Seized Amar Device").

---

[3] The Affidavit states that Agent Rosenman reviewed Ms. Javice's call records to calculate these "interactions." Ex. C (Javice Log), at 10. The Affidavit further states that he had access to, and reviewed, Mr. Amar's cell phone subscriber records. *Id*. at 13. Exhibit C is an excerpt of August 1-2, 2021. Ms. Javice's full call log is available upon the Court's request, as is Mr. Amar's log, which is excerpted in Exhibit F.

***The Seized Amar Device***. After the Warrant issued on April 3, Special Agent Yves Hunziker and at least four other law enforcement officers seized Mr. Amar's cell phone at night in front of his house (with his minor daughter inside), as he and his wife were returning from their anniversary dinner. Ex. D (Amar Declaration), ¶ 5. They did so after they ordered him from his car, patted him down, and threatened to break his phone into pieces when he referred them to his lawyers for the passcode to unlock it. Mr. Amar further understood that, if he did not comply, law enforcement immediately would execute the full scope of the Warrant inside his house, potentially seizing every device, *id.* at 1, which would include those belonging to his family.

The Government ultimately did not seize the same physical phone as the one Mr. Amar used during substantial periods of the alleged fraud, or that they claim interacted with Ms. Javice's number all 1,838 times, as described in the Affidavit and for which Agent Rosenman told the Magistrate Judge there was probable cause to search. In fact, the Seized Amar Device did not register any activity until September 9, 2021, over a month after the merger agreement was signed, and could not have been used during the first week in August, a critical time (by the Government's own admission) for their case. The same absence of evidence plagues Agent Rosenman's cursory reference in his Affidavit to other devices supposedly containing evidence of fraud, which he assumes (without ever demonstrating) exist and for which he baselessly asserts there is probable cause to justify their search and seizure.

For all seized devices, the Warrant authorizes the Government to search a range of multimedia materials despite the Affidavit's silence as to anything other than telephone calls— including emails, documents, receipts, location information, photos, videos, images, and unspecified "other content" arguably touching every aspect of Mr. Amar's private life, including private content like family photos and messages. Ex. A (Warrant), at 7.

4

## APPLICABLE LAW

The Fourth Amendment forbids warrants from issuing "but upon probable cause." U.S. Const. amend. IV. Probable cause exists "where the totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). A connection between probable cause and the property to be seized prohibits general warrants, "instruments reviled by the Founders who recalled their use by Crown officials 'to search where they pleased.'" *Id.* (quoting *Stanford v. State of Tex.*, 379 U.S. 476, 481 (1965)). Although probable cause is a flexible standard, *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004), it must be grounded in "sufficient facts," not "hunches." *United States v. Lauria*, 70 F.4th 106, 128 (2d Cir. 2023). "A finding of probable cause is especially essential in the context of smartphone searches" because of the immense potential for privacy violations. *United States v. Gaines*, No. 20-cr-126 (JBA), 2021 WL 4263375, at *5 (D. Conn. Sept. 20, 2021).

The Fourth Amendment also "requires particularity and forbids overbreadth." *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 450 (S.D.N.Y. 2013) (citation omitted). "Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited to the probable cause on which the warrant is based." *United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009) (citation omitted). "The principal evil of the general warrant was addressed by the Fourth Amendment's particularity requirement." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742-43 (2011); *United States v. Purcell*, 967 F.3d 159, 178 (2d Cir. 2020) ("The manifest purpose . . . was to prevent general searches.").

These Fourth Amendment requirements are not mere "formalities." *United States v. Voustianiouk*, 685 F.3d 206, 210 (2d Cir. 2012) (quotation marks and citation omitted). They ensure that warrants are carefully tailored to their justifications and invade privacy "no more than

absolutely necessary." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (citation omitted). They "assume even greater importance" in the context of electronic devices, *id.*, which "not only contain[] in digital form many sensitive records previously found in the home" but a "broad array of private information never found in a home in any form." *Riley v. California*, 573 U.S. 373, 396–97 (2014) (privacy concerns extend "far beyond those implicated by" other categories of personal property); *United States. v. Smith*, 967 F.3d 198, 207 (2d Cir. 2020) ("[S]pecial concerns [ ] apply when law enforcement seize and search people's personal electronic data and communication devices.").

When a search or seizure violates the Fourth Amendment, the proper remedy is to exclude the evidence and its fruits to deter police misconduct. *Herring v. United States*, 555 U.S. 135, 143 (2009); *United States v. Tairod Nathan Webster Pugh*, No. 15-cr-116 (NGG), 2015 WL 9450598, at *20 (E.D.N.Y. Dec. 21, 2015) ("Suppression is the appropriate remedy for the fruits of a warrant that features one or both of [overbreadth or particularity] infirmities."); *United States v. Marcus*, 807 F. Supp. 934, 936 (E.D.N.Y. 1992) (declining to sever unconstitutional portions of warrant so as not to jeopardize "legitimate" constitutional interests).

## DISCUSSION

The Warrant is unconstitutional and all evidence from the Seized Amar Device should be suppressed. First, the Affidavit does not set forth probable cause linking the Seized Amar Device (or any other device) to evidence of fraud. Second, the Magistrate Judge findings here are not entitled to deference because the application documents are replete with errors, which suggest that the Affidavit was not reviewed with the appropriate amount of rigor.  Finally, the Warrant authorized a blanket seizure of all devices on Mr. Amar's person, in his home, and that he "appears to use," with boundless language that imposed no meaningful guidelines on police executing it, a textbook exploratory rummaging forbidden by the Fourth Amendment's breadth and particularity

requirements. Law enforcement then used this constitutional deficiency to leverage Mr. Amar to turn over the password on his phone. The Court therefore should suppress all evidence derived from the unlawful search of the Seized Amar Device.[4]

