UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

CHARLIE JAVICE and OLIVIER AMAR,

Defendants.

---

Case No. 23 Cr. 251 (AKH)

**DEFENDANT OLIVIER AMAR'S MOTIONS *IN LIMINE***

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i
TABLE OF AUTHORITIES ......................................................................................................... ii
PRELIMINARY STATEMENT .................................................................................................... 1
LEGAL STANDARDS .................................................................................................................. 3
ARGUMENT .................................................................................................................................. 4

    I.     MOTION *IN LIMINE* NO. 1: THE COURT SHOULD PRECLUDE EVIDENCE AND/OR TESTIMONY ABOUT POTENTIAL ACQUIRING COMPANIES NEVER SPECIFIED IN THE INDICTMENT NOR ADEQUATELY DISCLOSED ............................. 4

    II.    MOTION *IN LIMINE* NO. 2: THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM ARGUING AND INTRODUCING EVIDENCE AND/OR TESTIMONY THAT POTENTIAL BUYERS SOLICITED OR PITCHED ABOUT THE FRANK ACQUISITION WERE "VICTIMS" OR "INTENDED VICTIMS" ......................... 10

    III.   MOTION *IN LIMINE* NO. 3: THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM ARGUING THE EXISTENCE OF A SINGLE SCHEME TO DEFRAUD AGAINST MULTIPLE POTENTIAL BUYERS ................................................ 12

INCORPORATION OF MS. JAVICE'S ARGUMENTS AND MOTIONS ............................... 14
CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*Chadbourne & Parke LLP v. Troice*,
  571 U.S. 377 (2014) ................................................................................................................ 11

*Ciminelli v. United States*,
  598 U.S. 306 (2023) ................................................................................................................ 11

*Highland Cap. Mgmt., L.P. v. Schneider*,
  551 F. Supp. 2d 173 (S.D.N.Y. 2008) ..................................................................................... 3

*Old Chief v. United States*,
  519 U.S. 172 (1997) ............................................................................................................. 3, 4

*Palmieri v. Defaria*,
  88 F.3d 136 (2d Cir.1996) ........................................................................................................ 3

*Ricketts v. City of Hartford*,
  74 F.3d 1397 (2d Cir. 1996) ................................................................................................... 10

*S.E.C. v. Tourre*,
  950 F. Supp. 2d 666 (S.D.N.Y. 2013) ...................................................................................... 3

*Spinelli v. City of New York*,
  579 F.3d 160 (2d Cir. 2009) ................................................................................................. 6, 7

*United States v. Bermudez*,
  529 F.3d 158 (2d Cir. 2008) ..................................................................................................... 4

*United States v. Connolly*,
  24 F.4th 821 (2d Cir. 2022) ...................................................................................................... 8

*United States v. Diaz*,
  878 F.2d 608 (2d Cir. 1989) ..................................................................................................... 3

*United States v. Gelzer*,
  50 F.3d 1133 (2d Cir. 1995) ..................................................................................................... 4

*United States v. Gramins*,
  939 F.3d 429 (2d Cir. 2019) ..................................................................................................... 9

*United States v. Kaplan*,
  490 F.3d 110 (2d Cir. 2007) ..................................................................................................... 3

*United States v. Kelly*,
  420 F.2d 26 (2d Cir. 1969) ....................................................................................................... 6

*United States v. Millan*,
  817 F. Supp. 1086 (S.D.N.Y. 1993) ....................................................................................... 12

*United States v. Nachamie*,
  101 F. Supp. 2d 134 (S.D.N.Y. 2000) ............................................................................... 10

*United States v. Rossy*,
  2023 WL 8039500 (S.D.N.Y. Nov. 20, 2023) ..................................................................... 4

*United States v. Shellef*,
  507 F.3d 82 (2d Cir. 2007) ............................................................................................ 8, 11

*United States v. Sturdivant*,
  244 F.3d 71 (2d Cir. 2001) ................................................................................................ 13

*United States v. Weimert*,
  819 F.3d 351 (7th Cir. 2016) .................................................................................... 8, 9, 11

*United States v. Wey*,
  2017 WL 237651 (S.D.N.Y. Jan. 18, 2017) ....................................................................... 6

