# Exhibit D



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

August 9, 2024

**BY EMAIL**
Sean S. Buckley
Steven G. Kobre
Alexandria E. Swette
Ana Frischtak
Kobre & Kim LLP
800 Third Avenue
New York, New York 10022

Re:   *United States v. Charlie Javice and Olivier Amar*, 23 Cr. 251 (AKH)

Dear Counsel:

We write in response to your July 15, 2024 expert notification regarding defense-designated experts (the "Expert Notice"). For the reasons set forth below, the Expert Notice does not comply with Rule 16's requirement that the Expert Notice must provide "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief" and "the bases and reasons for them." *See* Rule 16(b)(1)(C)(iii). These deficiencies undermine the Government's ability to challenge the admissibility of the proffered experts' testimony and to prepare for trial. Accordingly, the Government requests that the defendant supplement his expert disclosures to address the deficiencies identified below.

**Dr. Maxime Cohen**

First, the Expert Notice states that Dr. Cohen will rely, in part, on his "research and publications." Please identify that research and those publications. Please also identify Dr. Cohen's "experience consulting with companies" that will inform his proffered opinions.

Second, the Expert Notice states that Dr. Cohen reviewed "portions of the discovery." Please identify those portions of discovery by Bates number. Please also disclose whether Dr. Cohen interviewed Amar or any other individual in connection with his work. If so, please identify the information supplied by Amar or any other individual to Dr. Cohen.

Third, the Expert Notice with respect to Dr. Cohen is insufficient because it does not adequately state Dr. Cohen's opinions or the bases for them. For example:

- The Expert Notice vaguely refers to "industry standards" or "common components of a data validation exercise" without identifying what those "standards" or

- "components" are, and why, and on what basis, they are standard or common across the industry.

- The Expert Notice states the "practice of purchasing data from third party providers" "is a common practice in the tech industry," without stating the basis for this opinion.

- The Expert Notice states that it "relatively common for tech start-ups to lack consistent organization and data storage," without stating the basis for this opinion.

- The Expert Notice states that it is "an established practice" to use synthetic data in the "tech industry," without stating the basis for this opinion.

**Professor Steven Davidoff Solomon**

First, the Expert Notice states that Professor Solomon "may rely upon his own research and publications." Please identify that research or those publications.

Second, the Expert Notice states that Professor Solomon reviewed "portions of the discovery." Please identify those portions of the discovery by Bates number. Please also disclose whether Professor Solomon interviewed Amar or any other individual in connection with his work. If so, please identify the information supplied by Amar or any other individual to Professor Solomon.

Third, the Expert Notice with respect to Professor Solomon is insufficient because it does not adequately state Professor Solomon's opinions or the bases for them. For example:

- The Expert Notice refers to "unusually 'seller friendly'" terms of the Merger Agreement without identifying the specific terms to which Professor Solomon refers or the basis for his conclusion that they were "seller friendly."

- The Expert Notice refers to various documents related to the Merger Agreement, including internal JPMC correspondence, as reflecting deliberate decisions by personnel at JPMC to forego representations on Frank's user base, without identifying the referenced documents by Bates number.

- The Expert Notice states that "JPMC had access to all books and records and assets of Frank that they desired or requested" without stating the basis for that opinion.

**Professor Scott Meadow**

First, the Expert Notice states that Professor Meadow may rely on "upon his own research and publications, research and publications authored by others, and publicly available data sources." Please identify the research, publications, and publicly available data upon which Professor Meadow will rely.

Second, the Expert Notice states that Professor Meadow reviewed "portions of the discovery." Please identify those portions of the discovery by Bates number. Please also disclose whether Professor Meadow interviewed Amar or any other individual in connection with his work. If so, please identify the information supplied by Amar or any other individual to Professor Meadow.

Third, the Expert Notice with respect to Professor Meadow is insufficient because it does not adequately state Professor Meadow's opinions or the bases for them. For example:

- The Expert Notice refers to an "industry-standard due diligence process," without identifying what that process is or the basis for concluding that it is standard across the industry.

- The Expert Notice states that that "[t]here was no apparent effort by JPMC to reconcile apparent inconsistencies across documents in the Frank data room," but fails to identify the inconsistencies or the documents (by Bates number) on which that opinion was based, as well as the basis for his opinion that JPMC made no effort to reconcile any such inconsistencies.

- The Expert Notice states that Professor Meadow has an opinion concerning "Frank's historical financial performance" compared to "JPMC's projections of Frank's future financial performance," without identifying what those projections were, or whether Professor Meadow prepared his own assessment of Frank's financial performance.

- The Expert Notice also vaguely refers to a "large market penetration" "implied" by Frank's representation that it had 4.25 million customers using its FAFSA tool without further detail on Professor Meadow's opinion on what market penetration of 4.25 million customers implied.

- The Expert Notice states that Frank "operated in a space with low barriers to entry," without identifying what those barriers were. It further states that the Frank faced various uncertainties and risks, without identifying the reasons why Professor Meadow believed Frank faced such uncertainties or risks.

Page 4

      The Government respectfully requests that the defense provide supplemental disclosures sufficient to comply with Rule 16 by no later than August 15, 2024.

      Very truly yours,

      DAMIAN WILLIAMS
      United States Attorney

by:  /s/
Rushmi Bhaskaran
Nicholas W. Chiuchiolo
Georgia Kostopoulos
Dina McLeod
Assistant United States Attorneys
(212) 637- 2439 / -1247 / -2212 / -1040