UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

CHARLIE JAVICE and OLIVIER AMAR,

Defendants.

Case No. 23 Cr. 251 (AKH)

**DEFENDANT OLIVIER AMAR'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE AND ARGUMENT IN SUPPORT OF NOW-INVALID THEORIES OF FRAUD PURSUANT TO *CIMINELLI* AND ITS PROGENY**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

I.     LEGAL STANDARDS ................................................................................................... 3

II.    *CIMINELLI* REJECTS THEORIES OF FRAUD WITHOUT CONTEMPLATED ECONOMIC HARM ........................................................................................................ 3

       A.    *Ciminelli* Repudiated the "Right-To-Control" Theory of Fraud ............................ 5

       B.    *Ciminelli* Likewise Foreclosed Fraudulent Inducement Theories Without Proof of Contemplated Economic Harm .................................................................. 6

III.   THE COURT SHOULD PRECLUDE ARGUMENT OR EVIDENCE CONCERNING THE NOW-INVALID THEORIES OF FRAUD .................................. 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ciminelli v. United States*,
  598 U.S. 306 (2023) ...................................................................................................Passim

*Cleveland v. United States*,
  531 U.S. 12 (2000) ............................................................................................................ 5

*Highland Capital Mgmt., L.P. v. Schneider*,
  551 F. Supp. 2d 173 (S.D.N.Y. 2008) ............................................................................... 3

*Kelly v. United States*,
  590 U.S. 391 (2020) ...................................................................................................... 5, 8

*Kousisis v. United States*,
  No. 23-909, 144 S. Ct. 2655 (2024) ..................................................................... 1, 6, 8, 9

*McNally v. United States*,
  483 U.S. 350 (1987) .......................................................................................................... 5

*Palmieri v. Defaria*,
  88 F.3d 136 (2d. Cir. 1996) ............................................................................................... 3

*S.E.C. v. Govil*,
  86 F. 4th 89 (2d Cir. 2023) ................................................................................................ 4

*Shaw v. United States*,
  580 U.S. 63 (2016) ........................................................................................................ 8, 9

*United States v. An*,
  733 F. Supp. 3d 77 (E.D.N.Y. 2024) ................................................................................. 4

*United States v. Binday*,
  804 F.3d 558 (2nd Cir. 2015) ............................................................................................ 7

*United States v. Constantinescu*,
  No. 22-cr-612 (ASH), 2024 WL 1221579 (S.D. Tex. Mar. 20, 2024) ............................... 4

*United States v. Kousisis*,
  82 F.4th 230 (3d Cir. 2023) ............................................................................................... 9

*United States v. Lebedev*,
  932 F.3d 40 (2nd Cir. 2019) .............................................................................................. 7

*United States v. Novak*,
  443 F.3d 150 (2d Cir. 2006) .............................................................................................. 7

*United States v. Nordlicht, et al.*,
  No. 16-cr-640 (BMC), 2023 WL 4490615 (E.D.N.Y. July 12, 2023) ............................... 5

*United States v. Ochs*,
  842 F.2d 515 (1st Cir. 1988) .................................................................................................. 4

*United States v. Pasternak*,
  2024 WL 4763986 (2d Cir. Nov. 13, 2024) ............................................................................ 6

*United States v. Regent Off. Supply Co.*,
  421 F.2d 1174 .......................................................................................................................... 7

*United States v. Runner*,
  No. 18-cr-578 (JS), 2023 WL 3727532 (E.D.N.Y. May 30, 2023) ............................................ 5

*United States v. Schwartz*,
  924 F.2d 410 (2d Cir. 1991) .................................................................................................... 6

*United States v. Shellef*,
  507 F.3d 82 (2d Cir. 2007) ...................................................................................................... 6

*United States v. Simpson*,
  No. 21-cr-153 (TAD), 2023 WL 6247268 (W.D. La. Sept. 25, 2023) ........................................ 4

*United States v. Smothermon*,
  No. 19-cr-382 (AKH), 2024 WL 4467614 (S.D.N.Y. Oct. 10, 2024) ...................................... 10

*United States v. Starr*,
  816 F.2d 94 (2d Cir. 1987) ...................................................................................................... 7

