

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 24, 2025

**BY ECF AND EMAIL**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:     *United States v. Charlie Javice and Olivier Amar*, 23 Cr. 251 (AKH)

Dear Judge Hellerstein:

The Government writes to respectfully request the Court's intervention regarding the defendants' ongoing failure to provide disclosures for approximately three dozen defense witnesses identified to date. Despite being ordered to provide basic information about their witnesses weeks (if not months) ago, the defendants continue to disobey the Court's deadlines, leaving the Government largely in the dark about the defense witnesses and their anticipated testimony—some of whose identities are still unknown.

Instead, despite the Court's repeated admonitions to the contrary, Javice has still not provided supplemental expert reports to the Government, and has actually disclosed a new expert witness on the eve of trial, in violation of Court-ordered deadlines. Nor has Javice provided a single disclosure for approximately twenty-five fact witnesses on her witness list, refusing even to identify who some of these witnesses are, or what relevant testimony they intend to offer. Amar fares little better, having provided—like Javice—incomplete Rule 26.2 materials for two of his three defense witnesses in the form of heavily redacted and incomplete interview notes.

The Government therefore respectfully requests that the Court:

> (1) order the defendants to immediately provide any improperly withheld Rule 26.2 materials in their possession, including, as ordered by the Court, "attorneys' notes . . . or paralegal notes taken in interviewing potential witnesses for trial . . . including experts," (Jan. 23, 2025 Tr. 13:20-25);

> (2) to the extent the defendants claim that any of those Rule 26.2 materials are shielded by privilege or work product protections, produce for *in camera* review any improperly withheld Rule 26.2 materials for all defense witnesses;

(3) preclude Javice from calling Jeffrey Haas due to Javice's failure to timely notice his proposed expert testimony; and

(4) preclude Javice from offering expert testimony from Carla Holtze Cell and Konstantinos Psounis, for whom the defendant failed to provide supplemental expert reports by the Court-ordered deadline of February 9, 2025.

## I.    The Court Should Direct the Defendants to Comply with Its Prior Order Regarding Rule 26.2 Materials

Nearly a month ago, the Court granted the Government's motion to compel and ordered the defendants to produce, for all defense witnesses, consistent with the requirements of Rule 26.2, "not only statements signed or approved or adopted by the witness, but all notes of an interviewer of a witness . . ." (Jan. 23, 2025 Tr. 17:11-13). The Court also ordered that, for any materials over which the defendants intended to "claim . . . that the disclosure would be improper because the statement contains irrelevant matter," that the Court—not the defendants—would "examine the statements in camera and excise such matter as should not be disclosed." (*Id.* 17:22-25 (quoting the advisory notes to Rule 26.2)). The Court emphasized that, "with minor exceptions," the procedure was to be "identical for both prosecution and defense witnesses," and gave the defendants until January 31, 2025 to comply. (*Id.*). At no point did the Court state that the Court's order was limited to expert witnesses, which comprise less than a quarter of the defendants' voluminous witness list.

The Court's order was unmistakably clear. And the Government has complied, producing well over 1,500 pages of 3500 materials to date, including written communications with potential witnesses, including non-testifying witnesses, detailed notes of meetings with those witnesses, and any statements written or adopted by those witnesses (such as, for example, email correspondence or agreements between counsel for the Government and any witnesses). But the defendants have not complied with that order, by: (a) initially claiming that the Court's order was limited to expert witnesses only, the very opposite of the position they took at the January conference;[1] (b) for Javice, by continuing to withhold Rule 26.2 material for the approximately twenty-five fact witnesses identified on the defendant's witness list, in violation of the Court's order; and (c) as to both defendants, by producing dozens of pages of heavily redacted interview notes corresponding to meetings with just three of the defendants' six total experts where the vast majority of the text

---

[1] Javice's explanations for failing to provide these disclosures have shifted repeatedly in the past four weeks. As a starting point, Javice's assertion that the Court's order was limited to expert witnesses is particularly perplexing given not only the Court's clear directive, but defense counsel's efforts, during the status conference, to (incorrectly) argue the precise opposite: i.e., that Rule 26.2 is limited to lay witnesses, and that its disclosure requirements do not extend to expert witnesses. *See* Jan. 23, 2025 Tr. 15:7-9) ("Our position is Rule 26.2 for that very reason should not apply to expert witnesses . . ."). The Court, of course, rejected that argument. Javice herself seems to have made an about-face by subsequently producing, pursuant to Rule 26.2, written communications between Javice and one of her proposed fact witnesses on February 10, 2025— the only Rule 26.2 material Javice has provided for any fact witnesses to date.

