

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

March 17, 2025

**BY ECF AND EMAIL**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    ***United States v. Charlie Javice and Olivier Amar*, 23 Cr. 251 (AKH)**

Dear Judge Hellerstein:

    The Government respectfully writes to seek the admission of certain summary charts and evidence through the anticipated testimony of Rachel Danko, an investigative analyst at the United States Attorney's Office for the Southern District of New York. The proffered summary charts are largely identical in format, content, and substance to charts recently admitted by Judge Stein in the *Menendez* trial, and summarize voluminous records that have not yet been presented to the jury, including the defendants' phone and text records, which are collectively over two thousand pages long. *See United States v. Menendez*, S4 23 Cr. 490 (SHS), --- F. Supp. 3d ----, 2024 WL 5103452, at *40-45 (S.D.N.Y. Dec. 13, 2024) (affirming the use of timeline charts that placed a subset of text messages, phone calls, and emails in chronological order where "the evidence was undeniably voluminous" and were "clearly attribut[ed] . . . to the underlying evidence.").[1]

    ***First***, Ms. Danko will present a brief timeline of telephone calls, text messages, documents, and emails exchanged <u>between the defendants</u> during the two pivotal time periods during which the defendants' two-person conspiracy occurred—i.e., during the time periods in which Amar has claims he was "siloed" and "excluded" from key aspects of the defendants' fraud, but in fact the defendants were working in tandem to purchase, create, and transmit fraudulent user data.. *See* Tab 1 (the "Timeline Charts"). ***Second***, Ms. Danko will present several additional summary charts summarizing other voluminous records admitted in this case, including summaries of the defendants' phone records and metadata associated with certain files.[2] *See* Tabs 2, 3, and 4. ***Third***,

---

[1] The Government will provide, under separate cover, a copy of the proposed summary charts, as well as an excerpt of similar summary charts admitted in recent cases, including *Menendez*. *See* Tabs 1 through 5 (proposed summary charts); *see also* Tab 6 (sample admitted summary charts).

[2] As described in greater detail below, the Government produced substantially complete drafts of most of the proposed summary charts to defense counsel several weeks ago, and has since adopted edits sought by the defense. The Government understands that the defendants do not object to the accuracy of the summary charts.

through Ms. Danko's testimony, the Government will also seek to publish and present to the jury communications that have not yet been shown to the jury—i.e., the defendants' own text messages and emails.[3]

These summary charts serve to summarize voluminous records that cannot be conveniently examined in court as aids to the jury, pursuant to Federal Rule of Evidence 1006, in order to identify telephone calls, text messages, and emails exchanged between the defendants, who are the sole members of a two-member conspiracy.  In the absence of a cooperating witness, a summary witness is the only way this evidence can be presented to the jury in an understandable way.  These limited timelines, which merely place communications the jury has not yet seen in chronological order with phone records and text messages the jury has not yet been shown or heard testimony about, are plainly admissible and supported by extensive precedent, particularly given the thousands of pages of business records from which they are drawn.  *United States v. Ho*, 984 F.3d 191, 209-10 (2d Cir. 2020) (hundreds of pages of text messages, emails, and other documents "merited the use of summary charts in a complex fraud trial," citing cases); *cf., e.g.*, *United States v. Blackwood*, 366 F. App'x 207, 212 (2d. Cir. 2010) (affirming admission of charts concerning "over 100 telephone calls," explaining that the charts "summarized information that otherwise would have been difficult for the jury to synthesize and evaluate, thus falling well within the purview of Rule 1006").  The Court should admit them in their entirety, and permit Ms. Danko to provide limited testimony regarding these summaries.

---

[3] The Government understands that both defendants intend to offer similar summary testimony and evidence in their respective cases-in-chief.

## I.    The Expected Testimony and Summary Charts

Ms. Danko is expected to testify regarding the following categories of summary charts, which are appended to this letter.

