# MINTZ LEVIN

One Financial Center
Boston, MA 02111
617-542-6000
617-542-2241 fax
www.mintz.com

**Eóin P. Beirne** | 617 348 1707 | ebeirne@mintz.com

March 23, 2025

**VIA ECF**
The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

**RE:**   *United States v. Charlie Javice and Olivier Amar, 23 Cr. 251 (AKH)*

Dear Judge Hellerstein:

On behalf of Defendant Charlie Javice, we respectfully write in opposition to Defendant Olivier Amar's March 20, 2025 request to introduce four summary charts through a summary witness, Jesse Candel. *See* Exhibits 1 through 4. Each proposed summary chart attempts to depict, through bar graphs, the relative volume of email communications involving Ms. Javice, Mr. Amar, and Matt Glazer with one of the entities involved in the sale of Frank, i.e., LionTree, Capital One, or JP Morgan Chase ("JPMC"), over a specified time frame.

For the reasons set forth below, the Court should not permit Mr. Amar to show these charts to the jury because they are irrelevant, misleading, and inappropriately prejudicial. None of Mr. Amar's proposed summary charts are admissible and all should be excluded under Federal Rules of Evidence 1006, 401, and 403.

## I. The Charts Should Be Precluded Because the Underlying Materials Are Not Admissible

Mr. Amar's proposed summary charts represent a barely disguised effort to circumvent the Rules of Evidence. The documents that the charts purport to summarize – email communications – are inadmissible hearsay as offered by Mr. Amar. That evidence does not become admissible simply because Mr. Amar wishes to offer it through a summary chart.

Likewise, a summary chart based on inadmissible evidence is not itself admissible or an appropriate aid to witness testimony under Rule 1006. Rather, a party offering a summary chart into evidence must "lay a proper foundation for admissibility of the underlying materials." *Thompson v. Spota*, 2022 WL 17253464, at *12 (E.D.N.Y. Nov. 28, 2022). For multiple reasons, Mr. Amar cannot lay that foundation with respect to the email communications ostensibly tallied in his proposed charts. First, the underlying communications – emails produced by LionTree, Capital One, and JPMC – have not been authenticated in this case and cannot be authenticated by Mr. Candel. Second, the communications are hearsay as offered by Mr. Amar. And third, they are not independently relevant. The Court should reject Mr. Amar's attempt to use Rule 1006 as a back door to introduce inadmissible hearsay by excluding the proposed summary charts and any testimony based on the charts.

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

March 23, 2025
Page 2

## II.    The Charts Should Be Precluded Because They Are Not Accurate

Under Federal Rule of Evidence 1006, "a court may admit a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court so long as the underlying records are made available to the adverse party," and the offering party has laid a proper foundation for admissibility of the underlying materials and shown "that the summary is accurate." *Gem Fin. Serv., Inc. v. City of New York*, 2023 WL 4850523, at *12 (E.D.N.Y. July 28, 2023) (internal citations omitted) (cleaned up). "[A] party offering evidence under Rule 1006 must provide a sufficient explanation to show how the numbers on the exhibit were derived from the underlying evidence." *In re Pretty Girl, Inc.,* No. 14-11979, 2022 WL 1051098, at *3 (Bankr. S.D.N.Y. Apr. 7, 2022) (quoting *Scott v. Rosenthal*, 53 F. App'x. 137, 141 (2d Cir. 2002).

As an initial matter, the summary charts are inaccurate representations of the total volume of emails. Mr. Amar has represented that the summary charts depict "the volume of emails" between certain individuals and entities contained in a production database containing over 800,000 files. In an attempt to ascertain the accuracy of the summary charts, counsel for Ms. Javice has undertaken a preliminary review of email communications among the parties in the production database and has identified documents that Mr. Amar failed to include in the charts.

Exhibit 2 (Emails with Capital One: May 13, 2021 – July 14, 2021) claims that Mr. Amar was only on eight emails with Capital One. Yet, counsel for Ms. Javice identified at least two additional unique documents between Mr. Amar and Capital One between May 13, 2021 – July 14, 2021. *See* USAO_Rel_000100212 & USAO_Rel_000947909, attached hereto as Exhibit 5. Exhibit 1 (Emails with LionTree: January 1, 2021 – August 8, 2021) claims that Mr. Amar was on 230 emails with LionTree, but upon preliminary review, counsel for Ms. Javice has identified at least five additional unique documents between Mr. Amar and LionTree between the chart's designated dates. *See* USAO_Rel_000100212; USAO_Rel_000947909; USAO_Rel_000908718; USAO_Rel_000087014 & USAO_Rel_000226499, attached hereto as Exhibit 6. These inaccuracies were discovered during just a preliminary review and leaves open the question of how many more inaccuracies the charts contain.

Accordingly, representing that the documents contained in the summary charts are the total volume of emails is inaccurate and misleading and the charts should be precluded on this ground alone.

## III.    The Court Should Preclude the Use of the Summary Charts Because They Are Not Relevant

The summary charts should also be precluded because they are not relevant evidence. The volume of communications sent or received by Ms. Javice, Mr. Glazer, or Mr. Amar has no probative value in this action and invites the jury to make the inappropriate inference that because Ms. Javice had more communications, she is more likely to have committed fraud than Mr. Amar. The summary charts impermissibly suggest that email communications alone are evidence of something improper or irregular. However, the fact that Mr. Amar was on fewer email communications than Ms. Javice is in no way probative of Ms. Javice's alleged wrongdoing or Mr. Amar's purported innocence.

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

March 23, 2025
Page 3

The summary charts distort Mr. Amar's involvement with the three entities during the time periods. The eight emails between Mr. Amar and Capital One displayed in Exhibit 2 are Zoom meeting invitations on key diligence topics. Thus, the eight emails represent that Mr. Amar participated in key diligence meetings and decisionmaking.

\*\*\*

For the foregoing reasons, Ms. Javice requests that the Court preclude the proposed summary charts attached hereto as Exhibits 1 through 4 and any testimony based on the charts.

Respectfully submitted,

Eóin P. Beirne
Counsel for Ms. Javice

Cc:    All Counsel of Record