# KOBRE & KIM

800 Third Avenue
New York, New York 10022
www.kobrekim.com
Tel +1 212 488 1200

October 23, 2025

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

  Re: *United States v. Olivier Amar*, 23 Cr. 251 (AKH)

Dear Judge Hellerstein:

  We write on behalf of Olivier Amar in support of Charlie Javice's motion to reconsider the Court's September 30, 2025 restitution order (the "Order") under the Mandatory Victims Restitution Act (the "MVRA"), which requires Defendants to reimburse JP Morgan for legal fees advanced to pay for their defenses. ECF No. 438 at 2–4 (Motion for Reconsideration); *see also* ECF No. 434 (Order). For the reasons set forth below, along with those set forth in Ms. Javice's motion and in Mr. Amar's sentencing submission, Defendants' advanced legal fees are not recoverable and should not have been included in the Order. Separately, in light of the Court's decision to impose joint and several liability in Ms. Javice's Order, we write to request that, if the Court determines that Mr. Amar must pay some amount of restitution, then it should apportion the amount to account for Mr. Amar's lesser contribution to JP Morgan's alleged loss.

### A. The MVRA Does Not Permit Restitution for Defendants' Advanced Legal Fees

  The Government's sweeping theory as to why Defendants' legal fees are recoverable—that but-for the fraud, JP Morgan would not have paid the fees, *see* ECF No. 445 at 2 n.1—is contrary to binding precedent and violates basic principles of statutory construction. The Government invites the Court to issue a first-of-its-kind restitution order that encompasses ***all advanced legal fees across multiple matters***, which the Bank paid pursuant to contractual obligations that existed ***years before*** any alleged fraud. These fees include not only those advanced to Defendants in the criminal action, but also those advanced to Defendants in connection with JP Morgan's internal investigation, JP

**Americas** (New York, Delaware, Miami, San Francisco, São Paulo, Washington DC)
**APAC** (Hong Kong, Seoul, Shanghai), **Caribbean** (BVI, Cayman Islands), **EMEA** (Cyprus, Dubai, London, Tel Aviv)

Kobre & Kim refers to Kobre & Kim llp, a New York Limited Liability Partnership.

Hon. Alvin K. Hellerstein, U.S.D.J.
October 23, 2025
Page 2

Morgan's private civil lawsuit, JP Morgan's advancement proceedings, and the SEC's parallel action.[1] The Government seems to suggest that any and all losses are compensable so long as Defendants' offense is a but-for cause of the losses, but that is not how the MVRA works.[2]

First, the Government overlooks that it must prove both but-for causation and proximate causation under the MVRA, *see United States v. Goodrich*, 12 F.4th 219, 229 (2d Cir. 2021) (collecting cases), yet it has proven neither.[3] Second, "the requirements of direct and proximate causation are necessary conditions for restitution under the MVRA—not sufficient ones." *United States v. Maynard*, 743 F.3d 374, 379 (2d Cir. 2014) ("If Congress intended to include all harms directly and proximately caused by a defendant's offense, it could have done so with wording more simple and categorical." (internal citation omitted)). As the MVRA makes clear, even if there is but-for and proximate causation, "the harm must also come within one of the categories enumerated in § 3663A(b)." *Id.* at 379. The Government's but-for-only theory of restitution fails on both fronts.

To begin, the Government has not even proven but-for causation, let alone proximate causation. Defendants' indemnification rights stem from Frank's bylaws and Defendants' employment agreements—both of which were executed ***years before*** JP Morgan acquired the company. *See* Complaint at 10–11, *Amar v. JP Morgan Chase Bank, N.A.*, No. 23-cv-0040 (KSJM) (Del. Ch. Jan. 13, 2023) (Frank bylaws and employment

---

[1] *See* ECF No. 433 at Ex. A (JP Morgan's Restitution Calculations) at Invoice No. 465314 (covering legal expenses related to JP Morgan's internal investigation); Invoice No. 465456 (covering legal expenses related to advancement proceedings); Invoice No. 466861 (covering legal expenses related to JP Morgan's private civil lawsuit); Invoice No. 468048 (covering legal expenses related to the SEC's parallel action). The Restitution Calculations provided by JP Morgan were submitted under seal as exhibits to the Government's sentencing submission because these documents contain sensitive, non-public business information. For the Court's convenience, Mr. Amar will provide an unredacted copy of this document to the Court in connection with this letter.