I.      **The Affidavit Did Not Establish Probable Cause to Search the Seized Amar Device**

The Affidavit fails to establish probable cause to search the Subject Devices, including the Seized Amar Device, for several reasons. The Affidavit's purported "analysis" of phone records establishes nothing with respect to the use or contents of the Seized Amar Device. Compounding that issue, the Affidavit fails to set forth any facts suggesting that the Seized Amar Device—or any other Subject Device—contained actual evidence of the crimes alleged, and instead baselessly asserts that such information would be on the Subject Devices. Tacitly acknowledging this dearth of actual factual support, the Affidavit then relies almost exclusively on Agent Rosenman's unspecified "training and experience" as a basis for the Magistrate Judge to conclude that there was probable cause to believe that Subject Devices would contain evidence, fruits, or instrumentalities of an alleged crime. As described in further detail below, each of these propositions—considered individually or in concert—fails to pass constitutional muster. *See, e.g.*, *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015) (a warrant should be invalidated where a magistrate judge's "probable-cause determination reflect[s] an improper analysis of the totality of circumstances," even under a deferential "substantial basis" standard of review).

---

[4] While the Court should suppress the Warrant, in the alternative Mr. Amar is entitled to a *Franks* hearing on Agent Rosenman's misleading Affidavit. *See Franks v. Delaware,* 438 U.S. 154 (1978); *United States v. Burgos*, No. 20-cr-182 (VEC), 2021 WL 3788962, at *5 (S.D.N.Y. Aug. 25, 2021) (granting *Franks* hearing because "warrant application contained a false statement and the false statement was material to a finding of probable cause"), *aff'd sub nom. United States v. Howard*, No. 21-cr-3006, 2023 WL 2980320 (2d Cir. Apr. 18, 2023).

## A.      The Affidavit Misleadingly Conflates Phone Numbers with Physical Phones

The gravamen of the Affidavit's asserted probable cause (for all of the Subject Devices, not just the Seized Amar Device) rests entirely on Agent Rosenman's unsubstantiated and misleading contention that "the Amar Cellphone," "interacted" with "the Javice Cellphone" 1,838 times between January 2021 and March 2023, including 41 times on August 1-2, 2021, "key" dates for the Government's case. Ex. B (Rosenman Affidavit), ¶ 11(b); Ex. C (Javice Log).[5] Based on that "analysis" of phone records, the Affidavit contends that there is probable cause to seize and search the Subject Devices. Even crediting the accuracy of this so-called analysis for the purpose of this motion, it provides no basis to believe that the Subject Devices contain evidence, fruits, or instrumentalities of the alleged crimes. And this is particularly true with respect to the Seized Amar Device.

As an initial matter, the Affidavit misleadingly suggests that this "analysis" demonstrates that the Subject Devices (and, by extension, the Seized Amar Device) were used to communicate with Ms. Javice during the relevant period. To that end, the Affidavit inaccurately describes the analysis as pertaining to actual physical devices. Hence the description of the relevant phones as

---

[5] It is telling what the Affidavit does not say about the phone calls upon which its analysis relies. *United States v. Rios*, 881 F. Supp. 772, 775 (D. Conn. 1995) ("It is instructive to consider what [the] affidavit might have but did not include to establish a nexus."). The Affidavit does not say whether the 5052 Phone Number initiated any calls or how many, the duration of any call, or the volume or timing of calls between Mr. Amar and other coworkers. Or that 297 calls went unanswered, including 181 within the conspiracy period. Ex. C (Javice Log). The absence of this information "reinforce[s]" the Government's paper-thin probable cause showing. *Lauria*, 70 F.4th at 130 (lack of probable cause "reinforced by what the affidavits do not say," including "whether Lauria's -3972 cell phone or Molina's -2454 cell phone initiated the call," because "if Molina's -2454 cell phone initiated the call, even shortly before the robbery, the possibility of coincidence increases"); *Garcia*, 2023 WL 4850553, at *9 n.6 ("affidavit here is striking for what it does not say," for example, it does not "include any information as to Garcia's phone records and what they might have revealed").

the "Amar Cellphone" and the "Javice Cellphone."[6] But really all that this analysis demonstrates is that there was connectivity between two phone numbers, not the physical devices themselves. This analysis therefore provides no support for the claim that the actual physical devices to be seized (*i.e.*, the Subject Devices) will contain the myriad types of evidence described in the Affidavit. Ex. B (Rosenman Affidavit), ¶¶ 18(a)-(b).

     This flawed logic and the inferential leap that the Affidavit makes from this analysis is particularly relevant with respect to the search of the Seized Amar Device. Specifically, the 5052 Phone Number attributed to the Amar Cellphone in the Affidavit was in fact assigned to different physical devices during the time period described in the analysis, a fact easily discerned from the very phone records upon which the Affidavit purports to have conducted its analysis. Those records demonstrate that the 5052 Phone Number was assigned to no less than three different physical devices at various points in the time period of the analysis. First, during the period from at least December 2020 to July 2021, the 5052 Phone Number was assigned to an Android cellular telephone.[7] Ex. E (Amar Log), at USAO_00006961. Then, from July 2021 until September 2021,

---

[6] To the extent that there was any ambiguity as to whether Agent Rosenman's description of the "Amar Cellphone" referred to a physical device, it is dispelled later in the Affidavit when Agent Rosenman clarified that he was referring to Mr. Amar's "personal cellphone (the Amar Cellphone) assigned phone number ███████ 5052." Ex. B (Rosenman Affidavit), ¶ 15(a).