*United States v. Yakobowicz*,
  427 F.3d 144 (2d Cir. 2005) .............................................................................................. 12

**Rules**

Fed. R. Evid. 401 ............................................................................................... 3, 4, 8, 11

Fed. R. Evid. 402 ........................................................................................................... 3

Federal Rule of Evidence 403 ................................................................................Passim

**Other Authorities**

Hearing Transcript, May 30, 2024, ECF No. 138.................................................Passim

Government Disclosure Letter, June 6, 2024, ECF No. 140 ................................. 10, 13

Defendant Olivier Amar respectfully submits this memorandum of law in support of his motions *in limine* to exclude evidence and argument as set forth herein.

## PRELIMINARY STATEMENT

Defendant moves to preclude the Government from introducing or soliciting the following categories of irrelevant and/or unfairly prejudicial evidence or argument.

***Motion in Limine No. 1:*** The Court should preclude the Government from arguing, introducing evidence, and/or soliciting testimony regarding potential buyers of Frank that were neither identified in the Indictment nor adequately disclosed to the defense in spite of the Court's directive to identify and "limit" the "targets" of the alleged fraud. *See* May 30, 2024 Hr'g Tr. at 15:6–11, ECF No. 138 ("Hr'g Tr."). The Government's late-stage inclusion of these companies—including ███, ███, and ███—would allow trial by ambush and is not relevant to the charged offenses.[1] Any probative value, moreover, is substantially outweighed by the significant potential to confuse the jury given the substantially overlapping materials relevant to "Bank-1" and J.P. Morgan Chase—the only two targets of the fraud alleged in the Indictment. Not only is this evidence not relevant to the charged schemes, but Defense counsel's efforts to clarify and correct the misimpression caused by such evidence would require individual minitrials into the issues (*e.g.*, whether the alleged misrepresentations were material in the contexts in which they were made) related to each of these companies in violation of Rule 403.

***Motion in Limine No. 2:*** The Court should preclude the Government from arguing, introducing evidence, and/or soliciting testimony regarding any alleged fraud perpetuated against the Government's so-called "intended victims" that were mere prospects identified for outreach

---

[1] *See, e.g.*, GXG532, GXG533, GXG563, GXG564 (███ Diligence Datapacks); GXG534, GXG535, GXG565, GXG566, GXG567 (███); GX1264-A, GX1265-A (███ Diligence Spreadsheets); GXG538 (███ Diligence Question Tracker).

1

and/or "pitched" about the opportunity to acquire Frank. The Government's exhibit list includes materials referring to as many as *fifty-two* businesses identified in coordination with Frank's investment advisor as potentially interested in the Frank acquisition opportunity.[2] Yet these materials also show that the vast majority of these companies were—at most—subject of outreach efforts, receiving little beyond initial "pitch" material.[3] Any alleged misleading statements made during outreach or pitch efforts are immaterial and cannot form the basis for fraud charges in this case. Any modicum of probative value—and we submit there is none—of such evidence and/or testimony is substantially outweighed by the substantial unfair prejudice caused by misleading and confusing the jury on an improper theory of fraud, tainting any findings of guilt. The Court should further preclude the Government from falsely claiming during its opening statement that the alleged scheme began with efforts to reach out to these companies or that these companies were "intended victims" of the alleged fraud.

*Motion in Limine No. 3:* The Court should preclude the Government from arguing a single fraudulent scheme against the two specified targets in the Indictment—"Bank-1" and J.P. Morgan Chase—and any of the potential acquirors identified in the Governments' exhibits, including ▆▆▆▆, a potential buyer that the Government intends to call as a witness. As to Mr. Amar, the evidence of his conduct is distinct as to each of these potential buyers—in some cases, entirely absent—and substantial unfair prejudice would result from juror confusion. If the jury were to return a guilty verdict on any count—an outcome in no way anticipated—it would be impossible

---

[2] *See* GX1271 (identifying 52 companies); GX1446 (▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆); GX1268 (▆▆▆); GX1445, GXG534, GXG535, GXG538, GXG565, GXG566, GXG567 (▆▆▆); GX1434, GX1272 (▆▆▆); GX1260 (▆▆▆); GX1264, GX1264-A, GX1265, GX1265-A, GX1266, GXG538 (▆▆▆); GX1279 (▆▆▆).
[3] *See* GX1446 (▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆; GX1268 (▆▆▆); GX1260 (▆▆▆); GX1434, GX1272 (▆▆▆); GX1449 (▆▆▆); GX1279 (▆▆▆).