*United States v. Viloski*,
  557 Fed. App'x 28 (2nd Cir. 2014) .......................................................................................... 7

*United States v. Yates*,
  16 F.4th 256 (9th Cir. 2021) .................................................................................................... 4

**Rules**

Fed. R. Evid. 401 ............................................................................................................... 1, 3, 9, 11
Fed. R. Evid. 402 ........................................................................................................................... 3
Fed. R. Evid. 403 ................................................................................................................... 1, 3, 9

iii

Defendant Olivier Amar respectfully submits this memorandum of law in support of his motion *in limine* to exclude evidence and argument based on now-invalid theories of fraud.

## PRELIMINARY STATEMENT

Defendant Amar moves *in limine* to exclude irrelevant evidence that has no probative value: namely, evidence that J.P. Morgan Chase and/or potential acquirors were allegedly deprived of economic information or induced to enter a financial transaction—the sale of Frank—without proof of intent to deprive them of what they bargained for—*i.e.*, what they purchased: the company and everything that came with it. Without a concomitant deprivation of the benefit of the bargain, such evidence is irrelevant and has no probative value. *See* Fed. R. Evid. 401 and 402. And neither Supreme Court nor Second Circuit precedent allow federal fraud convictions to be based solely on the fact that inaccurate information was shared with another in the course of a contemplated transaction. To the contrary, *Ciminelli* requires proof of intent to deprive a counterparty—here, J.P. Morgan Chase and/or other potential buyers—of the benefit of its bargain, in addition to a misrepresentation relating to the essential elements of the transaction.

The risk that the Government will argue or introduce evidence in support of an invalid theory of fraud is substantial. At the inception of this case, the Government charged the offenses based on a "fraudulent inducement" theory—*i.e.*, that J.P. Morgan Chase was allegedly induced into its acquisition of Frank based on alleged misrepresentations about the company. *See* Compl. ¶¶ 2–6. The alleged deprivation of money was "approximately $175 million"—the total acquisition cost. *See id*. Mere months before the criminal charges were filed in this case, the Supreme Court decided *Ciminelli v. United States*, 598 U.S. 306 (2023), which reaffirmed that depriving someone of accurate information relevant to a financial decision or transaction—or, in other words, the "right to control" their assets—is not a basis for a federal fraud conviction, solely because money

is exchanged in the transaction. There must be proof of intent to cause economic harm to that counterparty. Nevertheless, to circumvent the limits imposed by *Ciminelli*, the Government has started to prosecute the same kind of deceptive conduct as charged in *Ciminelli* under the guise of a "fraudulent inducement" theory. The Government attempts this untenable workaround—which is currently being challenged, *see Kousisis v. United States*, No. 23-909, *cert. granted*, 144 S. Ct. 2655 (2024)—in this case.

While the Government's productions and disclosures fail to define the boundaries of its theory, it appears the Government is poised to argue and present evidence at trial in an effort to prove these invalid theories of fraud, claiming for example that the alleged scheme targeted numerous *potential* buyers of Frank, supposedly deceived by any number of yet unidentified misrepresentations buried throughout wide-ranging materials, from pitch materials to technical spreadsheets exchanged during diligence.[1] The Government's theory of fraud is boundless—one that would label as a "victim" any sophisticated business *even considering* a purchase based on alleged falsities in mere marketing material. Indeed, that is precisely what this Court noted when the Government argued that the alleged fraud extended beyond J.P. Morgan Chase to *potential* acquiring companies, including "Bank-1," which never consummated an acquisition of Frank, as well as those the Government confoundingly called "victims" and later characterized as "intended victims," that never initiated any acquisition process and were—at most—"pitch[ed]" about the acquisition opportunity. *See* May 30, 2024 Hr'g Tr. ("Hr'g Tr.") at 14:7–9, 16:16–18, ECF No. 138; June 24, 2024 Gov't Ltr. ("Gov't Ltr.") at 7, ECF No. 140.