is redacted. (*See* Exs. A1 and A2 (defendants' Rule 26.2 materials for Psounis, Meadow, and Cohen).) [2]

The Government attempted to meet and confer with counsel for both defendants in an effort to determine what, if any, additional materials the defendants are withholding. Counsel for both defendants refused to confirm: (a) whether they had met with any of their noticed witnesses; (b) whether they possess interview notes from any of those meetings; and (c) whether they possess other Rule 26.2 materials, including written correspondence with the proposed fact witnesses, or any statements written or adopted by those witnesses (such as, for example, email correspondence or retainer agreements between defense counsel and any witnesses). Indeed, Javice's counsel has even refused the basic request to confirm the identity of several of the unnamed witnesses still on the defendant's witness list (such as the unnamed "Frank students" and "LionTree representatives" currently listed on the defendant's witness list), or to provide a proffer regarding what relevant testimony, if any, they intend to provide.

The result is that, despite the Court's order, and with trial now underway, the Government remains in the dark about whether the defendants have interviewed most of their noticed witnesses, what those witnesses' prior statements have been, what their anticipated testimony would be, and even the *names* of certain of these witnesses. The defendants' actions are a flagrant violation of the Court's order and their disclosure obligations. The effect of the defendants' violations is to impede the Government from ascertaining the relevance and admissibility of the testimony of these purported dozens of defense witnesses, which further threatens to cause delay and disruption of the trial. Such willful failures to comply with court orders and to timely disclose Rule 26.2 materials can warrant preclusion of witnesses and other sanctions. In the event the defendants continue to fail to comply with the Court's orders, the Court should preclude those witnesses for whom the defendants have withheld Rule 26.2 materials from testifying at trial.

## II.    <u>Javice's Continuing Failure to Provide Timely Expert Notice and Reports</u>

At the February 4, 2025 final pre-trial conference, the Court repeatedly reprimanded both defendants for the insufficiency of their export disclosures, and directed both defendants to provide full expert reports to the Government by February 9, 2025:

| | |
|---|---|
| THE COURT: | Have you given their reports to the government? |
| JAVICE COUNSEL: | Your Honor, we have disclosed the subject matters of the testimony. The government has an issue with the extent of the disclosures. However— |
| THE COURT: | So do I. So do I. I laid down the rule that I follow Judge Rakoff in this. You have to give a full report, just like you do under Rule 26, of the Federal Rules of Civil Procedure. |

---

[2] Both defendants have also refused to confirm whether or not they are withholding Rule 26.2 material for these witnesses.

(Feb. 4, 2025 Tr. 70-71.)  The Court emphasized that both defendants were directed to replace their earlier disclosures and provide "a full supplement, a full report," by February 9, 2025, adding, "You'd better do that very quickly . . . I feel you need to, otherwise I'll preclude you on that ground alone."  (*Id.* at 71:7-19.)

Defendant Javice has treated the Court's orders as optional.  Following the conference, apart from notifying the Government that she now intended to call a third expert witness, for whom she failed to provide a comprehensive expert report, Javice failed to provide any additional disclosures or report for Dr. Psounis, and claimed that a comprehensive expert report identifying Ms. Holtze Cell's opinion testimony was not required because Ms. Holtze Cell intends to offer what Javice characterizes as "explanations" rather than opinion testimony.  As described below, Ms. Holtze Cell is in fact offering opinion testimony in the guise of purported "explanations" of the Government's evidence.  Javice has had multiple opportunities to cure these deficiencies.  With trial well underway, preclusion of all three of Javice's expert witnesses is now both warranted and necessary to avoid further prejudice to the Government.