| Tab | Title | Exhibits | Description | Underlying Records |
|---|---|---|---|---|
| 1 | Timeline Charts | GX 2752 GX 2754 GX 2756 GX 2758 GX 2759 GX 2762 | A timeline of the defendants' calls, texts, and emails between: (a) August 1, 2021 and August 5, 2021, the time period during which the defendants conspired to both purchase third-party data from third-party vendors, as well as to create fake data with the assistance of a data scientist; and (b) between January 6, 2022 and February 11, 2022, during which the defendants conspired to disguise the fake data and third-party data they had purchased in August 2021 as Frank's own user data, and then transmitted that data to JPMC in response to the bank's request for Frank's customer lists. | Over 2,500 pages of text messages, phone records, and emails. |
| 2 | The Call Record Charts | GX 2751 GX 2753 GX 2755 GX 2757 | A timeline summarizing the defendants' calls with each other, as well as other trial witnesses, between August 1 and August 4, 2021. | Approximately 1,800 pages of phone records. |
| 3 | Call Frequency Charts | GX 2760 | A timeline summarizing the frequency of phone calls between the defendants between July 25, 2021 and August 14, 2021. | Approximately 1,800 pages of phone records |
| 4 | Glazer Call Frequency Charts | GX 2761 | A timeline summarizing the frequency of phone calls between the defendants and Matt Glazer between July 25, 2021 and August 14, 2021. | Approximately 1,800 pages of phone records |
| 5 | Dataroom Spreadsheet 3.1.4 | GX 2750 | A timeline summarizing metadata reflecting the defendants' respective viewing and editing of 3.1.4—the fraudulent user breakdown document claiming that Frank had 4.25m users who had started a FAFSA application—while on a telephone call together on June 24, 2021. | Approximately 950 pages of metadata records, phone records, and emails |

The Government has engaged with defense counsel for several weeks in an effort to facilitate the efficient and uninterrupted presentation of Ms. Danko's testimony, and thereby to respect the jury's time. In those discussions, defense counsel represented that both defendants

intend to offer similar summary testimony and charts during their respective case-in-chiefs, although the defendants have yet to produce any summary charts to the Government, or preview what form these summary charts will take. Nevertheless, the Government produced substantially complete drafts of most of the proposed summary charts to defense counsel several weeks ago, after which, in addition to supplementing the Government's proposed summary charts, the Government solicited objections from the defendants regarding the summary charts and the exhibits the Government intends to introduce in connection with Ms. Danko's testimony. The Government then amended the proposed summary charts in response to specific factual corrections and objections from the defendants. The defendants' sole objection is to the mode in which this evidence should be presented to the jury. For the reasons set forth below, the Government's proposed summary charts should be admitted.

## II.    Discussion

### A.  Legal Standard

The Second Circuit has "regularly affirmed" the use of summary charts "to draw the jurors' attention to particular evidence culled from a voluminous set of records." *United States v. Yousef*, 327 F.3d 56, 158 (2d Cir. 2003). Summary charts that merely take the form of chronological summaries of communications are regularly admitted under the law of the Second Circuit. *See, e.g.*, *United States v. Ho*, 984 F.3d 191, 209-10 (2d Cir. 2020) (hundreds of pages of text messages, emails, and other documents "merited the use of summary charts in a complex fraud trial," citing cases); *United States v. Miller*, 954 F.3d 551, 565 (2d Cir. 2020) (affirming admission of summary chart of "hundreds of calls and text messages" and explaining that "this information would have been difficult for the jury to synthesize and evaluate without the aid of a summary"); *United States v. Blackwood*, 366 F. App'x 207, 212 (2d Cir. 2010) (affirming admission of "government's summary charts [which] set forth detailed information concerning well over 100 telephone calls spanning three days between four individuals"); *see also United States v. Yousef*, 327 F.3d 56, 158 (2d Cir. 2003) (stating the Second Circuit has "regularly affirmed" the use of summary charts "to draw the jurors' attention to particular evidence culled from a voluminous set of records"); *United States v. Lasko*, 146 F. App'x 530, 532 (2d Cir. 2005) ("The use of charts summarizing evidence is a common procedure whose use we have repeatedly approved." (internal quotation marks omitted)).

### B.  The Court Should Admit the Government's Summary Charts

As set forth below, the proposed summary charts that the Government intends to offer in connection with Ms. Danko's testimony are admissible and supported by a long line of precedent holding that such charts are useful to the jury, save time, and are permitted by Federal Rule of Evidence 1006. The contemplated summary charts are virtually indistinguishable from timelines that have routinely been admitted in this district, samples of which are appended to this motion. *See, e.g.*, *United States v. Percoco*, No. 16 Cr. 776 (VEC) (GXs 1501, 1502, 1703, 1704, 1706, 1707, 1708); *United States v. Avenatti*, No. 19 Cr. 374 (JMF) (GX 804); *United States v. Ray*, No. 20 Cr. 110 (LJL) (GX 1401); *United States v. Shea*, No. 20 Cr. 412 (AT) (GX 903-A); *United States v. Milton*, No. 21 Cr. 478 (ER) (GX 1005, 1007). Indeed, timeline charts presented in a nearly indistinguishable format have been admitted in other cases in this district. *See, e.g.*, *United*