[2] The Government's reliance on *United States v. Sullivan*, ECF No. 445 at 2, is misplaced. In that case, the Second Circuit left open, in dicta, the possibility that restitution for certain legal fees "might also be available where a defendant obtained his position with the victim company, and thus coverage under its indemnification provisions, due to the offense conduct." *United States v. Sullivan*, 118 F.4th 170, 233 n.42 (2d Cir. 2024) ("express[ing] no view on the proper resolution of such issues" and noting "that our holding in this case does not dictate a result in those situations"). This is not that case. And while the Government ignores the MVRA's causation requirements, *Sullivan* reinforces them. In this regard, *Sullivan* does not salvage the Government's flawed restitution theory, but only further dooms it.

[3] To say one event proximately caused another means that: (i) the former event actually caused the latter—*i.e.*, direct or "but-for" causation; and (ii) it is a proximate cause—*i.e.*, it is not too indirect or remote. *See Paroline v. United States*, 572 U.S. 434, 444–45 (2014). The MVRA's proximate causation requirement limits restitution to those cases where a defendant's conduct bears "a sufficiently close connection to the conduct at issue." *Goodrich*, 12 F.4th at 229 (quoting *Roberts v. United States*, 572 U.S. 639, 645 (2014)). The Second Circuit views the MVRA's proximate cause requirement as a "tool to both limit a person's responsibility for the consequences of that person's own acts and to promote efficiency in the sentencing process." *United States v. Calderon*, 944 F.3d 72, 95 (2d Cir. 2019) (internal modifications and quotations omitted).

2

Hon. Alvin K. Hellerstein, U.S.D.J.
October 23, 2025
Page 3

agreements). Defendants' "rights to advancement" exist outside of and predate the allegedly fraudulently induced merger. *See id.*, May 8, 2023 Hr'g Tr. 26:11–13 (THE COURT: "[Defendants] have rights to advancement before the merger under Frank's bylaws."). Simply put, the alleged fraud in connection with a merger in 2021 cannot have directly—let alone proximately—caused Defendants to be indemnified in 2017–18, and so the advanced legal fees are not recoverable as restitution. *See Sullivan*, 118 F.4th at 232 (rejecting restitution order under "loss of property" theory pursuant to 18 U.S.C. § 3663A(b)(1) in part because "[company's] Bylaws contained a preexisting clause requiring [it] to indemnify its officers and directors that was adopted *before* Defendants stole money to pay for trips"); *see also Calderon*, 944 F.3d at 97 (rejecting restitution orders in part because fraud occurred "*after*" banks' decision to loan the money that Government sought to recoup).[4]

What is more, the Government provides no legitimate statutory basis for its restitution theory. The Government's argument that "indemnified defense legal fees are compensable under 18 U.S.C. § 3663A(a)(2)," ECF No. 445 at 2, is dubious. That provision simply defines who may qualify as a "victim" for purposes of the MVRA. It does not delineate the categories of recoverable losses. Only § 3663A(b) provides those categories.

Even if the Government's theory were grounded in § 3663A(b)(1), which provides for the type of restitution available in cases of damaged or lost property, it fails as a matter of statutory interpretation. Under the Government's theory, any legal expenses paid by JP Morgan that were incurred in connection with the merger could be construed as recoverable lost property pursuant to § 3663A(b)(1). Such an interpretation would render meaningless the MVRA's other provisions limiting the scope of victim recovery, including § 3663A(b)(4), which narrowly defines recoverable "other expenses," including legal fees incurred participating "in the investigation or prosecution of the offense or attendance at proceedings related to the offense." *Id.* An established body of case law exists on the contours of § 3663A(b)(4) and makes clear that victims' legal fees are recoverable only when (i) they are incurred in response to the Government's request to advance its case, and (ii) the relevant "investigation" and "proceedings" are government investigations and criminal proceedings—not private or civil ones. *See, e.g.*, *United States v. Afriyie*, 27 F.4th

---

[4] Further, JP Morgan's indemnification of Defendants is a result of its own investment decisions in the context of the acquisition. After due diligence involving over 300 employees, the Bank made an independent assessment as to the advisability of acquiring Defendants' preexisting agreements without modification, and "the advisability of *that* bet [was] completely unrelated to the risks concealed by the Defendants' [alleged] fraud." *Calderon*, 944 F.3d at 97. Mr. Amar was not a party to the Merger Agreement, nor was he involved in negotiating its terms. The evidence shows he did not even see the Agreement until after it was signed. *See* GX 801-22. Mr. Amar also was never charged with nor convicted of fraudulently inducing JP Morgan to pay his legal fees. *See United States v. Rankin*, No. 18-cr-272 (JAM), 2023 WL 7403638, at *7 (D. Conn. Nov. 9, 2023) (rejecting lost property theory of restitution for legal fees in part on this basis), *aff'd sub nom. United States v. Sullivan*, 118 F.4th 170 (2d Cir. 2024).