[7] Further evidence as to why the inferential leap made in the Affidavit is unsupportable and misleading is the notorious incompatibility of Android phones and Apple devices, like iPhones. *See, e.g.*, Austin Carr, *iQuit: My Hellish Attempt to Leave Apple's Walled Garden*, BLOOMBERG (July 11, 2023), https://www.bloomberg.com/news/features/2023-07-11/switching-from-iphone-to-android-is-a-data-transfer-hell (describing "hellish" data transfer problems when switching from Android to iPhone devices and systems intentionally designed to limit portability). It is so difficult to switch devices, and cross-compatibility is so poor, that the Department of Justice recently sued Apple for antitrust violations, citing many of the obstacles that undermine the Government's probable cause analysis here. *See* Complaint, *United States et al. v. Apple, Inc.*, No. 24-04055, ECF No. 1, at ¶¶ 14, 50 (D.N.J. filed Mar. 21, 2024) ("Apple protects its smartphone monopoly by degrading and undermining cross-platform messaging . . . one of the biggest reasons iPhone users do not switch to rival smartphones today is to avoid the problems Apple has created

the 5052 Number was assigned to a different cellular telephone, an iPhone 12.Ex. E (Amar Log), at USAO_00007121. Thereafter, the 5052 Phone Number again was transferred and from September 2021 until the date of seizure, the 5052 Phone Number was assigned to the Seized Amar Device. Ex. E (Amar Log), at USAO_00007170.

With the benefit of even these three simple facts—all of which were in the possession of the Government at the time it submitted the Affidavit—Magistrate Judge Locke readily would have seen why the Affidavit's analysis does not establish probable cause with respect to the Subject Devices or the Seized Amar Device. Of the 1,838 alleged calls involving the 5052 Phone Number and Ms. Javice, 733 occurred on Mr. Amar's Android (not seized) and 223 on his iPhone 12 (also not seized), including all calls on August 1-2, 2021, supposedly critical days for the Government. Ex. C (Javice log). Mr. Amar therefore did not use the Seized Amar Device to make 956 of the calls included in the Affidavit's "analysis," which is more than half of all calls presented. *Id.* At bottom, and with the benefit of these additional facts, the Affidavit espouses nothing more than an agent's hunch about the calls. Everything else he impermissibly left to innuendo and guesswork, which is not enough to establish probable cause. *Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) ("[P]robable cause requires more than suspicions, even reasonable ones.").

The failure to clarify this for the Magistrate Judge, or even to provide the Magistrate Judge with the records sociated with the 5052 Phone Number, was misleading and designed to invite the Magistrate Judge to conclude that the Subject Devices were the actual, physical cellular telephones that were used by Mr. Amar to communicate with Ms. Javice. At the time that the Government

---

for cross-platform messaging."); *id.* at ¶¶ 27, 47 (cloud services "increase the costs of switching from the iPhone to another smartphone company" because they are "exclusive to the Apple ecosystem, causing significant friction for iPhone users who try to use alternative services on another smartphone. . . . Apple has impeded cross-platform cloud storage apps in order to steer iPhone users into iCloud, making data transfer between different devices more difficult").

applied for the Warrant, it had other records in its possession that would have laid bare the flaws in the Affidavit's analysis and undercut the inferences regarding probable cause that it asked Magistrate Judge Locke to draw. For example, the Government not only had the call records related to the 5052 Telephone Number, but also had obtained subscriber information, which would include device-specific information, such as IMEI numbers,[8] that could have identified the particular physical devices with particularity. Ex. F (GJ Subpoena), at 1. But the Government chose not to do so and instead opted to ask the Court for an exceedingly broad warrant untethered to any particular device.[9] *Cf. United States v. Disla Ramos*, No. 22-cr-431 (LJL), 2022 WL 17830637, at *16 & n.10 (S.D.N.Y. Dec. 21, 2022) ("[T]hough law enforcement had more particularized information about the victims' cellphones, they did not have more particularized information about Disla Ramos's cellphone. . . . there is no indication that law enforcement had a wealth of detailed information that was not reflected in the search warrant.").

The court's analysis in *United States v. Gonzalez-Arocho*, No. 22-cr-418 (PAD), 2024 WL 277507 (D.P.R. Jan. 25, 2024), illustrates the constitutional—and practical—problems with the Government's misleading, "phone number only" theory of probable cause. In *Gonzalez-Arocho*,

---

[8] Every mobile phone is assigned a unique, 15-digit International Mobile Equipment Identity ("IMEI") number, which includes details about a phone's model, manufacturer, and software version, and which can be used by phone carriers and law enforcement to track and secure lost or stolen devices.

[9] This is particularly troubling given that the Affidavit could have described the Subject Devices to which it sought to tie this analysis at least by make and model (details that appear on each page of the phone records associated with the 5052 Telephone Number), which was readily available to the Government when it submitted the Affidavit to Magistrate Judge Locke. And for that reason too, the lack of particularity and the overbroad definition of Subject Devices requires the Warrant to be invalidated. *Cf. United States v. Gatto*, 313 F. Supp. 3d 551, 560 & n.55 (S.D.N.Y. 2018) (upholding warrant in part because it described specific "target cell phones" to be seized); *United States v. Wells*, No. 20-cr-633 (NRB), 2021 WL 5401494, at *5 (S.D.N.Y. Nov. 18, 2021) (same, in part because warrant "described the make and model of the particular devices to be searched").

the Government seized one model of iPhone, even though the warrant authorized seizure of an older model. *Id.* at *3. Already that is more specific than the Warrant here, which did not specify a model and did not state that Mr. Amar used phones from different manufacturers entirely. Yet the court still held that it would be unworkable to "find[] this search warrant valid." *Id.* It would "'launch courts on a difficult line-drawing expedition to determine which' electronic devices are sufficiently alike to be covered under the same warrant." *Id.* (quoting *Riley*, 573 U.S at 401). And it would "need to be constantly adjusted to avoid becoming obsolete." *Id.* To name just a few examples: "[W]hat if different devices such as an iPhone, iPad, and iWatch all respond to the same phone number? Would the search warrant for the phone apply equally to a tablet and a watch simply because they share a cellphone's number and are synchronized or interconnected or share the same cloud storage with the cellphone?"[10] *Id.* These questions are far from hypothetical and demonstrate exactly why the Warrant here is flawed. *Riley*, 573 U.S. at 391, 393–95 (cell phones are fundamentally different "in both a quantitative and qualitative sense from other objects" traditionally subject to government searches, and "[i]t is no exaggeration to say that many of the more than 90% of American adults who own cell phones keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate").