2

to discern whether that conviction rests upon knowing participation in a scheme to defraud any one of the potential buyers, J.P. Morgan Chase or, separately, "Bank-1," or whether the jury unanimously agreed on any alleged scheme.

## **LEGAL STANDARDS**

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir.1996)). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008).

Only evidence that is relevant is admissible under the federal rules of evidence. *See* Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence," so long as "the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also Old Chief v. United States*, 519 U.S. 172, 178 (1997). "'Implicit in that definition are two distinct requirements: (1) [t]he evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action.'" *United States v. Kaplan*, 490 F.3d 110, 121 (2d Cir. 2007) (quoting *United States v. Diaz*, 878 F.2d 608, 614 (2d Cir. 1989)).

Even if evidence is "plainly relevant, the trial judge retains discretion to exclude the evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice.'" *Kaplan*, 490 F.3d at 121 (quoting Fed. R. Evid. 403). Federal Rule of Evidence 403 authorizes the exclusion of relevant evidence in these circumstances including when relevant evidence's

3

"probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *Old Chief*, 519 U.S. at 180. Rule 403 is concerned with "some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (citation and internal quotation marks omitted). "[T]he Court has 'broad discretion to balance probative value against possible prejudice' under Rule 403." *United States v. Rossy*, No. 22-CR-550-02 (NSR), 2023 WL 8039500, at *2 (S.D.N.Y. Nov. 20, 2023) (quoting *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008)).

Defendant Amar moves *in limine* to exclude evidence and argument that lacks probative value and the admission of which at trial would cause substantial unfair prejudice including by confusing the jury.

**ARGUMENT**

I. **MOTION *IN LIMINE* NO. 1: THE COURT SHOULD PRECLUDE EVIDENCE AND/OR TESTIMONY ABOUT POTENTIAL ACQUIRING COMPANIES NEVER SPECIFIED IN THE INDICTMENT NOR ADEQUATELY DISCLOSED**

The Court should preclude evidence and/or testimony about potential acquiring companies that were not identified by the Government in the Indictment or properly disclosed in response to the Court's directive to "limit" the "targets" of the alleged fraud—including ███, ███, and ███████. *See* Hr'g Tr. at 15:6–11. Evidence about these companies should be excluded because their inclusion would allow trial by ambush under Rules 401 and 402, and because it is not relevant to the charges in the Indictment. Any probative value, moreover, is substantially outweighed by unfair prejudice and should be precluded pursuant to Rule 403.

4

### A. Evidence and/or Testimony About Unidentified Potential Acquiring Companies Should Be Precluded to Avoid Trial By Ambush and Because They Are Not Relevant to the Charges

Due Process and fundamental fairness dictate that the Court should preclude evidence and/or testimony relating to any potential acquiring company—including ███, █████, and ███—that was neither identified in the Indictment nor properly disclosed with details as to Mr. Amar's participation in the alleged fraud as to those potential acquirors.

The Indictment identified only two targets of the alleged fraud—J.P. Morgan Chase and "Bank-1." *See* Indictment ¶¶ 1-6. While the Indictment referred generically to "other potential acquiring companies," the Court agreed during the hearing on Mr. Amar's motion to dismiss that the "focus" of the scheme was J.P. Morgan Chase and the only other identified target was "Bank-1." Hr'g Tr. at 14:10; 15:6–11. The Government nevertheless argued that the alleged scheme was far more expansive—one that entailed "pitching [Frank] to many other potential acquiring companies," because "in their pitches . . . they repeated the same [alleged] misrepresentations." *Id.* at 14:5–9. The Court—though incredulous of that theory of fraud—directed the Government to "limit" and "list" those unspecified "targets" and ordered disclosure of the alleged misrepresentations made to them. *See id.* at 14:12–14; 15:6–11.