---

[1] The Government's trial exhibit list includes materials related to other potential buyers of Frank that were neither identified in the Indictment nor adequately disclosed to the defense in spite of the Court's directive to identify and "limit" the "targets" of the alleged fraud, *see* Hr'g Tr. at 15:6–11, as well as materials referring to as many as fifty-two companies that were merely identified as prospects for outreach about the acquisition opportunity, which are likewise the subject of Mr. Amar's additional motions *in limine* filed separately. *See* Def. Amar Omnibus Mem. of Law in Support of Mot. *in Limine*.

2

Given the expanding nature of the Government's theory of fraud, Defendant Amar moves *in limine* to preclude the Government from arguing or offering evidence in support of now-invalid fraud theories that criminalize mere breaches or inducements of contract and specifically (1) require the Government to show how any evidence they purport to offer as to each alleged misstatement is allegedly made with contemplated economic harm, or otherwise preclude such evidence; and (2) instruct the jury, as proposed in Defendants' requests to charge, to ensure it does not reach a verdict based on an improper theory of fraud.

## ARGUMENT

**I.    LEGAL STANDARDS**

Motions *in limine* enable the Court to rule in advance of trial on the admissibility of evidence to avoid unnecessary interruptions of the trial. *See, e.g.*, *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d. Cir. 1996)).

Only relevant evidence is admissible under the Federal Rules of Evidence. *See* Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make a fact more or less probable" than it otherwise would be, where "the fact is of consequence in determining the action." Fed. R. Evid. 401. Even relevant evidence, however, is subject to exclusion where its "probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

**II.   *CIMINELLI* REJECTS THEORIES OF FRAUD WITHOUT CONTEMPLATED ECONOMIC HARM**

The Government seeks to convict Defendants for (1) alleged misrepresentations that purportedly induced J.P. Morgan Chase to acquire Frank, identifying as the object of the fraud the

3

acquisition price and other money obtained; and (2) alleged misrepresentations made to potential acquiring companies, including "Bank-1," to induce them to acquire Frank, which never occurred, for speculative amounts they never paid. The Government's proposed trial evidence appears to be nothing more than a thinly veiled attempt to present a case based upon the now-rejected "right-to-control" theory of fraud, *i.e.*, a fraud premised solely upon the alleged deprivation of the victim of potentially valuable economic information necessary to make discretionary economic decisions. Such evidence cannot establish fraud under the federal fraud statutes and therefore should be excluded under Rules 402 and 403.

The Supreme Court in *Ciminelli* reaffirmed long-standing precedent that to secure a conviction under the federal fraud statutes,[2] the Government must prove a scheme to defraud aimed at causing a deprivation of money or property. Under *Ciminelli*, the Government cannot argue that deprivation of property occurs where a buyer receives the benefit of the bargain, simply because a potential buyer is deprived of information relevant for a decision to transact with the seller. Allowing the Government to argue a theory of fraud where a defendant engages in a commercial transaction by deceiving a potential buyer—without proving intent to deprive the buyer of its bargain—would cross the same line. The Government should not be permitted in this case to let "in through the back door the very prosecution theory that [the Supreme Court] tossed out the front." *See, e.g.*, *United States v. Yates*, 16 F.4th 256, 267 (9th Cir. 2021) (rejecting

---

[2] Even though *Ciminelli* involved a wire fraud allegation, courts have applied it to all fraud statutes, noting that "the opinion spoke in terms of '*the federal fraud statutes*,' so its requirement that a fraud scheme deprive the victim of a 'traditional property interest'" is not cabined to wire fraud. *United States v. An*, 733 F. Supp. 3d 77, 91 (E.D.N.Y. 2024) (emphasis added) (applying *Ciminelli* to bank fraud); *S.E.C. v. Govil*, 86 F. 4th 89, 103, 105 (2d Cir. 2023) (applying principles of *Ciminelli* in securities fraud case to require "pecuniary harm" for victims to receive proceeds of disgorgement to avoid "windfall on those who received the benefit of the bargain); *see also, e.g.*, *United States v. Simpson*, No. 21-cr-153 (TAD), 2023 WL 6247268, at *2 (W.D. La. Sept. 25, 2023) (granting motion *in limine*, extending the *Ciminelli* limitation on fraud charges to apply in a bank fraud case); *United States v. Constantinescu*, No. 22-cr-612 (ASH), 2024 WL 1221579, at *5 (S.D. Tex. Mar. 20, 2024) (dismissing securities fraud charges based on *Ciminelli*).

government's attempt to "recharacterize" evidence of a fraud theory invalidated by the Supreme Court to secure a conviction); *accord United States v. Ochs*, 842 F.2d 515, 527 (1st Cir. 1988).