## A.  The Court Should Preclude Javice's Newest Expert Notice as Untimely

The Court should preclude Javice from offering the testimony of a third expert, Jeffrey Haas, whom the defendant first noticed on February 7, 2025—i.e., just ten days before trial, and seven months after the expert notice deadline.  Professor Haas's notice is not only untimely, but insufficient, given that the defendant has failed to provide a corresponding expert report.  *See* Ex. B (Haas Report).  As with Javice's other deficient disclosures, Professor Haas's barebones three-page report does little more than identify several broadly defined areas of testimony relating to "the negotiation process related to a proposed merger and the terms found in a typical merger agreement" about which Professor Haas intends to testify. Ex. B at 1.

To the extent the disclosure provides any clue about Professor Haas's anticipated testimony, it does not provide the basis for any of Professor Haas's opinions, beyond a generic recitation that his testimony will be based on his "qualifications, experience, and education."  *Id.* The defendant's three-page report would not even pass muster under the prior version of Rule 16, and certainly fails to meet the amended Rule's requirement that the defendant specify both the expert's opinions and bases for them.  *United States v. Mrabet*, 703 F. Supp. 3d 442, 444 (S.D.N.Y. 2023) (concluding that "broad and generalized 'explanations'" are insufficient under Rule 16) (internal citations and quotations omitted); *United States v. Valle*, No. 12 Cr. 847 (PGG), 2013 WL 440687, at *5 (S.D.N.Y. Feb. 2, 2013), at *5 ("Merely identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's actual opinions.") (citing *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001)).

### B. Javice's Failure to Provide an Updated Expert Report for Dr. Psounis and Ms. Holtze Cell Warrants Preclusion

The Court, in no uncertain terms, directed the parties to supplement their deficient expert disclosures by February 9, 2025.[3]  Javice has not.   The result is that, with trial well underway, the Government still does not possess a single detailed expert report for any of Javice's three proposed expert witnesses.

Psounis:  To date, the Government has received no additional expert report for Dr. Psounis. On those grounds alone, preclusion is warranted.  While the Government's motion to preclude Dr. Psounis's testimony primarily focused on the relevance and impropriety of his anticipated testimony, the Government also noted that the disclosures provided by Javice to date failed to identify the bases for several of Dr. Psounis's opinions.  In particular, Dr. Psounis's "qualifications do not encompass any expertise suggesting that he is qualified to survey (and analyze) a seemingly random selection of companies and one municipality for how they define "user" for purposes of their websites or applications.  It appears that Dr. Psounis is merely regurgitating public information on the internet available to anyone who visits a website's "terms of use" webpage." Dkt. 205 at 11 n.2.

Holtze Cell:  As to Ms. Holtze Cell, on February 2, 2025, and then on February 7, 2025, the Government received a letter and then corresponding supplemental disclosure that once again fail to set forth Ms. Holtze Cell's anticipated testimony or the bases for that testimony, falling well short of the expert reports both defendants were ordered to furnish.  *See* Ex. C and D (Holtze Supplemental Disclosures).

In her supplemental disclosure, which provides none of Ms. Holtze Cell's anticipated opinion testimony or the bases for those opinions, Javice now claims that Ms. Holtze Cell "will not be called to offer opinions as to factual matters in this case." Ex. C at 1. Instead, Javice states that Ms. Holtze Cell will instead be called to offer what Javice characterizes as "explanations" about "the Government's exhibits or anticipated Government witness testimony," which the disclosure claims Ms. Holtze Cell has neither seen nor reviewed. *Id.* at 2. But the supplemental disclosures Javice has provided bely her claims.  Both contain textbook opinion testimony sanitized as so-called "explanations" of concepts like the definition of a website user, Ex. D at 1, various marketing methods used to attract viewers to a website, *id.* at 2, the data that services like Google Analytics collect on website viewers or visitors, *id.* at 3, other techniques that can be used to identify website viewers, *id.* at 4, and the purportedly common practice of using synthetic data or data augmentation, *id.* at 5.[4]

---

[3] The Government's position continues to be that Amar's proposed expert witnesses should be precluded on the basis that they intend to offer testimony that is inadmissible and well outside the bounds of permissible expert testimony.  However, Amar supplemented his expert reports on that date for each of his three proposed experts.