*States v. Skelos*, No. 15 Cr. 317 (KMW) (GX 3303); *United States v. Calk*, No. 19 Cr. 366 (LGS) (GX 2109); *United States v. Shea*, No. 20 Cr. 412 (AT) (GX 904); *United States v. Wynder*, No. 20 Cr. 470 (PKC) (GX 2209); *United States v. Milton*, No. 21 Cr. 478 (ER) (GX 1006); *United States v. Rangott*, No. 23 Cr. 4 (JHR) (GX 1306).

First, none of the proposed summary charts duplicate evidence or testimony already presented to the jury.  This distinguishes the proposed summary charts from other cases, where this Court has limited the use of summary charts when those charts were cumulative of evidence or testimony already presented to the jury.  The defendants are charged with participating in a two-person conspiracy.  The proposed charts present the jury with <u>the defendants' own communications between each other</u>—a core piece of the Government's case against the defendants.  This evidence is essential given Amar's claim, repeated throughout the course of the Government's case-in-chief, that he was not present for or involved in key events that form the charged conspiracy.  Mindful of the Court's guidance about limiting the length of documents shown to the jury, the summary charts take thousands of pages of phone call records, emails, and text messages between the defendants, and synthesize them into a handful of chronological timelines surrounding key events in the charged conspiracy.  This is the clear purpose of Rule 1006.

By way of example, the jury has heard extensive testimony about Ms. Javice's involvement in the data validation exercise proposed by JPMC in August 2021.  What the jury has not heard—because no percipient witness could testify to it apart from the defendants—is that, shortly after JPMC emailed Javice the parameters for the data validation (GX 1070), Javice texted Amar to ask if he had "time to chat this am.  Need to talk about data pull and strategy."  Javice then attempted to call Amar twice, before texting him again, "Ur gonna need to block off ur day."  Amar and Javice then have a twenty-minute phone call.  Immediately after the conclusion of the call, Javice sends Amar an email containing the parameters for the data validation exercise provided to her by JPMC.  The Government anticipates that all of these communications will be admitted via a stipulation between the parties.  This timeline—which would take thousands of pages of documents to stitch together for the jury, and would require the jury to parse phone records that do not identify the caller, recipient, or time zone of the call—is instead summarized in a single page of a summary chart, an excerpt of which is provided below.  (*See* GX 2752).  The proposed summary chart will aid the jury, conserve time and resources, and present critical evidence that the jury has not yet seen.

| 08:59 AM | Wims Morris | Javice | Wims Morris calls Javice (18 minutes, 26 seconds). | GX902, Trial Tr. 621:4-6. |
|---|---|---|---|---|
| 09:05 AM | Wims Morris | Javice | Email from Wims Morris to Javice, with subject line: "Finland - key data questions." | GX1070 |
| 09:38 AM | Javice | Wims Morris | Javice calls Wims Morris (2 seconds). | GX902, Trial Tr. 621:4-6. |
| 09:39 AM | Wims Morris | Javice | Wims Morris calls Javice (8 minutes, 35 seconds). | GX902, Trial Tr. 621:4-6. |
| 09:51 AM | Javice | Amar | Hey - have time to chat this am | GX801-2 |
| 09:52 AM | Javice | Amar | Need to talk about a data pull and strategy | GX801-2 |
| 09:54 AM | | | Missed Voice Call between Javice and Amar. | GX801-2 |
| 10:03 AM | Javice | Amar | Javice calls Amar (1 second). | GX902, 903, 925 |
| 10:06 AM | Javice | Amar | Ur gonna need to block off ur day. And good news on the offers | GX801-2 |
| 10:12 AM | Amar | Javice | Amar calls Javice (20 minutes, 38 seconds) | GX902, 903, 925 |
| 10:23 AM | Javice | Amar | Javice forwards Amar an email from Wims Morris, with subject line, "Fwd: Finland - key data questions." | GX1147 |
| 10:38 AM | Javice | Amar | Javice calls Amar (4 minutes, 13 seconds). | GX902, 903, 925 |
| 10:52 AM | Amar | Javice | Amar calls Javice (unanswered). | GX902, 903, 925 |
| 10:52 AM | Javice | Amar | Javice calls Amar (3 minutes, 21 seconds). | GX902, 903, 925 |