3

Hon. Alvin K. Hellerstein, U.S.D.J.
October 23, 2025
Page 4

161, 173 (2d Cir. 2022).[5] That is the opposite of the situation here, where the legal fees at issue were incurred to defend against—not advance—the Government's investigations and include work related to a private internal investigation and private civil suits. In this regard, the Government's restitution theory makes no sense and invites an interpretation of the MVRA that would render meaningless the statute's express limitations on recoverable legal fees.[6]

The Supreme Court's analysis in *Lagos v. United States*, in which it narrowly construed the meaning of § 3663A(b)(4), is instructive:

> Congress has enacted many different restitution statutes with differing language, governing different circumstances. Some of those statutes specifically require restitution for the 'full amount of the victim's losses,' defined to include 'any . . . losses suffered by the victim as a proximate result of the offense.' *See* 18 U.S.C. §§ 2248(b), 2259(b), 2264(b), 2327(b). The [MVRA], however, contains no such language; it specifically lists the kinds of losses and expenses that it covers. Moreover, in at least one other statute Congress has expressly provided for restitution of 'the value of the time reasonably spent by the victim in an attempt to remediate the intended or actual harm incurred by the victim from the offense.' § 3663(b)(6). Again the [MVRA] has no similar provision. And given those differences between the [MVRA] and other restitution statutes, we conclude that the considerations we have mentioned, particularly those based on a reading of the statute as a whole, tip the balance in favor of our more limited interpretation.

584 U.S. 577, 583–84 (2018). Although this interpretation means that some victims do not receive restitution for all of their losses from a crime, this outcome is required by the plain language of the MVRA. In any event, it does not leave JP Morgan without a remedy for

---

[5] Tellingly, before Congress enacted subsection (b)(4) in 1994, which explicitly provided for the recovery of the cost of assisting the Government's investigation into or prosecution of the offense, courts analyzing attorneys' fees under the "loss" provision of subsection (b)(1) generally found that such fees were not recoverable. *See, e.g.*, *United States v. Donaghy*, 570 F. Supp. 2d 411, 430 & n.12 (E.D.N.Y. 2008) (collecting cases under § 3663A(b)(1) holding that, "generally speaking, attorneys' fees fall on the 'consequential damages' side of the actual/consequential divide," and "what the common law knows as 'consequential damages' are not recoverable" as restitution because they are "beyond those which naturally and directly flow" from an offense), *aff'd sub nom. United States v. Battista*, 575 F.3d 226, 233 n.6 (2d Cir. 2009).

[6] The Government's interpretation of the MVRA would produce the following absurd result, among others: A victim would be *prohibited* from recovering its own legal fees for conducting an internal investigation into a potential fraud (before any criminal investigation or case was filed) because of the limitations set forth in § 3663A(b)(4) and related case law. Meanwhile, the same victim would be *permitted* to recover its indemnified employees' legal fees incurred in connection with the same internal investigation—even though, in either case, but-for the suspected fraud, there would be no investigation, and the victim would not have incurred any legal fees. There is no principled basis for the MVRA to permit such a convoluted outcome.

Hon. Alvin K. Hellerstein, U.S.D.J.
October 23, 2025
Page 5

losses not covered by the statute. *See id*. at 584. It "may pursue any civil remedies . . . against the defendants rather than forcing the defendants to pay their own legal fees by means of an award of criminal restitution." *Rankin*, 2023 WL 7403638, at *7. And the Bank is doing just that: The very fees at issue are subject to ongoing proceedings in the Delaware Court of Chancery in litigation JP Morgan initiated. The Government's restitution theory invites an end-run around those proceedings in violation of basic comity and federalism principles. This Court should reject that invitation.

### B. The Court Can—And Should—Apportion Restitution

Separately, in light of the Court's decision to impose joint and several liability in Ms. Javice's Order, *see* ECF No. 434 at 1 ("Restitution is joint and several with co-defendant, Olivier Amar."), we write to request that, should the Court find in connection with Mr. Amar's sentencing that some amount of restitution is proper, it account for Mr. Amar's lesser contributions to JP Morgan's alleged loss. The Court has the authority to do so pursuant to 18 U.S.C. § 3664(h), which vests courts "with considerable discretion in fashioning restitution orders." *United States v. Yalincak*, 30 F.4th 115, 122 (2d Cir. 2022); 18 U.S.C. § 3663A(d) ("An order of restitution under this section shall be issued and enforced in accordance with section 3664."). Indeed, if a "court finds that more than 1 defendant has contributed to the loss of a victim," it has two options: (1) "make each defendant liable for payment of the full amount of restitution," traditionally called joint and several liability; or (2) "apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h). The Second Circuit has recognized that § 3664(h)'s two options are not mutually exclusive and so has permitted so-called "hybrid" restitution orders. *See Yalincak*, 30 F.4th at 118. "In such orders, the most significant offender may be held liable for the full amount of the loss, while lesser participants are required to contribute lesser amounts." *Id.* at 124.