As such, the Affidavit's analysis does nothing to link the Subject Devices—let alone the Seized Amar Cellphone—to the exchange of any information with Ms. Javice. And without that critical link, the Warrant must fail because it provides no basis to believe that the Subject Devices—let alone the Seized Amar Device—would contain any of the specific categories of evidence enumerated in the Affidavit and the accompanying Warrant. *See United States v. Garcia*,

---

[10] The court upheld the seizure because "[n]othing in the record suggest[ed] that the agents acted recklessly or falsely in the application for the search warrant," and instead the evidence suggested they acted "with diligence." *Gonzalez-Arocho*, 2024 WL 277507, at *7. The opposite is true here.

No. 20-cr-58 (KAD), 2023 WL 4850553, at *11 (D. Conn. July 28, 2023) (no probable cause in part because warrant was not "even restricted to the cell phone that Garcia was alleged to own at the time of the [crime]").

**B.    The Affidavit Baselessly Asserts That There is Probable Cause to Believe that the Subject Devices Would Have Contained Evidence**

The Affidavit fails for the additional reason that it does not establish a fair probability that incriminating evidence would be found on any of the Subject Devices, let alone the Seized Amar Device. The Affidavit fails because it confuses probable cause to implicate Mr. Amar in the fraud with probable cause to establish that evidence of a crime will be found in a particular place, such as devices linked to Mr. Amar. *See Lauria*, 70 F.4th at 130 ("[T]his court has cautioned against confusing 'a fair probability that contraband or evidence of a crime will be found in a particular place' with 'probable cause to think that the person whose premises are to be searched is implicated in the crime.'" (quoting *Ganek v. Leibowitz*, 874 F.3d 73, 82 (2d Cir. 2017)). These are separate inquiries demanding distinct factual showings.

Even if the Affidavit's analysis of the records relating to the 5052 Telephone Number was relevant to a probable cause determination in that it shows connectivity between Mr. Amar and Ms. Javice—and we submit that it is not—the Affidavit provides no support for its claim that there is probable cause that evidence will be found on the Subject Devices. The Government cannot bootstrap probable cause to believe that a crime was committed into probable cause to believe that evidence of that crime will be contained in a particular location (*i.e.*, the Subject Devices, including the Seized Amar Device). *See United States v. Bertini*, No. 23-cr-61 (PGG), 2023 WL 8258334, at *5 (S.D.N.Y. Nov. 29, 2023) ("[T]he existence of probable cause to arrest will not necessarily establish probable cause to search." (citations omitted)); *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the owner of the property is

suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located [in the property].").

The Second Circuit's analysis in *Lauria*, a robbery case involving cell site data, informs this point. There, Molina, a co-conspirator, argued that just a single fact tied his phone to three robberies: It interacted with another defendant's phone "shortly before" one robbery. 70 F. 4th at 129. Without pause, the Second Circuit found that link "insufficient to demonstrate a 'reasonable probability'" that Molina's phone would contain pertinent, incriminating evidence or to justify the "expansive warrants." *Id.* The court remanded for a *Franks* hearing. If calls with a known perpetrator's phone are insufficient to establish probable cause to obtain even a limited subset of location records over a discrete four-month period, regardless of timing, then the calls here—between executives at a closely held startup, who had entirely legitimate reasons to talk frequently, especially during merger negotiations—cannot suffice as probable cause to think Mr. Amar's phone contained evidence of fraud, or to obtain data from it dating back indefinitely. *Clark*, 638 F.3d at 94 ("This required nexus between the items sought and the particular place [or thing] to be searched protects against the issuance of general warrants." (internal quotations omitted)).

*Garcia* is also on point. There, a homicide investigation, the Government alleged "three supposed perpetrators 'contacted' [defendant] shortly after the crime asking to be picked up from an area where the crime was not even committed." 2023 WL 4850553, at *8. This "provide[d] little probability that *information relating to the crime* would be contained on *Garcia's* phone, specifically." *Id.* Because, at most, "the affidavit merely allege[s] facts supporting an inference that [Mr. Amar] committed the crime, but provide[s] no factual basis whatsoever to believe that evidence of that crime would be found on [his] cell phone, there is not a substantial basis for the issuing judge to conclude that there was probable cause to search the phone." *Id.* at *7. To uphold

the Warrant for all devices based on calls to and from Mr. Amar's phone number "would be to license virtually automatic searches of the cell phones of any persons suspected of engaging in criminal conspiracies." *Id*. at *8.[11]

The paper-thin Affidavit here pales in comparison. It advances—at best—an attenuated, coincidental link between Mr. Amar's calls with Ms. Javice and evidence of the alleged crimes and presupposes (absurdly) that a small number of calls over a long period of time is suspicious enough to establish probable cause to seize an entire phone.[12] It is short on "case-specific evidence" connecting to Mr. Amar's phone or other devices to evidence of the fraud, and long on "sheer speculation" about the inferences to be drawn from calls with Ms. Javice—largely

---

[11] On the other end of the spectrum is *United States v. Yu*, No. 22-cr-208 (CBA), 2023 WL 4687970 (E.D.N.Y. July 21, 2023). The *Yu* court found a sufficient nexus between a murder-for-hire plot and Yu's devices, including his phone, because the Government "extensively document[ed] the coconspirators' use of various electronic devices" in the warrant application, prior to any search or seizure, including specific texts facilitating the plot between specific phones and iPads on encrypted messaging apps. *Id*. at *7–8, *11 & nn.5, 16. Or consider *United States. v. Sinisterra*, No. 21-cr-156 (KAD), 2024 WL 897935 (D. Conn. Mar. 1, 2024). The court there found probable cause linking the defendant's phone to evidence of a murder because the Government presented "an inculpatory text sent minutes after a shooting that [defendant] was implicated in" and evidence that "detectives observed text messages from other gang members . . . in addition to text messages from [defendant]" on a witness' phone. *Id*. at *9. The same witness also "told detectives that he, [defendant], and other [gang] members communicated via FaceTime and Facebook messenger." *Id*.