In spite of the Court's directive, the Government now seeks to introduce evidence concerning potential acquirors inadequately disclosed, and possibly not only with respect to the alleged misrepresentations in "pitch" material. As one example, the Government seeks to introduce evidence about three companies—███, ███, and █████—comprised of extensive spreadsheets compiling data and information about Frank for their distinct diligence processes.[4] It

---

[4] *See* GXG532, GXG533, GXG563, GXG564 (███ Diligence Datapacks); GXG533, GXG534, GXG535, GXG565, GXG566, GXG567 (████ Diligence Datapacks); GX1264-A, GX1265-A (██ Diligence Spreadsheets); GXG538 (████████ Diligence Question Tracker).

would be unjust to allow the Government to expand the boundaries of the alleged fraud at this late stage and cause unfair surprise at trial. Because the "touchstone of due process" is notice, courts are careful to avoid any surprises at trial that could deprive a defendant of a sufficient opportunity to prepare a defense or that result in "a trial by ambush." *See Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009); *United States v. Kelly*, 420 F.2d 26, 29 (2d Cir. 1969).

This concern is particularly acute in this case. In its disclosure letter, the Government only *expanded* the universe of alleged misrepresentations made to unidentified potential acquiring companies, claiming that Defendants repeated misrepresentations "in many different forms (*e.g.*, via email, in slide decks, in person, in Slack messages)" and were so "pervasive" the Government did not "include every false and misleading statement. *See* Gov't Ltr. dated June 6, 2024 ("Gov't Ltr."), ECF 140 at 7. Nor did the Government limit the group of unidentified potential acquirors pursuant to the Court's directive. The disclosure referred Defendants to "contact log lists" prepared in coordination with Frank's investment advisor on the acquisition, reflecting *seventy-six* different prospects for outreach about the acquisition opportunity, while purporting to reserve its right to supplement the identification. *See id.* at 6. In a complex fraud prosecution, "it is no solution to rely solely on the quantity of information disclosed by the government [because] sometimes, the large volume of material" nevertheless impacts a defendant's preparation for trial. *See United States v. Wey,* No. 15-CR-611 (AJN), 2017 WL 237651, at *18 (S.D.N.Y. Jan. 18, 2017). Here, the Government's disclosure potentially covers millions of documents and fails to give adequate notice of which specific statements the Government will allege were false or misleading, which were made to any number of potential buyers, and by whom.

The Government's disclosure regarding these potential acquiring companies is particularly deficient with respect to Mr. Amar's alleged conduct. Despite the Government's agreement to "put

6

in the misrepresentations to the potential acquiring companies" as well as "speakers," *see* Hr'g Tr. 15:6–11, the Government failed to do so. For example, while the Government's description of Frank's alleged outreach and marketing efforts to these unnamed buyers refers to Defendants together, only Mr. Amar's co-defendant's conduct is described in the specific examples that the Government contends false information was provided to these companies within either "pitch material" or through emails or documents provided in the "data room." *See id.* at 6–7. As to Mr. Amar, the precise contours of the alleged fraud on these companies remain unclear, leaving him at risk of trial by ambush. *See Spinelli*, 579 F.3d at 169 (because the "touchstone of due process" is notice, courts are careful to avoid any surprises at trial that could result in a "trial by ambush").

The Government's tactics leave the defense with little time before trial to review and to guess at which statements or companies the Government will contend form the basis of the crime Mr. Amar is alleged to have committed. For example, the "datapacks" for ▇▇▇, ▇▇▇▇, and ▇▇▇▇▇▇▇ identified on the Government's exhibit list contain numerous tabs compiling Frank financial figures and data, piling on to the over one million documents produced in this case. Where, as here, such tactics impact the preparation of a defense, preclusion of evidence of specific transactions not described with specificity is warranted. *See, e.g.*, Mem. & Order at 7, United States v. Aguilar, 1:20-cr-00390-ENV (E.D.N.Y. Nov. 1, 2022) ("11/1/2022 Aguilar Order") (precluding evidence of "specific transactions" not "described in the charging documents" without adequate disclosure and identification in part due to significant volume of discovery).