### A.   *Ciminelli* Repudiated the "Right-To-Control" Theory of Fraud

In *Ciminelli*, the Supreme Court rejected the Second Circuit's decades-long practice of permitting federal fraud prosecutions under a "right-to-control" theory where, contrary to statutory text, a victim is neither deprived of money nor traditional property interests. *See Ciminelli*, 598 U.S. at 313; *see also id.* at 312 n.2 (noting that the Court has "construed identical language in the wire and mail fraud statutes *in pari materia*"). The defendant in *Ciminelli* was convicted of wire fraud based on the sole theory that he "schemed to deprive a victim"—there, his contracting party—"of potentially valuable economic information necessary to make discretionary economic decisions." *Id.* at 310–11. The Supreme Court unanimously reversed. *Id*. at 309. Guided by earlier precedent constraining the federal fraud statutes, the Court emphasized that the "wire fraud statute reaches only traditional property interests." *Id*. at 316. The Court reasoned that allowing a "right-to-control" theory would convert nearly any misrepresentation or nondisclosure of "valuable economic information" related to a transaction into wire fraud, impermissibly federalizing "an almost limitless variety of deceptive actions traditionally left to state contract and tort law." *Id*. at 315–16. Because the "right to valuable economic information," even if "needed to make discretionary economic decisions," was "not a traditional property interest," the Court held that it cannot "form the basis for a conviction under the federal fraud statutes." *Id.*[3]

---

[3] This principle has a long pedigree. Before *Ciminelli*, the Court held in *Cleveland v. United States* that the federal mail fraud statute "d[id] not reach fraud in obtaining a state or municipal [video poker] license" because such a license "is not 'property' in the government regulator's hands." *Cleveland v. United States*, 531 U.S. 12, 20 (2000). And before *Cleveland*, the Supreme Court held in *McNally v. United States* that a public official's scheme to steer government contracts and pocket kickbacks did not violate the mail fraud statute because that statute "clearly protects property rights, but does not refer to the intangible right of the citizenry to good government." *McNally v. United States*, 483 U.S. 350, 356 (1987); *see also, e.g., Kelly v.*

Courts in this Circuit therefore now reject "right-to-control" theories of loss. *See, e.g.*, *United States v. Nordlicht, et al.*, No. 16-cr-640 (BMC), 2023 WL 4490615 at *6 (E.D.N.Y. July 12, 2023) (granting judgment of acquittal for a wire fraud conviction under *Ciminelli* where the Government argued that the defendants intended to deprive bondholders of "knowledge"); *United States v. Runner*, No. 18-cr-578 (JS), 2023 WL 3727532, at *2 (E.D.N.Y. May 30, 2023) (granting motion *in limine* in part and precluding the government from using a "right to control theory," citing *Ciminelli*).

### B. *Ciminelli* Likewise Foreclosed Fraudulent Inducement Theories Without Proof of Contemplated Economic Harm

With the "right-to-control" theory so interred, the Government nevertheless attempts to use an even broader "fraudulent inducement" theory to prosecute the same type of conduct charged in *Ciminelli*. But Second Circuit precedent permitting such a theory must now be read in light of *Ciminelli*. The Government can no longer prosecute as fraud mere deceit to induce a counterparty to transact that would result in money paid, merely because a misrepresentation was relevant to the transaction. Rather, a federal fraud conviction requires the Government to prove beyond a reasonable doubt that a defendant had the intent to deprive a counterparty of the benefit of the bargain, in addition to a misrepresentation relating to the essential elements of the transaction.