[4] Nor can Javice take refuge, as she attempts to, behind the fig-leaf that no expert report is required for Ms. Holtze Cell or Dr. Psounis because both experts only intend to offer so-called "non-opinion" testimony.  For one, in defending the admissibility of both experts' testimony in pre-trial motions, Javice claimed the precise opposite: that both expert witnesses, in fact, intend to offer

In claiming that no further disclosure is warranted because Ms. Holtze Cell and Dr. Psounis's testimony will take the form of "explanations," rather than "opinions," the result is two-fold. The first, and most obvious, is a disclosure that tells the Government very little about either expert's anticipated testimony. The second is that Javice intends poised to offer both experts' opinions about key concepts at issue in this case—such as the definition of a website user, the various uses of synthetic or augmented data, or tools like Google Analytics—not as opinion, but as fact. The first is a clear violation of the Rule 16's disclosure requirements. The second is a transparent effort to transform an expert witness into a fact witness. The Court should not countenance either in this case. As Judge Rakoff emphasized in *Mrabet*, and as the attached disclosures themselves make apparent, such insufficient disclosures are "a patent evasion of the Rule's requirements" and amount to little more than "shoddy noncompliance." *United States v. Mrabet*, 703 F. Supp. 3d 442, 444 (S.D.N.Y. 2023) (recommending that the parties "look at expert witness reports in civil cases, which typically consist of 20 or more pages of specific opinions and detailed statements of the reasons for those opinions and the methodologies employed").

Given the clear direction by the Court to provide supplemental expert reports to the Government by February 9th, Javice cannot profess ignorance of these requirements. Nor can she seek to reset the clock by noticing a third expert, months after the deadline for expert notice, whose disclosure is equally insufficient. The ongoing trial is a sophisticated, complex, weeks-long trial at which dozens of witnesses are anticipated to testify, and adequate advance notice of the defendants' potential witnesses is essential to the efficiency and fairness of those proceedings. The only appropriate remedy, at this late stage, is preclusion of defendant Javice's three experts for whom no adequate expert report has been provided: Dr. Psounis, Ms. Holtze Cell, and Professor Haas. *See United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017) (affirming lower court's preclusion of defense experts where disclosures were "not only . . . late, more importantly, they were plainly inadequate").[5]

\* \* \*

---

opinion testimony. *See, e.g.*, Dkt. 224 at 9 (noting that Ms. Holtze Cell's "opinions will directly address whether Defendant's actions regarding Frank's users were consistent with standard industry practices, or whether they reflected fraudulent intent or material misrepresentations, which is central to the government's allegations, and therefore should be admitted under Rule 702."). Moreover, the Second Circuit considered—and rejected—a similar claim in *Ulbricht*, precluding the offered testimony where the expert disclosures merely provided a list of "general and in some cases extremely broad topics . . . [that] were so vague that it is difficult to discern" their admissibility or relevance. *Ulbricht*, 858 F.3d at 115.

[5] If the Court permits Javice time to attempt to cure these deficiencies, the Government should be given a further opportunity to brief the admissibility of Professor Haas, Dr. Psounis, and Ms. Holtze Cell's anticipated testimony, which, as with the defendants' other expert witnesses, is both irrelevant and well outside the bounds of proper expert testimony. For example, Professor Haas apparently intends to offer the patently improper opinion that "it would be malpractice for [JP Morgan Chase's] attorneys not to include a specific representation and warranty covering the quantity and quality of customer data." Ex. B at 2-3.

The Government has in good faith attempted to resolve these issues with the defense, but those efforts have proven unfruitful. The Court's intervention is necessary in order to ensure compliance with applicable rules and a fair trial to all parties. Accordingly, the Court should:

(1) order the defendants to immediately provide any improperly withheld Rule 26.2 materials in their possession;

(2) order the defendants to produce for *in camera* review any improperly withheld Rule 26.2 materials the defendants claim are shielded by privilege or work product protections;

(3) preclude Javice from calling Jeffrey Haas due to her failure to timely notice his testimony; and

(4) preclude Javice from calling Carla Holtze Cell and Konstantinos Psounis, for whom the defendant failed to provide expert reports by the Court-ordered deadline of February 9, 2025.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By:  _____
Rushmi Bhaskaran
Nicholas W. Chiuchiolo
Micah F. Fergenson
Georgia V. Kostopoulos
Assistant United States Attorneys
212-637-2439 / -1247 / -2190 / -2212

Encl.