As another example, on August 3, 2021, Javice contacted a data scientist, Adam Kapelner, to generate a fake list of 4.25 million Frank users. Dr. Kapelner testified that he only met Amar months after concluding his work on the synthetic data list. However, what the jury has not yet heard is that, a minute after concluding her introductory call with Dr. Kapelner, Javice immediately called Amar, who texted her during her call with Dr. Kapelner to flag that Amar was waiting to hear back from ASL "with numbers and a sample." (*See* GX 2754).

| 8:46 AM | Javice | Amar | Javice calls Amar (3 seconds). | GX902, 903, 925 |
|---|---|---|---|---|
| 8:46 AM | Javice | Amar | Where are we with ASL? | GX801-6 |
| 8:48 AM | Javice | Amar | Michael signed off | GX801-6 |
| 8:55 AM | Javice | Vovor | Javice calls Vovor (3 seconds). | GX902, 903, Trial Tr. 1692:9-14. |
| 8:56 AM | Javice | Amar & Vovor | hey! Just wanted to update you guys - the files in s3 (app v4 and responses and qualtrics) are the limited down, clean files based on the current field requests, thanks again for your help with this. i'll be working on the analysis later today now that I have a better sense of the data. | GX802-38 |
| 8:59 AM | Javice | Amar & Vovor | im working on continuing to narrow down the request to not include PII and just the unique ID. we'll see where i land but legally we are able to provide all this info during diligence. | GX802-38 |
| 9:00 AM | Javice | Kapelner | Javice calls Adam Kapelner (11 minutes, 12 seconds). | GX902, 1565 |
| 9:05 AM | Amar | Javice | Amar calls Javice (0 seconds). | GX902, 903, 925 |
| 9:07 AM | Amar | Javice | Good morning. Same place as yesterday.. they're getting back to me today with numbers and a sample | GX801-6 |
| 9:13 AM | Javice | Amar | Javice calls Amar (7 minutes, 23 seconds). | GX902, 903, 925 |

These communications and call records are powerful evidence of the defendants' conspiracy, in which the defendants are the sole members. No testimony has been elicited about any of these defendant-to-defendant communications. Nor can it be, given that the defendants are the only participants. Precluding these summary charts, as the defense seeks to do, would effectively preclude the Government from presenting this essential evidence prior to the conclusion of the Government's case-in-chief later this week.

Relying on the Court's recent ruling in *United States v. Hwang*, the defendants have argued in correspondence with the Government that, because the proposed summary charts are misleading and prejudicial. *See* Aug. 12, 2024, Tr. at 4368:20-4369:20, *United States v. Hwang*, No. 22 Cr. 240, at Dkt No. 301. In *Hwang*, the Court precluded the use of bar charts designed to summarize the frequency of calls between the defendant and a cooperating witness who had testified earlier in the trial, at times about the calls featured in the Government's proposed summary charts. *Id.* The proposed summary charts offered by the Government here do not use such bar charts.

Here, the defendants' reliance on the Court's ruling in *Hwang* is misplaced. First, and unlike the charts this Court precluded in *Hwang*, the Timeline Charts, as well as the accompanying summaries of the defendants' telephone calls, are nothing more than timelines of the defendants' text messages, emails, metadata logs, and telephone calls—the majority of which the parties have agreed to admit into evidence via stipulation, and which are identical in form, substance, and content to similar timeline charts routinely admitted in this district. *See* Tab 6 (sample summary charts admitted in *Ho*, *Menendez*, and *Parnas*). These timelines accurately summarize the voluminous records on which they are based, and do little more than place these lengthy records in chronological order for the jury. Nor will any inference be elicited about the content of these calls, apart from identifying when (and between whom) the phone calls took place. A second important distinction is that, unlike in *Hwang*, where the Court viewed the summarized phone records as cumulative of evidence already presented to the jury because one of the participants to those calls had already testified, these records and events have not yet been presented to the jury. They cannot be, because the defendants were the sole participants. The two-member conspiracy with which the defendants have been charged, by its very nature, relies extensively on evidence about which no percipient witness can testify. It is precisely for this reason that the summary charts the Government proposes are essential to presenting the Government's proof against both defendants in an orderly and efficient manner.