In line with this authority, to the extent the Court finds Mr. Amar and Ms. Javice both contributed to JP Morgan's loss, the Court's order should apportion the total restitution between Defendants, accounting for their different contributions to that loss. Apportionment is appropriate here because Ms. Javice and Mr. Amar had "divergent contributions to the crime." *Yalincak*, 30 F.4th at 122. Indeed, at Ms. Javice's sentencing, the Court discussed a 75%–25% "allocation" between Defendants. *See* Sent'g Hr'g Tr. 64:2–16 (calling Ms. Javice the "principal"). The Court further recognized that "it was Ms. Javice who organized the crime, tried to enlist people in her company, . . . enlisted Mr. Amar, . . . enlisted a professor, used other organizations, and she used her own organization." *Id.* at 20:8–13.

In short, the Second Circuit has expressly found that in a case like this one, where one defendant (Ms. Javice) "organize[d] a criminal scheme and enlist[ed] numerous others to play limited roles," while another (Mr. Amar) only allegedly "contributed to the harm," the lesser player's "more limited roles may make it reasonable to apportion only a limited share of liability to [him]." *Yalincak*, 30 F.4th at 123–24; *see also id.* at 122 ("[T]he defendants may have contributed to the offenses in different ways, at different levels of

5

Hon. Alvin K. Hellerstein, U.S.D.J.
October 23, 2025
Page 6

activity and culpability, or may have joined the scheme at different points in time, such that it might be unfair to impose responsibility for the entire loss inflicted by a large criminal organization on its more minor members."). Apportioning the total restitution "tempers any possible unfairness" by limiting what Mr. Amar, a lesser player by everyone's estimation, "can be made to pay." *Id.* at 127.[7] Ms. Javice "led Frank, led the scheme, and is more culpable," Gov't Sent'g Mem. at 47–49, ECF No. 441, and the Court's restitution order for Mr. Amar should reflect that.

For these reasons, the Court should reconsider Ms. Javice's Order and, to the extent it orders restitution for Mr. Amar, exclude all of Defendants' advanced legal fees from the restitution amount. Furthermore, should the Court find in connection with Mr. Amar's sentencing that some amount of restitution is proper, it should apportion the restitution amount to account for Mr. Amar's lesser contributions to JP Morgan's alleged loss.

Respectfully submitted,

/s/ *Alexandria E. Swette*
Alexandria E. Swette
Jonathan D. Cogan
A. Zoe Bunnell
KOBRE & KIM LLP
800 Third Avenue
New York, NY 10022
Tel: (212) 380-1253
Alexandria.Swette@kobrekim.com
Jonathan.Cogan@kobrekim.com
Zoe.Bunnell@kobrekim.com

Jake Rush (admitted *pro hac vice*)
1919 M Street, NW
Washington, DC 20036
Tel: (202) 664-1900
Jake.Rush@kobrekim.com

Matthew I. Menchel
Evelyn Baltodano Sheehan
201 South Biscayne Boulevard

---

[7] Other courts in the Second Circuit have apportioned restitution in various ways. *See, e.g.*, *United States v. Marsh*, No. 10-cr-480 (JBW), 2011 WL 5325410, at *69–73 (E.D.N.Y. Oct. 26, 2011) (capping certain defendants' "joint and several liability toward the restitution order" at lesser amounts than the total); *Donaghy*, 570 F. Supp. 2d at 436–37 (apportioning legal fees incurred in connection with government investigation and attendance at proceedings related to offenses, and holding each defendant solely liable for certain amounts while holding them jointly and severally liable for other amounts).

Hon. Alvin K. Hellerstein, U.S.D.J.
October 23, 2025
Page 7

                                                      Suite 1900
                                                      Miami, FL 33131
                                                      Tel: (305) 967-6100
                                                      Matthew.Menchel@kobrekim.com
                                                      Evelyn.Sheehan@kobrekim.com

                                                      *Counsel for Defendant Olivier Amar*