[12] "Cell phone and text message communications are so pervasive that some persons may consider them to be essential means or necessary instruments for self-expression, even self-identification." *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 760 (2010). Indeed, the average office worker receives 12 daily one-on-one calls from coworkers, amounting to thousands more calls over 26 months than those alleged in the Affidavit between Mr. Amar and Ms. Javice, who in any event were two of just a few executives in a 13-person company. Laura Cici, *Daily Communications by Office Workers in the U.S. and UK 2022*, Statista (Sept. 15, 2022), https://www.statista.com/statistics/1332723/daily-messages-office-workers-us-uk-receive/#statisticContainer; *see also* Kelly Main, *The State of Workplace Communication in 2024*, Forbes (Mar. 8, 2023), https://www.forbes.com/advisor/business/digital-communication-workplace/ (average office worker spends up to 20 hours per week using digital communication tools like cell phones).

conducted on different phones than the one in the Government's possession. *Bertini*, 2023 WL 8258334, at \*9 (no probable cause for location data); *cf. United States v. Garlick*, No. 22-cr-540 (VEC), 2023 WL 2575664, at \*6 (S.D.N.Y. Mar. 20, 2023) (finding "just enough case-specific evidence" where, unlike here, affiant "established" link between online searches and unlawful gun purchase).[13] Were Agent Rosenman's Affidavit constitutional despite all of these failings and flaws, then to render a device seizable, no facts outside the fact of an indictment would be necessary, even if an affiant did not identify a single instance where a suspect likely used a specific device to store evidence of a crime, as here. *United States v. Rubio*, 727 F.2d 786, 795 (9th Cir. 1983) ("[A]n indictment alone cannot supply probable cause to search.").

## C.     The Government Substituted General Experience for Probable Cause

As described above, there simply is nothing in the Affidavit that establishes a factual basis for probable cause. Likely recognizing this deficiency, the Affidavit falls back on the unsupported claim that probable cause lies here because of Agent Rosenman's undescribed and unsupported training and experience in investigating matters like this. The Government's decision to fall back on this hackneyed phrase serves only to underscore the dearth of evidence it could bring to bear in support of its unnecessarily rushed and constitutionally deficient application. The law is clear that unspecified references to purported training and experience does not probable cause make, thus providing a further reason to suppress the search.

---

[13] Equally fatal to probable cause as it relates to the Subject Devices and the Seized Amar Device in particular, is that the Affidavit provided no basis for Magistrate Judge Locke to conclude that information from Mr. Amar's old phones would be transferred to his succession of new phones rather than erased or lost in the course of switching providers, despite well-known issues with portability and interoperability across brands, messaging apps, and cloud storage services, among other things.[13] Proof in point: On July 19, in a message in the Government's possession, Mr. Amar told Ms. Javice, ██████████████████████████████████████████████████████ USAO_00001093. Ex (Amar Chat).

The Affidavit's reliance in this regard is a poorly concealed effort by the Government to graft onto probable cause a much lower standard than the Constitution demands. Probable cause must be premised on facts specific to a suspect, not "irrelevant generalizations." *Bertini*, 2023 WL 8258334, at *9; *United States v. Falso*, 544 F.3d 110, 124 (2d Cir. 2008) (government must "gather 'evidence particularized to the target of the search' before the warrant application is made" (citation omitted)). Subtracting the references to the records of calls involving the 5052 Telephone Number (because they are factually and legally insufficient), the Affidavit is devoid of anything specific to Mr. Amar that so much as suggests his phone or any other device would contain evidence of fraud, leaving Agent Rosenman's experience as the sole stand-in. The only other fact that the Affidavit even tries to bring to bear is its half-hearted reference to an observation that, on more than one occasion, Mr. Amar and Javice forwarded emails to one another "relevant to the fraud scheme, without any comment." Ex. B (Rosenman Affidavit), ¶¶ 9(c), 15(b). Recognizing that this is in fact evidence of nothing, the Affidavit then tries to attribute meaning to this wholly innocuous conduct through resort to Agent Rosenman's training and experience and his unsubstantiated claim that this is common practice in fraud schemes untethered to any specific evidence in this case. *Id.* ¶ 9(c).

But a "blanket generalization about how 'people who commit crimes' act is not sufficient to 'nudge' [his] affidavit over the line." *Garcia*, 2023 WL 4850553, at *7 (citation omitted). "Permitting a search warrant based solely on the self-avowed expertise of a law-enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect." *United States v. Guzman*, No. 97-cr-786 (SAS), 1998 WL 61850, at *4 (S.D.N.Y. Feb. 13, 1998) (quotations omitted); *United States v. Merriweather*, 728 F. App'x 498, 506 (6th Cir. 2018)

17

(rejecting probable cause based on affiant's conclusory claim that conspiracies are often aided by phones); *United States v. Skyfield*, No. 23-cr-569 (LJL), 2023 WL 8879291, at *15 (S.D.N.Y. Dec. 22, 2023) ("[T]he notion that an agent could establish probable cause to search an entire phone based on the truism that criminals' phones often bear traces of their criminality is redolent of the 'general warrants' reviled by the Founding generation.").

In sum, because of Agent Rosenman's reckless and misleading omissions and misrepresentations, his Affidavit "did not provide sufficient information for the magistrate to make an independent determination" and there was no substantial basis for the Warrant. *Garcia*, 2023 WL 4850553, at *6 (no substantial basis where Government omitted information about suspect's phone); *United States v. Genin*, 594 F. Supp. 2d 412, 425 (S.D.N.Y. 2009) (same, where affiant omitted readily-available screenshots of illegal videos mentioned in emails), *aff'd*, 524 F. App'x 737 (2d Cir. 2013); *United States v. Groezinger*, 625 F. Supp. 2d 145, 155 (S.D.N.Y. 2009) ("[T]he warrant affidavit here did not provide sufficient information for the magistrate to make an *independent* determination that a search of Mr. Groezinger's residence stood a fair probability of uncovering contraband."); *see also Falso*, 544 F.3d at 122 ("All data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." (quotation marks and citation omitted)).