Preclusion is likewise warranted here, due to the Government's failure to comply with the Court's order to limit and disclose details of the alleged scheme and their subjects and apparent attempt to seek trial by ambush, introducing "potential acquiring companies" inadequately disclosed. In addition, because evidence and testimony relating to these companies are not

7

probative of Defendants' alleged motivation to defraud J.P. Morgan Chase or "Bank-1," the only alleged victims identified in the Indictment, it should be excluded. *See* Fed. R. Evid. 401, 402.

### B. Evidence and/or Testimony About Unidentified Potential Acquiring Companies Should Be Precluded As Substantially More Unfairly Prejudicial Than Probative

Evidence and/or testimony about these unidentified potential acquiring companies would also be substantially more unfairly prejudicial than probative, as the jury may be confused or misled as to alleged misrepresentations made during the time period and offenses charged in the Indictment. *See* Fed. R. Evid. 403. In particular, the jury should not need to decide whether the Government met its burden of proof regarding whether any of the innumerable alleged misrepresentation buried in J.P. Morgan Chase and Frank's due diligence process were relevant to its decision to purchase Frank, while being confronted with confusing, overlapping materials, provided to other potential buyers.

Critically, the Government's attempt to introduce at trial alleged misrepresentations as to these potential acquiring companies would impermissibly mislead the jury that all misrepresentations are evidence of fraud under the federal fraud statutes. But these "statutes are not catch-all laws designed to punish all acts of wrongdoing or dishonorable practices." *See United States v. Connolly*, 24 F.4th 821, 834 (2d Cir. 2022). Mere deception, ancillary to any bargain or contract, intended to induce a party to enter negotiations is not material fraud giving rise to criminal liability. *See United States v. Weimert*, 819 F.3d 351, 358 (7th Cir. 2016) ("Deception about negotiating positions—about reserve prices and other terms and their relative importance—should not be considered material for purposes of mail and wire fraud statutes."); *United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007) ("Schemes that do no more than cause their victims to enter into transactions they otherwise would have avoided are not sufficient.").

Otherwise, all kinds of misrepresentations made in "sharp dealing" in business or in

everyday life could result in a federal fraud conviction. Consider for example:

> [A] seller is willing to accept $28,000 for a new car listed for sale at $32,000. A buyer is actually willing to pay $32,000, but he first offers $28,000. When that offer is rejected and the seller demands $32,000, the buyer responds: "I won't pay more than $29,000." The seller replies: "I'll take $31,000 but not a penny less." After another round of offers and demands, each one falsely labeled "my final offer," the parties ultimately agree on a price of $30,000. Each side has gained from deliberately false misrepresentations about its negotiating position. Each has affected the other side's decisions. If the transaction involves interstate wires, has each committed wire fraud, each defrauding the other of $2,000? Of course not.

*Weimert*, 819 F.3d at 357–58. A conviction under the federal fraud statutes therefore requires more than proof of a false statement made across state lines or some relation to a sale of securities: as to each false statement, there must be proof of other critical elements of the offense—which serve as the guardrails to ensure that what may be, for example, the subject of a deceptive marketing claim is not punishable as a federal fraud crime.

In all likelihood, should the Government be permitted to introduce evidence relating to the alleged falsity of representations to potential buyers—in, for example, "pitch" materials—which never even pursued the opportunity to acquire Frank, a jury would be confused and misled by the overlapping nature of those alleged misrepresentations, failing to consider, as it must, on the critical elements of the offenses marking the line between mere deceit and fraud. *See Weimert*, 819 F.3d 351 at 357. To illustrate, it would be needlessly difficult for a juror to consider whether as to each misrepresentation—varying in terminology or subject matter—was material by the additional introduction of numerous other distinct transactions as may be introduced between Frank and any of the unspecified potential acquiring companies. These companies represent varying markets or industries—ranging from retail, education, insurance, banking, to technology—that may differently assess whether certain information is material for their decision to purchase Frank. *See United States v. Gramins*, 939 F.3d 429, 446 (2d Cir. 2019) (holding that whether "misrepresentations were material under the reasonable investor standard was for the jury to decide

in light of the opposing theories advanced by the two sides" about the "relevant features of the market" and the "context of certain trades").