Before *Ciminelli*, the Second Circuit demarcated mere inducements—which are not fraudulent—from "schemes that depend for their completion on a misrepresentation of an essential element of the bargain." *United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007). The Court looked at transactions *ex post facto* and came to different conclusions about what was an "essential

---

*United States*, 590 U.S. 391, 401–02 (2020) (object of the scheme must be to "convert[]" property to defendant's benefit, causing "economic loss").

6

element of the bargain" versus a mere preference or incentive to bargain.[4] Under *Ciminelli*, the lines are now clear: there must also be proof of contemplated economic harm, not solely a misrepresentation aimed at the "essential element of the bargain."[5] Otherwise, the Second Circuit's decisions affirming a "right-to-control" theory of fraud, now abrogated by *Ciminelli*, could otherwise survive scrutiny by reframing the alleged misrepresentation as related to the "essential element of the bargain," simply because a defendant obtained money in a transaction.[6]

Following *Ciminelli*, the critical requirement is that "deceit must be *coupled* with a contemplated harm to the victim," which itself "affect[s] the very nature of the bargain itself." *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987) (emphasis added). Such intent may be obvious in transactions where a defendant uses deception to get "something for nothing," or to cause a victim to "part with substantial sums of money in return for essentially worthless property." *United States v. Regent Off. Supply Co.*, 421 F.2d 1174, 1181 (2d Cir. 1970), abrogated on other

---

[4] *Compare, e.g., United States v. Schwartz*, 924 F.2d 410, 420–21 (2d Cir. 1991) (assurance that equipment would not be exported to certain countries went to an essential element of the bargain between producer and purchaser); *with, e.g., Shellef*, 507 F.3d at 95, 109 (vacating conviction because jury may have "concluded that the defendants did not misrepresent an 'essential element' of the bargain" where buyer misrepresented that product would be sold domestically and manufacturer "would not have sold" product otherwise").

[5] The Second Circuit, in an unpublished and non-binding decision, concluded otherwise, holding that it is sufficient for a "defendant to have contemplated a scheme 'to injure another to [the defendant's] own advantage by withholding or misrepresenting material facts.'" *United States v. Pasternak,* No. 23-6316-cr, 2024 WL 4763986, at *3 (2d Cir. Nov. 13, 2024) (unpublished) (citation omitted). This decision does not reflect the accurate state of Supreme Court or Second Circuit case law. For one, it pre-dates the Government's concession at oral argument in *Kousisis* that it was legal error for the government to argue in various jurisdictions that a deceptive inducement need only be material and need not go to the "essence of the bargain." *See supra* n.3; *see also* Tr. of Oral Argument at 77–78, *Kousisis v. United States*, 144 S. Ct. 2655 (2024) (No. 23-909), 2024 WL 5055868, at *77–78. For another, the Court's reasoning, having reviewed defendant's challenge for plain error only, failed to address the full scope of *Ciminelli*'s impact on Second Circuit jurisprudence.

[6] *See, e.g.*, *United States v. Lebedev,* 932 F.3d 40, 49 (2nd Cir. 2019) (depriving financial institutions of information about disguised Bitcoin financial transactions formed the basis for wire fraud conviction); *United States v. Binday,* 804 F.3d 558, 565 (2nd Cir. 2015) (depriving life insurance companies information about stranger-oriented life insurance policies formed the basis for wire fraud conviction); *United States v. Viloski*, 557 Fed. App'x 28, 32–33 (2nd Cir. 2014) (depriving Dick's Sporting Goods information about a real estate broker's no-work consulting fees formed the basis for wire fraud conviction).

grounds by *Ciminelli*. But to ensure federal fraud statutes do not extend to mere deceptive practices in business transactions, where a counterparty receives the benefit of its bargain, the Government must show proof of intent to deprive a counterparty the economic value of the bargain, not merely misrepresentations aimed at the essential elements of the specific transaction at issue.