The defendants similarly argue, also relying on *Hwang*, that the two summary charts that calculate the frequency of telephone calls between the defendants are similarly misleading and improper. *See* GX 2760 and 2761. But Amar has himself repeatedly attempted to argue that Javice siloed him from the due diligence process, including the data validation exercise conducted in early August 2021. It is highly probative for the jury to hear that, during the same time period in which Amar argues that he was excluded from key aspects of due diligence, the defendants' phone records indicate that they had nearly one hundred telephone calls, including dozens of phone calls during the five-day period in which the data validation exercise took place, and during which the defendants were frantically attempting to purchase (and ultimately, commission) third-party data.[4]

---

[4] As for GX 2762, this summary is critically important because Amar—through his counsel—has represented that he intends to offer dozens of documents during his case-in-chief regarding Frank in-house counsel Matthew Glazer's role Frank, as well as Glazer's communications with Javice during due diligence. In discussions with Amar's counsel, the Government offered to withdraw GX 2762 if Amar agreed not to offer these documents, which are plainly inadmissible. Amar, through his counsel, has not responded to the Government's request, and plainly intends to make Glazer's role a feature of his defense—despite Amar's failure to notice any advice of counsel defense. In light of Amar's apparent intent to claim that he and Glazer were similarly situated or

The purpose of the summary charts is to aid the jury in reviewing and understanding this voluminous evidence, without leaving them to sort through thousands of pages of call detail records and cellphone data on their own.  Rule 1006 and Second Circuit precedent squarely support the usefulness and admissibility of such summary charts.

Finally, and as the Government understands it, the defendants' remaining complaints with the form of the summary charts all largely reduce to the complaint that these charts do not include even more material that the defendants believe should be included.  But the law is clear that this is not required.  *See, e.g.*, *Linde*, 922 F. Supp. 2d at 333 ("A summary may include only evidence favoring one party, so long as the witness does not represent to the jury that he is summarizing all the evidence in the case."); *Parnas*, 2022 WL 669869, at *7; *Gentile*, 2024 WL 3046193, at *3.  All that was required is that each chart was "what it purports to be."  *Lemire*, 720 F.2d at 1349.  In correspondence with the Government, the defendants have failed to identify any way in which these charts do not accurately reflect what they purport to show.

Because the Government's summary charts accurately reflect what they purport to reflect, they serve the salutary purpose of facilitating the efficient presentation of indisputably voluminous evidence.  *See, e.g.*, *Blackwood*, 366 F. App'x at 212 ("[T]he summaries were helpful to the jury in its evaluation of the evidence because they showed the pattern and timing of telephone calls among the co-conspirators on the three crucial days of the charged conspiracy.").  If the summary charts were excluded, the Government would be left to read voluminous documents themselves into the record, or—even worse—synthesize lengthy call records, emails, and text messages for the first time in the Government's summation. The proposed summary charts summarize a series of relevant events, drawn from phone records, text messages, emails, and metadata records of documents the defendants created together in connection with the charged conspiracy.  There is no requirement for jurors to themselves locate these data points from the totality of the admitted evidence, pull out the relevant pieces, then line them up chronologically so that they can understand such a sequence of events.  That kind of laborious, time-consuming task is exactly why Federal Rule of Evidence 1006, allowing the admission of summary charts, exists.  If the Government is not permitted to use such summary charts, the Government expects that it will have to call additional custodian witnesses and present more testimony to convey the same information to the jury.  That process would unnecessarily lengthen the trial and create more work for the jury.  It also prejudices the Government in a case where both defendants have claimed that they also intend to offer their own summary witnesses and charts.  Such a laborious organizational task is precisely what Rule 1006 is designed to avoid.[5]

had similarly limited information about the conspiracy, the Government is entitled to offer GX 2762, which squarely rebuts Amar's claims.

[5] The defendants' plainly preferred alternative would, of course, be to contrive some means of precluding all such documentary proof, but this absurd result—which would preclude proof of the defendants' two-member conspiracy about which no percipient witness was available, no matter how strong the documentary evidence—is not the law.

**III.     Conclusion**

For the reasons set forth above, the Court should admit the Government's proposed summary charts in their entirety.

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By:     ____/s/_____
Rushmi Bhaskaran
Nicholas W. Chiuchiolo
Micah F. Fergenson
Georgia V. Kostopoulos
Assistant United States Attorneys
212-637-2439 / -1247 / -2190 / -2212