## II.     The Warrant Should Not Be Afforded Deference

Further, the Court should not afford the Warrant the deference it typically would afford to applications that have been reviewed and approved by a Magistrate Judge. A court reviewing probable cause must "decide whether the magistrate performed his neutral and detached function on the facts before him, and did not merely serve as a rubber stamp for conclusions drawn by the police." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). To start, there are several errors on the face of the Warrant that call into question whether the Affidavit and Warrant were

reviewed with sufficient rigor.[14] Critically, though, there are significant deficiencies with the Warrant that undermine any notion that the Magistrate Judge performed the appropriate review. Accordingly, this Court should scrutinize the sufficiency of the probable cause as if it were the issuing Court.

First, the Magistrate Judge authorized a Warrant without any time limitation on the scope of the search. "Several courts in this Circuit have recognized the constitutional questions that are raised by the lack of a specific date range in a warrant" and, critically, have expressly warned the Government to include one. *United States v. Levy*, No. 11-cr-62 (PAC), 2013 WL 664712, at *11 n.7 (S.D.N.Y. Feb. 25, 2013). "A failure to indicate a time frame could render a warrant constitutionally overbroad because it could allow the seizure of records dating back arbitrarily far and untethered to the scope of the affidavit which ostensibly provided probable cause." *United States v. Wey,* 256 F. Supp 3d 355, 381 (S.D.N.Y. 2017) (citation omitted).

Despite knowing the scope of the alleged conspiracy—June 2021 to November 2022, Indictment ¶ 1—the Government applied for (and Magistrate Judge Locke authorized) a Warrant

---

[14] The Warrant authorized delayed notice of 30 days from the execution of the warrant based upon the Magistrate Judge's conclusion that "immediate notification may have an adverse result listed in 18 U.S.C. § 2705." *Id.* at 1. Putting aside the fact that Section 2705 of Title 18 pertains only to searches directed at a "provider of remote computing service" as defined in 18 U.S.C. § 2703(b), the Affidavit again provides no factual or other basis for such an exception to Rule 41's disclosure requirements. *See* Fed. R. Crim. P. 41(f)(1)(C)); *see generally* Ex. B (Rosenman Affidavit). In particular, Rule 2705 requires a showing an "adverse result" to include: "(A) endangering the life or physical safety of an individual; (B) flight from prosecution; (C) destruction of or tampering with evidence; (D) intimidation of potential witnesses; or (E) otherwise seriously jeopardizing an investigation or unduly delaying a trial." 18 U.S.C. § 2705(a)(2); *see generally* Ex. B (Rosenman Affidavit). The Affidavit does nothing to address these potential adverse results. Further evidencing the sloppiness of the application and the inadequacy of the review, the cover page of the Affidavit, which also was reviewed and signed by the Magistrate Judge, indicates that Agent Rosenman was requesting delayed notice of 30 days "under § 3103a, the basis of which is set forth on the attached sheet." Ex. B (Rosenman Affidavit). And yet, even a cursory review of the Affidavit makes clear that it asserts no such basis for delayed notification (nor could it, given that the Warrant authorized the search of an individual). *See generally id.*

missing any temporal limitations on the scope of the search of any seized device. The Warrant, therefore, on its face, permitted the Government to look as far back as it wanted.[15] *Riley*, 573 U.S. at 394 ("[D]ata on a phone can date back to the purchase of the phone, or even earlier."). Courts frequently invalidate warrants for such defects. For instance, the Second Circuit found a premises warrant for electronic devices related to a complex financial crime "facially deficient" for "not even arguably" including a "temporal scope for the items to be seized." *In re 650 Fifth Ave. and Related Properties*, 934 F.3d 147, 163 & n.13 (2d Cir. 2019); *United States v. Sandalo*, No. 21-cr-708, 2023 WL 3885805, at *2 (2d Cir. June 8, 2023) (invalidating warrant in part for failing to limit search for materials to period of investigation).[16]

Second, the Warrant inexplicably authorizes law enforcement to execute it at any time of day or night. Ex. A (Warrant), at 1. But this is an extraordinary authorization that the affiant must justify with "reasonable cause" (*e.g.*, safety of law enforcement executing the warrant, risk of flight of the subject, destruction of property, *etc.*). *See Gooding v. United States*, 416 U.S. 430, 453 (1974) ("[A] search warrant must be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at

---

[15] The storage capacity of electronic devices only underscores the importance of including a temporal limitation on the face of the Warrant, because as the Government admits, "electronic files can be stored on a hard drive for years at little to no cost," and even deleted data "can often be recovered months or years later with the appropriate forensic tools." Ex. B (Rosenman Affidavit), ¶ 19.

[16] Further evidence of the lack of rigor can be seen in the contradictory and confusing descriptions of what Agent Rosenman actually was proposing to seize. *See Zemlyansky*, 945 F. Supp. 2d at 460 (confusion is a "basis for concluding that the [a warrant] lack[s] particularity"); *United States v. Abrams*, 615 F.2d 541, 550 (1st Cir. 1980) (Campbell, J., concurring) (warrant's description of items to be seized may be "confusing, hence lacking in particularity") The Affidavit, for example, alternatively defines the Subject Devices as any electronic device (without limitation) that Mr. Amar "appears to use," Ex. B (Rosenman Affidavit), ¶ 2 or "all cellphones, electronic devices, and locked and closed containers" in the Subject Premises without limitation on apparent use or ownership. Ex. A (Warrant), at 5.

times other than daytime." (quotation marks omitted)).  The Magistrate Judge concluded that such authorization was appropriate because "reasonable cause has been established," Ex. A, but the Affidavit contains no reason *at all* for executing the warrant outside of the typically permitted window of 6 a.m. and 10 p.m.  The Magistrate Judge's finding in the face of this omission raises serious questions as to whether the Affidavit (or the Warrant) in fact was reviewed in any detail to determine the propriety of the scope of authorization it sought.