To clarify and correct the misimpression caused by such evidence, defense counsel would be forced to offer evidence and testimony eliciting these distinguishing facts, which would in effect turn the issue of the alleged efforts to deceive each of these companies into a minitrial of the kind that Rule 403 prohibits. *See, e.g.*, *Ricketts v. City of Hartford*, 74 F.3d 1397, 1414 (2d Cir. 1996) (affirming exclusion of evidence that was "more confusing than helpfully probative" because of the risk of a "trial within a trial"). The misimpression caused by this evidence, and the resulting burden placed upon the defense to correct it, would be unfairly prejudicial and should be excluded. *See United States v. Nachamie*, 101 F. Supp. 2d 134, 141 (S.D.N.Y. 2000) (noting that "'unfair prejudice'" arises from evidence that may "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.").

## II. MOTION *IN LIMINE* NO. 2: THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM ARGUING AND INTRODUCING EVIDENCE AND/OR TESTIMONY THAT POTENTIAL BUYERS SOLICITED OR PITCHED ABOUT THE FRANK ACQUISITION WERE "VICTIMS" OR "INTENDED VICTIMS"

The Government presumably seeks to argue, introduce evidence, and/or elicit testimony that an extensive group of potential acquiring companies—including █████████ ██████████████████████████████████████████████ █████████████████[5]—were "victims" or "intended victims" of the alleged fraud, merely because they were "targets" of outreach or received allegedly false information when "pitched" about Frank. *See* Hr'g Tr. at 14:7–9, 16:16–18; Gov't Ltr. at 7. As the Court has already

---

[5] *See* GX1271 (identifying 52 companies); GX1446 (███████████████████████████████████████████); GX1268 █████; GX1260 (██████); GX1434, GX1272 (██████); GX1449 (██████); GX1279 (██).

10

observed, misleading statements allegedly made during outreach or pitch efforts to potential acquirors that did not decide whether to consummate the deal cannot form the basis for fraud charges in this case. *See id.* at 14:11–14 ("They are not misrepresentations of a material nature. What was material is what induced [J.P. Morgan Chase] "to do the deal").

None of the allegedly false statements made in pitch materials or initial outreach efforts about Frank could be considered material to a potential buyer's investment decision in the mergers and acquisition context. A misrepresentation must be "material to a decision" to "buy" and must be connected to "someone's decision to purchase." *See Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014). A misrepresentation that is ancillary to any bargain or contract is therefore not material fraud. *See Weimert*, 819 F.3d at 358; *United States v. Shellef*, 507 F.3d at 108. A company in receipt of information about an acquisition opportunity is not faced with a decision to purchase, but only a decision to negotiate or engage in a deal process. Thus, none of the allegedly false statements made in pitches or outreach to prospective buyers could have been made material for obtaining money (as to Count I–III) or in connection with the purchase or sale of a security (as to Count IV).[6]

Accordingly, any allegedly false statements made in pitches or outreach to potential buyers including those identified in the Government's exhibits cannot be relevant to whether there was a scheme to defraud, and such evidence of outreach or pitches to potential buyers should be excluded as irrelevant. *See* Fed. R. Evid. 401, 402. Moreover, even if relevant, any probative value of such evidence would be substantially outweighed by unfair prejudice caused by misleading and

---

[6] Relatedly, the Government's theory that Mr. Amar could be prosecuted for mere inducement to contract runs afoul of *Ciminelli v. United States*, 598 U.S. 306 (2023), where the Supreme Court rejected the "right to control" theory of fraud. There, the Court held that a defendant does not commit fraud by scheming "to deprive the victim of potentially valuable economic information necessary to make discretionary economic decisions." *Id.* at 309; *see also* Def. Mem. of Law in Support of Mot. *in Limine* to Preclude Evidence and Argument In Support of Now-Invalid Theories of Fraud Pursuant to *Ciminelli* and Its Progeny.

11

confusing the jury, which could theoretically convict based solely on the improper theory that these buyers were defrauded. The Court should therefore preclude the Government from introducing evidence or soliciting testimony regarding alleged fraud on what the Government has described as "intended victims" of the alleged fraud merely because they were "targets" of outreach or pitches to sell Frank. *See* Fed R. Evid. 403.