The Government is sure to claim that *Ciminelli* has no impact on the Second Circuit's decisions addressing the standards for fraudulent inducement as a basis for federal fraud convictions.[7] But, as the Government itself acknowledged in *Ciminelli*, the "right-to-control" and "fraudulent inducement" doctrines are logically equivalent.[8] The Supreme Court could have upheld the conviction in *Ciminelli* by concluding that misrepresentations about the "nature of the transaction" suffice—since the contract would not have been awarded if the facts were known. But it did not do so, holding instead that the federal fraud statutes require contemplated economic harm, *i.e.*, deprivation of something of value. *See* 598 U.S. at 315; *see also, e.g.*, *Kelly*, 590 U.S. at 402 n.2 (a "'victim's loss must be an objective of the deceitful scheme'"); *Shaw v. United States*, 580 U.S. 63, 72 (2016) ("property fraud requires a scheme both "to deceive . . . and deprive [the victim] of something of value"). A "fraudulent inducement" theory punishing material misrepresentations without intent to cause economic harm covers "almost any deceptive act" in a commercial context and is simply another form of the discredited "right to control." *Ciminelli*, 598 U.S. at 315–16. This path to conviction is no longer viable.

---

[7] Before the Supreme Court in *Kousisis*, the Government recently argued in favor of a heightened "essence-of-the-bargain" test for misrepresentations to impose proper guardrails on the use of federal fraud statutes to prosecute material frauds. *See* Tr. of Oral Argument at 61–78, *Kousisis v. United States*, 144 S. Ct. 2655 (2024) (No. 23-909), 2024 WL 5055868, at *61–78.

[8] In defense of its prosecution of the charged conduct, the Government argued that the Second Circuit applied the right-to-control theory to cover conduct where victims are induced to enter into a commercial transaction through misrepresentations. *See* Gov't Br. at 25, *Ciminelli v. United States*, 598 U.S. 306 (2023) (No. 21-1170), 2022 WL 10224977, at *25. The Government purported that a scheme to defraud by fraudulent inducement targets property because the object of the scheme would be to obtain money or consideration in the transaction. *See id.*

8

### III. THE COURT SHOULD PRECLUDE ARGUMENT OR EVIDENCE CONCERNING THE NOW-INVALID THEORIES OF FRAUD

In light of *Ciminelli*, the Court should preclude argument—or evidence in support thereof—that deception can constitute fraud without proof of actual or contemplated economic harm, that is to deprive a counterparty of the benefit of its bargain, as irrelevant. *See* Fed. R. Evid. 401 and 402. Without proper safeguards prior to trial to exclude such argument and evidence, there will be substantial unfair prejudice caused by misleading and confusing the jury on improper theories of fraud, and risk of an improper conviction based on an invalid "right-to-control" or "fraudulent inducement" theory. *See* Fed. R. Evid. 403.

This concern is not theoretical. The Supreme Court recently granted certiorari in *Kousisis v. United States*—another case involving an attempted end-run around *Ciminelli*—to decide whether deceptive inducement of contract can constitute fraud "even if inflicting economic harm on the victim was not an object of the scheme." Pet. for Writ of Cert. at i, *Kousisis v. United States*, No. 23-909, *cert. granted*, 144 S. Ct. 2655 (2024). In *Kousisis*, the defendants were convicted of wire fraud for inducing a government agency into issuing contracts by certifying that certain funds would be used for specific suppliers. *See United States v. Kousisis,* 82 F.4th 230, 234–35 (3d Cir. 2023). Although the agency "received the repairs it paid for," and thus suffered no financial loss, the Third Circuit upheld the convictions on the ground that these certifications were an "essential component" of the bargain, in which money was obtained. *Id.* at 236, 240–41. Should the Supreme Court reach the merits, it will likely reject this theory, as it reintroduces the same prosecutorial overreach that *Ciminelli* and other Supreme Court precedent has barred. *See, e.g.*, S*haw*, 580 U.S. at 72 (reaffirming that property fraud requires a scheme both "to deceive . . . *and* deprive [the victim] of something of value").