Considered in isolation, any one of these errors arguably could be attributed to an inadvertent oversight or typographical error. When viewed in combination, however, particularly against the backdrop of the utterly deficient showing of probable cause set forth in the Affidavit itself, these errors raise serious questions as to the rigor with which the Affidavit was reviewed prior to the issuance of the Warrant.

### III.    Suppression Is Necessary to Deter Future Violations of the Fourth Amendment

The Court further should suppress evidence derived from the illegal search of the Seized Amar Device for the separate and independent reason that it is necessary to deter law enforcement from engaging in future violations of the Fourth Amendment. As explained below, the Warrant suffers from substantial defects in addition to those outlined above: overbreadth and lack of particularity.

In addition to rendering the Warrant facially invalid, suppression is required because of how law enforcement abused the overbreadth and lack of particularity in order to coerce Mr. Amar into turning over not only his phone, but the passcode that they then used to access it. *See United States v. Calandra*, 414 U.S. 338, 347 (1974) (the exclusionary rule "is calculated to prevent, not to repair. Its purpose is to deter – to compel respect for the constitutional guaranty in the only effectively available way – by removing the incentive to disregard it."). Evidence should be suppressed under the rule where the Government's reliance on a facially invalid warrant is

objectively unreasonable, *United States v. Leon*, 468 U.S. 897, 922 (1984), and where there are benefits to deterring the Government's conduct. *In re 650 Fifth Ave.*, 934 F.3d at 162; *Clark*, 638 F.3d at 100.

### A.      The Warrant Is Overbroad as to All Devices

The Warrant authorizes a sweeping search of all devices for a wide range of materials—including emails, documents, receipts, location information, photos, videos, images, and unspecified "other content"—without probable cause connecting any of those devices (not just the Seized Amar Phone) to evidence of the alleged fraud. Ex. A (Warrant), at 7. "[A] warrant is legally invalid for overbreadth to the extent it permits officers to search or seize items without probable cause that [those specific items] contain evidence of a crime." *United States v. Kidd*, 386 F. Supp. 3d 364, 374 (S.D.N.Y. 2019) (citation omitted); *Galpin*, 720 F.3d at 446 (description of property to be seized cannot be "broader than can be justified by the probable cause upon which the warrant is granted"). In addition, a warrant must be particular, meaning that, "[a]s to what is to be taken," the warrant leaves "nothing" to the discretion of the officers executing it. *United States v. Buck*, 813 F.2d 588, 590 (2d Cir. 1987) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)). The Warrant here is overbroad because there is no probable cause to seize any device from Mr. Amar or his home, and it is unparticular because its sweeping language imposes on restrictions on law enforcement executing the search.

References to devices besides the Seized Amar Device are not just an afterthought in the Affidavit, but they are virtually nonexistent. Over the course of 61 pages, Agent Rosenman mentions devices other than Mr. Amar's phone just twice. First is a passing reference to a Census Bureau article to support his contention that Mr. Amar would have multiple devices at all. Ex. B (Rosenman Affidavit), ¶ 12. Because most U.S. adults do, then Mr. Amar must. Second is Agent Rosenman's conclusory recitation that probable cause exists to seize all "Subject Devices"—the

very premise that the Government must (but fails to) prove with case-specific facts tying specific devices to incriminating evidence. This cannot pass for probable cause. *Garcia*, 2023 WL 4850553, at *13 ("[T]he probable cause—if any—supporting the warrant did not support the 'exceptionally broad' scope of the information to be searched: all of the contents of any electronic devices found on Garcia's person."); *see Lauria*, 70 F.4th at 128 (determination of whether probable cause exists "informed by the breadth of the search authorization sought"); *Clark*, 638 F.3d at 94 ("breadth of" search must not "outrun[] the probable cause supporting the warrant").

Additionally, while Agent Rosenman spends several pages attempting (unsuccessfully) to tie the Seized Amar Device to evidence of the alleged fraud, he never once connects that device to other devices or electronic media in a way that would establish probable cause to suspect Mr. Amar's home would contain non-iPhone devices with evidence of criminal conduct, or that Mr. Amar spread or shared incriminating evidence across devices. Ex. B (Rosenman Affidavit), ¶¶ 9–17; *cf. United States v. Smith*, No. 19-cr-324 (BAH), 2021 WL 2982144, at *11 (D.D.C. July 15, 2021) (affidavit clearly linked criminal pictures taken on phone to storage on personal computer). If nothing else, this "is not a case where the warrant alleged that [Mr. Amar] 'use[d] [electronic devices] in connection with his [crime]' and that there was 'probable cause to believe that evidence, fruits, and instrumentalities of the [charged offenses]' would be found on . . . devices other than [his] cellphone." *Disla Ramos*, 2022 WL 17830637, at *17 (some alterations in original) (internal quotation marks and citations omitted).[14]

Courts, including in this District, commonly find warrants overbroad for defects like this. *See, e.g.*, *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010) (warrants overbroad "in failing to link the items to be searched and seized to the suspected criminal activity . . . and thereby lacked meaningful parameters on an otherwise limitless search"); *Wey*, 256 F. Supp. 3d at 393–94

(S.D.N.Y. 2017) (same, because "sheer scope" reached "essentially all documents pertaining to . . . the Weys [in their apartment] unlimited by relevance to criminal conduct," which "precludes a finding that the seizure authorization remained within the bounds of the Government's probable cause showing"); *Disla Ramos*, 2022 WL 17830637, at *17 ("[T]he warrant was overbroad, allowing it to reach items for which there was no probable cause to seize." (internal quotation marks and citation omitted)).