Finally, because "opening statements should not mention inadmissible or unprovable evidence," the Court should likewise preclude the Government from claiming or suggesting during its opening statement that companies that were subject of outreach or pitches about the Frank acquisition were "intended victims" of the fraud. *See United States v. Yakobowicz*, 427 F.3d 144, 150 (2d Cir. 2005) (internal quotation marks omitted). Indeed, such statements would impact "significant elements of the case" and amount to "prosecutorial misconduct." *United States v. Millan*, 817 F. Supp. 1086, 1088 (S.D.N.Y. 1993) (citation omitted).

### III. MOTION *IN LIMINE* NO. 3: THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM ARGUING THE EXISTENCE OF A SINGLE SCHEME TO DEFRAUD AGAINST MULTIPLE POTENTIAL BUYERS

The Court should preclude the Government from arguing the existence of a single alleged fraudulent scheme against the two specified targets in the Indictment—"Bank-1" and J.P. Morgan Chase—as well any of the potential acquirors identified in the Governments' exhibits, including ▉▉▉▉▉▉, a potential buyer for whom the Government intends to call as a witness. The Court should also instruct the jury that it must be unanimous as to any one of the crimes charged and consider each offense separately.

Mr. Amar would face substantial unfair prejudice if the Government were permitted to argue that each of these distinct offenses were part of a common scheme. If a jury were unexpectedly to reach a verdict on any count, there would be no way to discern whether the

12

conviction was based on a scheme to defraud J.P. Morgan Chase, or separately, "Bank-1," or any one of the number of potential acquiring companies that the Government may impermissibly seek to introduce.

As to "Bank-1" and J.P. Morgan Chase, the Indictment alleges separate courses of conduct carried out against "Bank-1" and J.P. Morgan Chase with respect to Mr. Amar and yet purports to combine these distinct crimes together in each Count. *See United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001) (citing Rule 8(a)'s requirement that there be a "separate count for each offense"). And, based on its prior representations, the Government appears poised to argue that Defendants' conduct with respect to each and every potential buyer were likewise part of the same scheme to defraud (if such evidence and/or testimony about those companies is not excluded for the reasons stated above). *See* Gov't Ltr. at 8. As explained above, the Government's disclosures fail to provide adequate notice of Mr. Amar's conduct with respect to these buyers, which only amplifies the likelihood of unfair prejudice should the Government be permitted to argue that multiple, distinct transactions—even stemming before the offense period charged in the Indictment—are one scheme carried out by both Defendants.

While Mr. Amar previously argued that the proper remedy under these circumstances would be to dismiss the duplicitous counts, *see* Def.'s Mot. to Dismiss, ECF No. 117 at 28–29; without such relief granted, the Court should order alternative remedies to remediate the ongoing harm of combining these distinct schemes: and (1) preclude the Government from arguing that any potential deal—whether or not consummated or not—distinct to each of the alleged victims, was part of one scheme; and (2) instruct the jury that it must be unanimous as to any one of the crimes charged and consider each offense separately. Without these remedies, the Government could defend the conviction on a scheme the jury in fact rejected, which could deprive Mr. Amar of

double jeopardy protections.

## INCORPORATION OF MS. JAVICE'S ARGUMENTS AND MOTIONS

Mr. Amar incorporates and adopts as if fully set forth herein Sections 1, 2, and 3 of the motions *in limine* filed on behalf of Ms. Javice (ECF No. 196). Mr. Amar seeks on his own behalf all relief sought by Ms. Javice on these motions.

## CONCLUSION

For the foregoing reasons, the Court should grant the relief requested herein.

Dated: January 13, 2025

Respectfully submitted,

**KOBRE & KIM LLP**

<u>/s/ *Sean S. Buckley*</u>
Sean S. Buckley
Jonathan D. Cogan
Alexandria E. Swette
Daisy Joo
800 Third Avenue
New York, NY 10022
Tel: (212) 488-1200
Sean.Buckley@kobrekim.com
Jonathan.Cogan@kobrekim.com
Alexandria.Swette@kobrekim.com
Daisy.Joo@kobrekim.com

*Counsel for Defendant Olivier Amar*