Here, the Indictment by its own terms alleges that the object of defendants' alleged scheme was to *obtain* "acquisition price, as well as salary, bonus and other compensation paid . . . as retained employees" at J.P. Morgan Chase. Indictment ¶¶ 2–6 (emphasis added). The Indictment does not allege that Defendants contemplated economic harm by inflating Frank's acquisition price or falsely inflating their compensation or bonus. *Cf. United States v. Smothermon*, No. 19-cr-382 (Hellerstein, J.), 2024 WL 4467614, at *1 (S.D.N.Y. Oct. 10, 2024) (denying defendant's request for stay pending outcome of *Kousisis*, distinguishing defendant's alleged criminal fraud as aimed "to falsely *inflate* his bonus," *i.e.*, intent to cause economic harm) (emphasis added). Nor does the Indictment suggest that Defendants intended to deprive a potential buyer of the value of the benefit it bargained for.

Moreover, as *Ciminelli* itself demonstrates, the Government's theories of fraud may shift throughout the life of a prosecution—from indictment, to trial, and even on appeal. *See Ciminelli*, 598 U.S. at 310 n.1 (noting that the initial indictment "alleged that the Buffalo Billion contracts *were the property at issue*," not valuable economic information) (emphasis added). Indeed, this Court has already commented on the Government's continued expansion of its theory of fraud in this case. At the hearing on Mr. Amar's motion to dismiss, the Government claimed the alleged fraud captured any potential buyer to whom defendants allegedly told "lies about [Frank] in order to gain money or property," regardless of whether those buyers "decide[d] to give them that money or property." *See* Hr'g Tr. at 16:14–18. The Court rightfully queried how it could be possible those potential acquirers could be victims. *See id.* at 16:7-10. They cannot.

Such an alleged fraud scheme as to potential investors would be precisely the type barred by *Ciminelli*, *i.e.*, an alleged scheme to deprive the alleged (and oftentimes unspecified) victims of information to make a discretionary economic decision without money or property as its object.

10

The Government's exhibit list nonetheless suggests that the Government may present evidence or argue that the alleged fraud was aimed at as many as *fifty-two* unnamed "potential acquiring companies"[9]—including ███, ███, and ███[10]—that were never specifically identified in the Government's disclosure letter, and the vast majority of which were merely the subject of outreach or "pitch" efforts about the acquisition opportunity.[11] *See* Gov't Ltr. at 7, ECF 140.

To avoid running afoul of *Ciminelli* and Rules 401, 402 and 403, the Court should preclude the Government from arguing or offering evidence in support of now-invalid fraud theories that criminalize mere breaches or inducements of contract and specifically require the Government to show how any evidence they purport to offer as to each alleged misstatement is allegedly made with contemplated economic harm against Defendants, or otherwise preclude such evidence. In addition, in light of *Ciminelli*, the Court should give the jury limiting instructions that ensure it does not reach a verdict based on an improper theory of fraud without actual or contemplated economic harm aimed at depriving any alleged victim of the benefit of its bargain, and without proof of a misrepresentation aimed at the essential element of the specific transactions at issue. Defendants will propose such instructions with the filing of their requests to charge.

---

[9] *See* GX1271 (identifying 52 companies for potential outreach).
[10] *See, e.g.*, GXG532, GXG533, GXG563, GXG564 (███ Diligence Datapacks); GXG534, GXG535, GXG565, GXG566, GXG567 (███ Diligence Datapacks); GX1264-A, GX1265-A (███ Diligence Spreadsheets); GXG538 (███ and ███ Diligence Question Tracker).
[11] *See* GX1446 (███████████████; GX1268 (███ GX1260 (██████ GX1434, GX1272 (███ GX1449 (███ GX1279 (███

11

## CONCLUSION

For the reasons set forth above, this Court should exclude any evidence or argument based upon an invalid theory of fraud without proof of contemplated economic harm, *i.e.*, that potential buyers were allegedly deprived of potentially valuable economic information necessary to make discretionary economic decisions or were induced to acquire Frank through mere deception.

Dated:  January 13, 2025                    Respectfully submitted,

/s/ *Sean S. Buckley*
Sean S. Buckley
Jonathan D. Cogan
Alexandria E. Swette
Daisy Joo
**KOBRE & KIM LLP**
800 Third Ave
New York, New York 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220
Sean.Buckley@kobrekim.com
Jonathan.Cogan@kobrekim.com
Alexandria.Swette@kobrekim.com
Daisy.Joo@kobrekim.com

*Attorneys for Defendant Olivier Amar*