**B.     The Warrant Violates the Fourth Amendment's Particularity Requirement**

The Warrant also fails the Fourth Amendment because it is unparticularized. At its most specific, it still authorizes police to seize whatever devices Mr. Amar "appears to use" in his home, where he lives with his wife and kids, without limitation. Even assuming probable cause to seize these devices (there is not), this language is "so vague a description of the material sought as to impose no meaningful boundaries" on the officers executing it. *United States v. Cohan*, 628 F. Supp. 2d 355, 359 (E.D.N.Y. 2009); *Clark*, 638 F.3d at 94 ("Particularity concerns frequently arise in circumstances where the description in the warrant of the place to be searched is so vague that it fails reasonably to alert executing officers to the limits of their search authority.").

While the purpose of the Fourth Amendment is "curtailing the officers' discretion when executing the warrant," *United States v. George*, 975 F.2d 72, 76, on the face of the Warrant law enforcement could seize any device one would expect to find inside a family home, including devices Mr. Amar does not actually use, uses for innocent personal reasons, or that belong to his family, even his children. Or law enforcement could presume that any device in the home is a device Mr. Amar—as owner and occupant—would "appear to use," in which case it is difficult to imagine a device that does not fall within the scope of the Warrant. Even if the Government limited their seizure to devices Mr. Amar actually owns it would not be enough specificity to satisfy particularity. *United States v. Griffith*, 867 F.3d 1265, 1276 (D.C. Cir. 2017) ("[T]he warrant did

not stop with any devices owned by Griffith, which already would have gone too far."); *Wey*, 256 F. Supp. 3d at 386 ("Lacking . . . any practical tool to guide the searching agents in distinguishing meaningfully between materials of potential evidentiary value and those obviously devoid of it; the Warrant is—in function if not in form—a general warrant.") (cleaned up).

*Griffith* is squarely on point. As in *Griffith*, "if officers executing the warrant had seen [Mr. Amar] using [his wife's or daughter's] cell phone, . . . the warrant would have authorized them to seize that phone." *Griffith*, 867 F.3d at 1276. Not only that, "the terms of the warrant allowed officers unfettered access to any electronic device in the [house] even if police *knew* the device belonged to someone other than [Mr. Amar]," so long as Mr. Amar appeared to use it in some respect. *Id.*; *see also Rosa*, 626 F.3d at 62–64 (warrant "lacked meaningful parameters on an otherwise limitless search," imposed no "readily ascertainable guidelines for the executing officers as to what items to seize," and "provided the officers with no judicial limit on the scope of their search"). Just so here.

### C.     Suppression Is Appropriate to Deter Future Violations of the Fourth Amendment

Not only did the Government lack probable cause for the phone seizure, but they coerced Mr. Amar, under the threat of executing the full scope of the deficient Warrant, to provide his phone and passcode. Ex. D (Amar Declaration), ¶ 7. "[E]xploiting [ ] prior illegality" to coerce a seizure is highly culpable conduct that strikes at the heart of the Fourth Amendment's deterrence principle, regardless of whether the Government made good on their threat or ultimately declined to exercise the Warrant's full scope. *United States. v. Shrum*, 908 F.3d 1219, 1234 (10th Cir. 2018) (citation omitted); *Griffith*, 867 F.3d at 1272 ("Authorization to search for an item fitting in the palm of a hand, like a cell phone, [ ] can entail an intrusive inspection of all corners of a home."). This says nothing of the fact that they also threatened to break Mr. Amar's phone if he did not

provide his passcode after he referred them to his lawyers. Ex. D (Amar Declaration), ¶ 9; *see Bumper v. North Carolina*, 391 U.S. 543, 550 (1968) ("When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion."); *Arizona v. Gant*, 556 U.S. 332, 345 (2009) ("[T]he central concern underlying the Fourth Amendment [is] . . . giving police officers unbridled discretion."); *Hoffa v. United States*, 385 U.S. 293, 301 (1966) ("The Fourth Amendment can certainly be violated by guileful as well as forcible intrusions.").

The overbreadth and lack of particularity in the Warrant empowered law enforcement to threaten him in this manner. And recognizing how expansive and all-encompassing the search authority granted by the Warrant was, law enforcement took full advantage of it to coerce Mr. Amar in this manner. If ever there was a need to deter law enforcement from future violations of the Fourth Amendment, the facts of the seizure in this case demonstrate why. *See, e.g.*, *Herring v. United States*, 555 U.S. 135, 144 (2009) (suppression is appropriate to deter "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systematic negligence."). And given their conduct and the facially unreasonable broad scope of the Warrant, law enforcement cannot claim good faith to justify their actions in this regard. *Id.* at 143 (finding that suppression is warranted "only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.")

## CONCLUSION

For the foregoing reasons, the Court should find the Government's Warrant unconstitutional, suppress evidence on Mr. Amar's phone and any fruits obtained from it, and order the Government to state whether (and to what extent) they relied on evidence from the phone

for the Indictment. In the alternative, the Court should order a *Franks* hearing on Agent Rosenman's recklessly misleading Affidavit.

Dated:  April 5, 2024                                    Respectfully submitted,


                                                        /s/ *Sean S. Buckley*_____
                                                        Sean S. Buckley
                                                        Steven G. Kobre
                                                        Alexandria E. Swette
                                                        Ana Frischtak
                                                        KOBRE & KIM LLP
                                                        800 Third Ave
                                                        New York, New York 10022
                                                        Telephone: (212) 488-1200
                                                        Facsimile: (212) 488-1220
                                                        Sean.Buckley@kobrekim.com
                                                        Steven.Kobre@kobrekim.com
                                                        Alexandria.Swette@kobrekim.com
                                                        Ana.Frischtak@kobrekim.com

                                                        Sydney Johnson (pro hac vice)
                                                        Jake Rush (pro hac vice forthcoming)
                                                        KOBRE & KIM LLP
                                                        1919 M Street, NW
                                                        Washington, DC 20036
                                                        Telephone: (202) 664-1900
                                                        Facsimile: (202) 664-1920
                                                        Sydney.Johnson@kobrekim.com

                                                        *Counsel for Defendant Olivier Amar*